# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Frederick Hall,
    Petitioner

vs                                           Case No. 1:02cv034
                                                     (Spiegel, J.; Perelman, M.J.)

Harry K. Russell,
    Respondent

## REPORT AND RECOMMENDATION

      Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, brings this action through counsel for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, respondent's answer, and petitioner's reply. (Docs. 1, 10, 13).

      On October 22, 1998, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with two counts of felonious assault as defined in Ohio Rev. Code § 2903.11(A)(1) (counts two and four), two counts of felonious assault as defined in Ohio Rev. Code § 2903.11(A)(2) (counts one and three), two counts of attempted murder as defined in Ohio Rev. Code § 2923.02(A) (counts five and six), and one count of failure to comply as defined in Ohio Rev. Code § 2921.33( count seven). (Doc. 10, Ex. 3 at 3). The felonious assault and attempted murder counts each included three gun specifications. (*Id.*).

      While petitioner's first trial ended in a mistrial, at his second trial held during August 1999 the jury returned guilty verdicts on all counts and specifications, except

the count charging him with the attempted murder of one of the victims, Kevin Davis. (*Id.*; Doc. 10, Exs. 1, 2). In an entry filed on August 23, 1999 (*see* Doc. 10, Ex. 1):

> [t]he trial court merged counts one and two, and also counts three and four, because the court concluded that these offenses, for different statutory versions of felonious assault, were allied offenses of similar import. The trial court then imposed the following periods of confinement: (1) for felonious assault, on each of counts one and three, seven years plus an additional five years for the merged gun specifications; (2) for attempted murder, count six, nine years plus an additional five years for the merged gun specification; and (3) for failure to comply, count seven, seventeen months. All periods of confinement were ordered to be served consecutively, resulting in a total period of confinement of thirty-four years and five months.

(Doc. 10, Ex. 3 at 3-4).

On August 20, 1999, petitioner filed a motion for a new trial based on prosecutorial misconduct and newly discovered evidence, which the trial court denied. (Doc. 11, Attachment; Doc. 10. Ex. 3 at 4). In his motion, petitioner included a claim that the state withheld exculpatory statements of two non-testifying witnesses. (*Id.*).

With the assistance of counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, raising the following assignments of error:

> 1. The trial court erred to the prejudice of appellant's right to due process of law under the Fourteenth Amendment of the U.S. Constitution and Article 1, Section 16 of the Ohio Constitution in denying appellant's motion for a new trial.
>
> 2. The trial court violated appellant's right to due process of law in entering convictions in that there was legally insufficient evidence to support the guilty verdicts.
>
> 3. The trial court erred in entering judgment of conviction, as the finding of guilt as to all offenses was contrary to the manifest weight of the evidence, requiring reversal.

> 4. The trial court erred to the prejudice of appellant by permitting the state to cross examine appellant about convictions more than ten years old, in violation of Ohio law and the Due Process Clause of the Fourteenth Amendment and Article 1 § 10 of the Ohio Constitution.
>
> 5. The trial court erred in admitting officer Harvey's testimony in rebuttal and allowing the documents he introduced which were subject to discovery and subpoenaed by defendant but not disclosed, in violation of appellant's 14th Amendment due process rights and in violation of Article 1 § 16 of the Ohio Constitution.
>
> 6. The trial court erred to the prejudice of appellant by entering a conviction following a verdict resulting from prosecutorial misconduct in final argument, in violation of the defendant's right to due process of law secured by the Fourteenth Amendment to the U.S. Constitution and Article 1 § 16 of the Ohio Constitution.
>
> 7. The court erred by not merging the attempted murder conviction and the felonious assault conviction together.
>
> 8. The trial court erred to the prejudice of appellant by entering judgment of conviction after a trial at which the appellant was denied his right to effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution and Article one, Section ten of the Ohio Constitution.

(Doc. 10, Ex. 5). On August 18, 2000, the Ohio Court of Appeals overruled each assignment of error and affirmed the judgment of the trial court. (*Id.,* Ex. 3). The court made the following findings of fact concerning the underlying offenses, which are entitled to a presumption of correctness:[1]

> At approximately 3:00 a.m. on October 17, 1999, defendant-appellant, Frederick Hall, drove his Honda Accord

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner failed to rebut the court's findings with clear and convincing evidence.

up to the corner of Fourteenth and Republic Streets in the city of Cincinnati and asked Johann Hart and Kevin David if they had any crack cocaine for sale. An argument ensued between Hart and Hall, and Hall fired a handgun at Hart and Davis.

Hart was struck in the neck with the first shot, and Davis was struck in the arm with the second. After both men fell to the ground, Hall fired a third time, striking Hart in the lower back. Hall drove off, leaving Hart and Davis bleeding on the sidewalk.

Davis was able to get up and run to Vine Street, where he located two off-duty police officers. When the officers responded to the scene, they obtained from witnesses a license number for Hall's car and put out a broadcast describing the license number, the vehicle, and the driver.

After hearing the broadcast, another police officer spotted Hall's car. When Hall saw the officer, he sped away. The officer was unable to keep up with Hall and lost track of him, but because police had Hall's license number, they were able to obtain Hall's address and went to his home. Hall was not there, but as the police were leaving the residence, they noticed that Hall's car was parked around the corner. The police officers then discovered Hall hiding behind a tree near his parked car. Hall was read his *Miranda* rights and arrested.

Hall was transported to Cincinnati Police District One, where he was read his *Miranda* rights for a second time. Although Hall refused to sign a form acknowledging that his *Miranda* rights had been read to him, Hall gave up his right to remain silent, eventually offering to show police the location of the gun used in the shooting. Hall also denied that he was the shooter and offered conflicting versions of the events that had taken place that evening.

Despite Hall's claim that he had picked up a passenger who had been the one to shoot Hart and Davis, both Hart and Davis later identified Hall as their assailant and testified at trial that Hall was alone in his car at the time they were shot by him.

. . . While Hall was in the Hamilton County Justice Center awaiting trial, and while Davis was also in the Justice Center on a

possession charge, Hall approached Davis and offered money to him if he would forgo testifying at Hall's trial.

(*Id.* at 2-3).

Petitioner through counsel filed an appeal in the Supreme Court of Ohio, raising the following propositions of law:

> **Proposition of Law One:** The shooting of one person by another, leading to charges of attempted murder and felonious assault, amounts to but one offense, and the applicant cannot be convicted and sentenced on both offenses without violating his right to due process of law under the Fourteenth Amendment, his right against double jeopardy under the Fifth Amendment, and his right against cruel and unusual punishments, under the Eighth Amendment, and Ohio Constitution Art. §§ 9 and 16.
>
> **Proposition of Law Two:** Failure by the prosecution to disclose favorable and exculpatory evidence to the defendant in a criminal case violates the appellant's right to due process of law, under the Fourteenth Amendment and the Ohio Constitution.
>
> **Proposition of Law Three:** Due Process is violated where the trial court denies a motion for new trial without a hearing when the defense produces an eyewitness who exonerates the accused.
>
> **Proposition of Law Four:** Argument by a prosecutor to a jury in a criminal case of facts not in evidence, and commenting upon the refusal of the accused to sign a rights waiver is egregious misconduct violating due process and requiring reversal.
>
> **Proposition of Law Five:** Where counsel for appellant in a criminal case fails to object to the admission of

>prejudicial, inadmissable evidence, prosecutorial misconduct, failure to merge counts and other sentencing irregularities, the appellant has been denied his constitutional right to the effective assistance of counsel, in violation of his rights under the Sixth Amendment and O. Constitution Art. I. § 10, and his conviction must be reversed.
>
>**Proposition of Law Six:** The failure of an appellate court to consider and decide a fairly presented claim of error violates due process and App.R. 12(A).

(*Id.,* Ex. 9). On December 6, 2000, the Supreme Court of Ohio denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (*Id.,* Ex. 11).

With the assistance of counsel, petitioner filed the instant petition for a writ of habeas corpus raising the following grounds for relief and supporting facts, which are quoted verbatim:

>**Ground One:** Mr. Hall was denied his right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution, as the State failed to provide exculpatory witness statements to the defense at trial.
>
>**Supporting facts:** As attested through sworn affidavit in Mr. Hall's new trial motion, eyewitness Lolita Moore–and second eyewitness Jimmie Martin–gave statements to the Cincinnati police that would have exculpated Mr. Hall in the shootings of Messrs. Hart and Davis. Those statements were never provided to Mr. Hall.
>
>**Ground Two:** Mr. Hall's Fourteenth Amendment due process and Fifth Amendment double jeopardy rights were violated when he was convicted of and sentenced for both felonious assault and attempted murder on the same victim in the same transaction.

>**Supporting facts:** Mr. Hall was convicted of and sentenced to consecutive sentences for both felonious assault and attempted murder with respect to Johann Hart. The evidence established that the attack on Mr. Hart was but a single occurrence, thus the felonious assault and attempted murder counts should have been merged, and Mr. Hall should not have been sentenced on both counts.
>
>**Ground Three:** Mr. Hall was denied his right to the effective assistance of counsel as guaranteed by the Sixth Amendment.
>
>**Supporting facts:** Mr. Hall's trial counsel failed to object to 1) prosecutorial misconduct–specifically arguing facts not in evidence, 2) the trial court's failure to merge counts arising out of the same incident, a double jeopardy violation, 3) sentencing errors that violated Ohio law, 4) the introduction of inadmissible evidence, and 5) the trial court's ruling on Mr. Hall's New Trial Motion without holding a hearing of any kind.

(Doc. 1 at 4-5).

In his first ground for relief, petitioner contends that he was deprived of due process of law when the state failed to provide during discovery allegedly exculpatory statements of Lolita Moore and Jimmie Martin, eyewitnesses who did not testify at trial.

Under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). A state court decision is "contrary to" clearly established federal law as determined by

the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). A federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

When a state court fails to address the constitutional issues raised the federal court conducts a de novo review, instead of applying the AEDPA standard of review which applies only to cases "adjudicated on the merits in state court." *Maples v. Stegall,* 340 F.3d 433, 436-437 (6th Cir. 2003) (finding that in *Wiggins v. Smith,* 123 S.Ct. 2527 (2003), Supreme Court reviewed portion of claim not analyzed by state court de novo, without deferring to the state court or applying AEDPA's standard of reasonableness); *see Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003); *Davis v. Secretary for the Dep't of Corrections,* 341 F.3d 1310, 1312 (11th Cir. 2003).

The Due Process Clause of the Fourteenth Amendment requires the prosecution to disclose evidence in its possession that is both favorable to the accused and material to guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 87 (1963); *see also United States v. Bagley,* 473 U.S. 667, 674 (1985); *United States v. Presser,* 844 F.2d 1275, 1281 (6th Cir. 1988). The prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed,

would deprive the defendant of a fair trial. *Bagley,* 473 U.S. at 675.

The defendant is deprived of a fair trial "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *Id.* at 678. Evidence is material if there is a reasonable probability that the result of the trial would have been different had the evidence been disclosed to the defense. *Pennsylvania v. Ritchie,* 480 U.S. 39, 57 (1987). This standard for determining materiality focuses on the defendant's guilt or innocence, rather than on the impact of the undisclosed evidence on the defendant's ability to prepare for trial. *United States v. Phillip,* 948 F.2d 241, 249 (6th Cir. 1991), *cert. denied,* 504 U.S. 930 (1992) (citing *United States v. Agurs,* 427 U.S. 97, 112 n.20 (1976)).

The Ohio Court of Appeals held that the trial court did not abuse its discretion in denying petitioner's motion for a new trial based on the state's failure to turn over allegedly exculpatory statements by Ms. Moore and Mr. Martin. The Court ruled:

> Hall contends that the police and prosecution failed to turn over exculpatory statements material to his innocence. In support of his motion, Hall attached the affidavit of Lolita Moore. In the affidavit, Moore stated that there were three persons in the Honda Accord, which would have supported Hall's theory of the case. Additionally, Hall claims that Moore and another witness, James Martin, gave written statements to the police that should have been turned over to Hall because they were exculpatory. Hall also claims, correctly, that Moore and Martin were subpoenaed by both the state and the defense, and that neither witness appeared at trial. It was only after the second trial and prior to sentencing that Moore was located by Hall's counsel.
>
> Based upon Moore's affidavit, we hold that her testimony would not have been exculpatory, but would have been cumulative evidence regarding the conflicting identification of the number of persons inside the Honda Accord and the identification of Hall as the driver of that vehicle. Moore was listed as a witness by the state, was subpoenaed by both parties, but was not called to testify by either party. Since Hall failed to call Moore as a witness, to seek a continuance, or to proffer Moore's expected testimony, Hall cannot claim that the discovery of this witness provided the basis for a new trial.

(Doc. 10, Ex. 3 at 5-6).

In her affidavit, Ms. Moore stated that there were three African American persons in the Honda Accord and that they were young boys or men in their early twenties. (Doc. 11, Attachment, Affidavit of Lolita Moore). She further indicated that she gave the license number of the car to police and that she and Jimmie, another witness, went to the District One station where they both signed written statements. (*Id.*). Respondent was unable to locate statements made by Ms. Moore or Mr. Martin in the case files of the police or prosecution. (Doc. 17). Police Officer Fromhold, who was dispatched to the scene, does recall talking to Ms. Moore upon his arrival. (Doc. 7, Tr. 212).

During the trial, the defense introduced through a police officer, documentation of various calls to the police concerning this shooting, which included reports that there were three persons in the perpetrator's car, that the suspect was in his late teens or early twenties, and clean shaven. (Doc. 8, Tr. 390-392; *see* Doc. 7, Tr. 190, 211). Apparently, petitioner was in his forties at the time of the trial and had a beard. (Doc. 11 at 3, n.1; Doc. 8, Tr. 333, 484). Petitioner testified that he was asleep at home during the time of the crime and that he had hurt his arm and could not drive. (Doc. 8, Tr. 336, 340-341). Petitioner's wife confirmed his alibi. (Doc. 8, Tr. 405).

Lolita Moore's statement was favorable to the defense, in that it called into question the testimony of the victims that there was only one person in the car, the petitioner, (Doc. 7, Tr. 135, 164). Although there was, as the Ohio Court of Appeals found, other evidence on the record, specifically reports from unidentified persons, which supported petitioner's theory of multiple and much younger perpetrators, a statement from a known eyewitness may have been more persuasive and credible.

On the other hand, this Court believes that in light of the substantial evidence of petitioner's guilt, Ms. Moore's statement was not material because there was no reasonable probability that the result of the trial would have been different had the evidence been disclosed to the defense.

The victims independently identified petitioner in a photo array which was provided to them almost immediately after the shooting and which was not challenged by the defense as suggestive. (Doc. 7, Tr. 149, 170, 185). There was no testimony at trial suggesting that the victims had any motive to frame petitioner for this crime. Both petitioner and the victims testified that they did not know each other. (Doc. 6, Tr. 132; Doc. 7, Tr. 164; Doc. 8, Tr. 349).

10

Police Officer Bailey who pursued petitioner in a high speed chase after the shooting based on a report of the license plate, testified that he saw petitioner driving the car. (Doc. 8, Tr. 309). When the car was finally located during the early morning hours petitioner was found standing behind a tree near it. (Doc. 8, Tr. 361-362).

Petitioner's statements to police upon his arrest were also incriminating, because they placed him at the scene. Officer Hoffman testified that petitioner had stated to him that he picked up Dave and while riding around they spotted two individuals who had robbed them. (Doc. 7, 265). Dave indicated that he would take care of them and then shot them. (*Id.*) On the stand, petitioner conceded that he told police that he picked up Dave (Doc. 8, Tr. 365), but explained that he was lying at the time (*Id.*, Tr. 369). He denied making the other statements. (*Id.*, Tr. 369-370).

Petitioner's attempt to bribe the victim not to testify (Doc. 7, Tr. 175) was further evidence of guilt.

With respect to the statement allegedly made by Jimmie Martin, there is no evidence on the record concerning the contents of the statement. For this reason, petitioner has not demonstrated that the statement was either favorable to the defense or material to the outcome of the case.

Accordingly, the decision of the Ohio Court of Appeals affirming the ruling of the trial court denying petitioner's motion for a new trial was neither contrary to nor involved an unreasonable application of the Supreme Court's decision in *Brady* and was not unreasonable in light of the record evidence.

Therefore, petitioner is not entitled to habeas corpus relief with respect to his first ground for relief.

As his second ground for relief, petitioner argues that by sentencing him for the felonious assault and attempted murder of Johann Hart, the trial court violated the Double Jeopardy Clause.

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Constit. amend. V. This guarantee against double jeopardy, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969), among other things, protects against "multiple punishments for the same offense" imposed in a single

11

proceeding. *Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)). In the "multiple punishment" context, the Double Jeopardy Clause's protection is "limited" to ensuring that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas,* 491 U.S. 376, 381 (1989); *see also Ohio v. Johnson,* 467 U.S. 493, 499 (1984); *Brown v. Ohio,* 432 U.S. 161, 165 (1977). Therefore, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Johnson,* 467 U.S. at 499.

In the federal courts, the test established in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), is normally used to determine whether two offenses are sufficiently different to allow the imposition of cumulative punishment. *Johnson,* 467 U.S. at 499 n.8; *see also Brown,* 432 U.S. at 166. However, the *Blockburger* test, a rule of statutory construction for federal statutes, does not necessarily control the inquiry into the intent of a state legislature. *Johnson,* 467 U.S. at 499 n.8; *Banner v. Davis,* 886 F.2d 777, 780-82 (6th Cir. 1989). Instead, when assessing the intent of a state legislature, the federal courts must defer to and are bound by the state courts' construction of their own statutes. *Hunter,* 459 U.S. at 368 (citing *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974)); *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *Banner,* 886 F.2d at 780. "Even if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments [for them, the federal] court's inquiry is at an end." *Johnson,* 467 U.S. at 499 n.8; *see also Hunter,* 459 U.S. at 368-69 ("Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial" without violating the Double Jeopardy Clause.); *Banner,* 886 F.2d at 780-82.

The Ohio legislature's intent in the multiple punishment area may be discerned from the state multiple-count statute, Ohio Rev. Code § 2941.25. *See State v. Rance,* 710 N.E.2d 699, 635 (Ohio 1999); *see also Jones v. Baker,* 35 F.3d 566 (table), Nos. 93-3589, 93-3625, 1994 WL 464191, at **3 (6th Cir. Aug. 26, 1994) (unpublished), *cert. denied,* 513 U.S. 1164 (1995); *Woodfork v. Russell,* 19 F.3d 20 (table), No. 92-4301, 1994 WL 56933 (6th Cir. Feb. 24, 1994) (unpublished). The statute provides:

(A) Where the same conduct by defendant can be construed to constitute

> two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The applicable test for deciding this issue involves a two-step analysis under the state statute. First, if the statutory elements of the various crimes, considered "in the abstract," without regard to the particular facts of the case, are found to be of dissimilar import because they do not "correspond to such a degree that the commission of one crime will result in the commission of the other," the multiple convictions and punishments are permitted and the court's inquiry ends. *Rance,* 710 N.E.2d at 636. If the offenses are found to be of similar import the second level of inquiry is triggered, requiring the court to determine whether or not the defendant may be cumulatively punished for them because, as a factual matter, they were committed separately or with a separate animus. *See id.; see also State v. Jones,* 676 N.E.2d 80, 81-82 (Ohio 1997). This determination does not turn on "the presence or absence of any specific factors," but rather is based on the particular facts of each case as gleaned from the record. *Jones,* 676 N.E.2d at 81-82.

Here, after reviewing the elements of attempted murder and felonious assault in the abstract, the Ohio Court of Appeals concluded that these offenses were of dissimilar import and therefore properly gave rise to separate convictions. (Doc. 10, Ex. 3 at 10). Other courts of appeal in Ohio have reached the same conclusion under comparable circumstances. *State v. Axson,* No. 81231, 2003 WL 1994490, at *16 (Ohio Ct. App. May 1, 2003); *State v. Williams,* No. 02-CA-82, 2003 WL 149481 at *2 (Ohio Ct. App. Jan 17, 2003); *State v. Yun,* No. 2000CA00276, 2001 WL 1082354, at *5 (Ohio Ct. App. Sept. 10, 2001).

A person commits attempted murder when he purposely engages in conduct that if successful would constitute the purposeful killing of another person. Ohio Rev. Code § 2923.02; *Yun*, 2001 WL 1082354, at *5. A person commits felonious assault when he knowingly either causes serious physical harm to another, or causes or attempts to cause physical harm to another by means of a deadly weapon or dangerous ordnance.

Ohio Rev. Code § 2903.11(A)(1), 2903.11(A)(2); *Yun*, 2001 WL 1082354, at *5.

> Someone can engage in conduct so as to knowingly cause serious harm without attempting to kill that person. Likewise, someone could attempt to cause another person's death, but be unsuccessful, thereby not causing serious physical harm to the person.

*Williams*, 2003 WL 149481 at *2. Therefore, the elements of felonious assault and attempted murder do not correspond to the degree that commission of one crime will result in the commission of the other.

This federal court is bound by the Ohio court's interpretation of the state criminal statutes that the attempted murder and felonious assault crimes are offenses of dissimilar import for which cumulative punishments may be imposed. Since the intent of the Ohio legislature was to impose cumulative punishments for these offenses, the Double Jeopardy Clause was not violated in this case.

Accordingly, the state court's resolution of this issue was neither contrary to nor involved an unreasonable application of clearly established Federal law and petitioner is not entitled to habeas corpus relief on this claim.

As his third ground for relief, petitioner asserts that his trial counsel was constitutionally ineffective for failing to object to: 1) the prosecutor's statements in closing argument concerning petitioner's disposal of the gun, 2) the trial court's failure to merge the felonious assault and attempted murder counts pertaining Johann Hart,[2]

---

[2] In his petition, petitioner claimed that the trial court also committed sentencing errors which petitioner did not identify. This court and respondent interpreted these errors to refer to the trial court's sentencing petitioner with respect to both the felonious assault and attempted murder of Johann Hart, instead of merging the offenses. (See Doc. 10 at 14 & n.1). In his traverse, petitioner asserts for the first time that the trial court erred in sentencing petitioner to consecutive sentences without making the requisite statutory findings. (Doc. 13 at 10). This argument was never raised in petitioner's direct appeal in state court, and as respondent argues (Doc. 10 at 14 n.1), it was therefore procedurally defaulted. If, because of a procedural default, petitioner has not had his claim considered by the state's highest court and he can no longer present his claim to the state courts, he has waived the claim for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also*

3) the introduction of evidence of petitioner's convictions which were older than ten years, and 4) the trial court's denial of petitioner's motion for a new trial without a hearing.

To demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. *Id.* at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

In order to satisfy the "prejudice" prong of the *Strickland* test petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id.* at 694. A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *Id.* at 693. However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice. *Id.* Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *Id.* at 695.

In his brief to the Ohio Court of Appeals, petitioner took issue with defense

---

*Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). Petitioner has not made the requisite showing.

15

counsel's failure to object to the prosecutor's statements in closing argument that "Defendant threw the gun out of the car window during the chase, or threw it in the river, or in a sewer" and his statement that "if they found the gun it would match the shell casings recovered." (Doc. 10, Ex. 5 at 9). Petitioner argued that the statements were based on facts not in evidence.[3]

Petitioner's claim arises out of the following statements made by the prosecutor during closing argument:

> I asked him about where he was, and he said he was standing out in the open, and he finally admitted he was apprehended behind a tree by the police, after driving the car, dumping the gun somewhere, either throwing it out during the police chase or placing it somewhere in that yard on Windsor Avenue in an attempt to prevent the gun from being recovered and in an attempt to prevent the gun from being used for scientific purposes as far as determining which shell casings were fired from the gun.
>
> And if they had recovered bullets from the victims in the case, they can take the shells, the bullets actually recovered from their body, and make a determination if in fact the handgun is the one that fired those bullets. That could not have been done in this case because the gun was not recovered.

(Doc. 8, Tr. 465).

> Let's talk about the evidence in this case, ladies and gentlemen. Where is the gun? Where is the gun that he took the police up to find?
>
> * * *
>
> This case could have been solved, lock stock and barrel, if he, Frederick Hall, wouldn't have disposed of the gun. Did he throw it out the window in the river? Did he throw it out the window in a sewer? I don't

---

[3] The Ohio Court of Appeals did not specifically address this claim.

16

>know. The odds are, ladies and gentlemen, that that gun was located for at time up in the yard on Windsor Avenue, where he stopped the car and was found hiding behind a tree. The odds are that somebody got there, picked that gun up, and took it away before it could be recovered.
>
>The odds are, ladies and gentlemen, that that gun, if they would have recovered it, if he would have given the effort to find it, it would have matched the shell casings found in this case.

(Doc. 8, Tr. 505-506).

At trial, Officer Huffman testified that petitioner had offered to take the officers to the gun, and that when he was taken to the scene where the car had been found on Windsor Avenue he indicated to police that he had placed the gun at the base of a tree or by a tree limb. (Doc.7, Tr. 272-272). The officer testified that petitioner was not helpful in locating the gun, and the gun was not recovered by police. (*Id.* at 272). Accordingly, there was evidence on the record that petitioner had disposed of the gun.

In his closing argument, the prosecutor did not maintain that the gun had been thrown into the river or sewer, as petitioner claims. Instead, he *asked* if that's what happened and then conceded that he did not know. At one point the prosecutor did say that the gun was either thrown out of the window or hidden on Windsor Avenue where the car was recovered. The prosecutor was painting two likely scenarios, based on reasonable inferences from the evidence. Since police were unable to find the gun in the Windsor Avenue area, where petitioner directed them, one could reasonably assume that petitioner pitched the gun immediately before the car arrived in that area during the preceding car chase. The prosecutor also stated that if petitioner had led the police to the gun used, the gun would have matched the shell casings found in his car. Since police testified that petitioner admitted to them that his companion shot the victims with the gun from petitioner's car, this was also a reasonable inference from the evidence.

Since the prosecutor's statements were based on the evidence or reasonable inferences from the evidence defense counsel's failure to object to the statements was neither deficient performance nor prejudicial to petitioner's case. Accordingly, petitioner's claim that counsel was constitutionally ineffective for failing to object to the prosecutor's statements during closing argument lacks merit.

Petitioner further argues that defense counsel was constitutionally ineffective for not taking issue with the trial court's failure to merge the felonious assault and attempted murder counts on double jeopardy grounds. Since the Double Jeopardy Clause does not forbid multiple punishments for these offenses, as discussed in section II above, defense counsel was not deficient in failing to object to the separate sentences imposed by the trial court and petitioner's case was not prejudiced by defense counsel's failure to object.

Petitioner claims defense counsel was ineffective for the reason that he failed to object to the introduction of testimony of petitioner's convictions that were more than ten years old. The Ohio Court of Appeals determined that petitioner was actually asked by the state about convictions dating back ten years, not twenty years. (Doc. 10, Ex. 3 at 8, 11). The twenty years indicated in the transcript was a transcription error which the court had corrected. (*Id.*; *see* Doc. 9). Accordingly, the Ohio Court of Appeals determination that trial counsel was not deficient in failing to object to testimony concerning petitioner's prior convictions was neither contrary to nor involved an unreasonable application of the Supreme Court's standard in *Strickland*, and was not unreasonable in light of the record evidence.

Petitioner maintains that defense counsel was ineffective for failing to object to the trial court's denial of his new trial motion without holding a hearing. The Ohio Court of Appeals found that as a matter of law there was no requirement that a hearing be held prior to denying a motion for a new trial. (Doc. 10, Ex. 3 at 7). The appellate court found that defense counsel had indicated to the trial court that "the motion was fully supported in writing and that it would be submitted to the court without further evidence or argument." (*Id.*). The appellate court determined that counsel's failure to insist upon a hearing may be considered sound trial strategy, not deficient performance. (*Id.* at 11).

In his traverse, petitioner maintains that a hearing would have allowed the trial court to gauge the credibility of Ms. Moore and weigh it against the credibility of the victims. (Doc. 13 at 9). Petitioner presents no evidence to demonstrate that Ms. Moore would have shown herself to be the more credible and reliable witness had a hearing occurred. Without such a showing, petitioner has not demonstrated that there was a reasonable probability that the outcome of the proceeding would have been different had defense counsel advocated for a hearing. Accordingly, the Ohio Court of Appeals determination that trial counsel was not deficient in failing to insist on an evidentiary hearing on his motion for a new trial was neither contrary to nor involved an

unreasonable application of the Supreme Court's standard in *Strickland*, and was not unreasonable in light of the record evidence.

As petitioner has failed to establish that his trial counsel was constitutionally ineffective as asserted in ground three of the petition he is not entitled to relief based thereon.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2. A certificate of appealability should not issue with respect petitioner's claims because, for the foregoing reasons, petitioner has failed to make a substantial showing of the denial of a constitutional right that is remediable in this proceeding. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Petitioner has not shown that reasonable jurists could debate whether his claims should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

3. With respect to any application by petitioner for *in forma pauperis* status for the purposes of pursuing an appeal of an order adopting this report and recommendation, this Court certify that pursuant to 28 U.S.C. § 1915 (a) an appeal of this order would not be taken in "good faith," and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: March 23, 2004                           S/David S. Perelman
                                               David S. Perelman
                                               United States Magistrate Judge

J:\ROSENBEH\2254(2004)\02-34brady&DJ.wpd

19

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

---

Frederick Hall,
    Petitioner

vs                                 Case No. 1:02cv034
                                    (Spiegel, J.; Perelman, M.J.)

Harry K. Russell,
    Respondent

---

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable David S. Perelman, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

20