UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| FREDRICK HALL, | : | |
| Petitioner, | : | Case No. 1:02cv034 |
| vs. | : | JUDGE SPIEGEL |
| ANTHONY BRIGANO[1], Warden, | : | MAGISTRATE JUDGE PERELMAN |
| Respondent. | : | |

_____

**PETITIONER FREDRICK HALL'S OBJECTIONS
TO THE MAGISTRATE'S REPORT AND RECOMMENDATION**
_____

Petitioner Fredrick Hall objects to the Magistrate's Report and Recommendation filed on March 23, 2004. 28 U.S.C. 636(B)(1); Fed.R.Civ. P. 72(b). The attached memorandum explains Mr. Hall's objections.

                                           Respectfully submitted,

                                           DAVID H. BODIKER  0016590
                                           Ohio Public Defender

                                           S/Craig M. Jaquith
                                           CRAIG M. JAQUITH  0052997
                                           Assistant State Public Defender
                                           (COUNSEL OF RECORD)

                                           OFFICE OF THE OHIO PUBLIC DEFENDER
                                           8 East Long Street - 11th floor
                                           Columbus, Ohio 43215
                                           (614) 466-5394
                                           (614) 752-5167 (fax)
                                           Email: jaquithc@opd.state.oh.us

                                           COUNSEL FOR PETITIONER

---

[1] The Magistrate's Report and Recommendation utilizes the name of the original respondent, Harry K. Russell. Effective March 31, 2003, the Respondent in this matter was changed to the then-new Warden, Anthony Brigano. See Order, March 31, 2003, fn. 1. Currently, the Warden is Wanza Jackson.

## OBJECTIONS AND ARGUMENT

I.  **Mr. Hall objects to the Magistrate's conclusion that the State's withholding of two exculpatory eyewitness statements did not violate *Brady v. Maryland*. Magistrate's Report and Recommendation, p. 11.**

This case presents prototypical *Brady* violations—the State withheld from defense counsel two exculpatory police statements made by eyewitnesses—compounded by serious violations of *Arizona v. Youngblood*. Yet the Magistrate Judge found that no *Brady* violation occurred, and failed to even address the *Youngblood* violations committed by the State.

The Magistrate Judge found that the State's withholding exculpatory police statements from two eyewitnesses, Lolita Moore and Jimmie Martin, did not violate *Brady v. Maryland*, 373 U.S. 83 (1963). Magistrate's Report And Recommendation (hereinafter cited as "R & R"), p. 11. But the Magistrate Judge's analysis of the materiality of the withheld police statement made by Ms. Moore is deeply flawed. (The police statement of Jimmie Martin will be addressed below, in the discussion about the State's destruction thereof.) Specifically, the analysis in the Report and Recommendation does not attach appropriate weight to the fact that the evidence against Mr. Hall was so equivocal that the jury could not reach a verdict the first time the State tried the case. Thus, the materiality of **any** exculpatory evidence withheld from the defense (in both trials) should be weighed on a scale that is much more evenly balanced than the Report and Recommendation suggests.

Further, the Report and Recommendation gives only passing consideration to the fact that the jury heard absolutely no eyewitness testimony suggesting that there were three individuals— none of whom resembled Mr. Hall—in the car from which the shots were fired. Had the jury heard from the two eyewitnesses who would have testified that the car contained three men who did not look like Mr. Hall, the victims' description of the occupant of the car would have been

viewed very differently by the jury—so differently that confidence in the outcome of the trial is undermined. See *Castleberry v. Brigano*, 349 F.3d 286, 294 (6th Cir. 2003)("[T]he question is not whether the State would have had a case to go to the jury if it had disclosed the favorable evidence, but whether we can be confident that the jury's verdict would have been the same." (citing *Kyles v. Whitley*, 514 U.S. 419, 453 (1995)); *Jamison v. Collins*, 291 F. 3d 380 (6th Cir. 2002).

In addition to differing from the prosecution's version of the number and description of individuals, Ms. Moore's affidavit also calls into question whether the car was stopped or moving when the shots were fired. Mr. Hall's Traverse and Ms. Moore's affidavit address this fact, but, inexplicably, it is entirely ignored by the Report and Recommendation. Both victims testified that the car was stopped when the shots were fired. Ms. Moore's affidavit—and presumably her police statement—states that the car was moving when the shots were fired. See Affidavit of Lolita Moore, attached to Petitioner's Motion for Discovery. Critically, the placement of the shell casings at the scene supports Ms. Moore's version, not the State's version—two shell casings were found 30-35 feet apart. Tr. P. 197. Again, confidence in the verdict is severely undermined by the fact that the jury did not hear from eyewitnesses who would have explained why the casings were so far apart.

Magistrate Judge Sherman's March 31, 2003 Order regarding discovery highlighted the importance of both Jimmie Martin's police statement and that of Lolita Moore:

> Moore's affidavit may not be used to ascertain the substance of Jimmie Martin's statements to the police. Moreover, Moore's actual statement to the police may provide additional information not contained in her affidavit that could prove to be of critical importance in determining whether the withheld statement constituted evidence under the standard enunciated in Brady.

The Report and Recommendation, however, does not even acknowledge that the affidavit provided by Ms. Moore after the trial may have omitted key details that would have been contained in the police statement she made on the morning of the shootings.

The Report and Recommendation further finds that because there is no record evidence of what one of the witnesses—Jimmie Martin—saw on the night in question, Mr. Hall cannot cite the withholding of Mr. Martin's police statement as the basis for a *Brady* claim. R & R, p.11. But the Report and Recommendation does not adequately address the fact that we cannot know what Mr. Martin told the police solely because the Cincinnati Police Department or Hamilton County Prosecutor's office destroyed that statement. See Respondent's Response to Court's Discovery Order, filed May 16, 2003 (only documents left in prosecutor's file were the indictment and grand jury transcript). The Report and Recommendation merely indicates that the "Respondent was unable to locate statements made by Ms. Moore or Mr. Martin in the case files of the police or prosecution." R & R, p. 10. This blithe acceptance of the destruction of critical documents would be unacceptable in any case arising in any jurisdiction. Indeed, had it been the defense who had been "unable to locate" documents of similar import, there would have been a great likelihood of severe disciplinary repercussions. In a post-*Jamison* case arising out of Hamilton County, the Report and Recommendation's cursory treatment of this issue is at minimum reckless, and is arguably disingenuous.

Not only did the State destroy this evidence, but the destruction occurred **after** Mr. Hall had raised the issue of the State's failure to provide the statements at trial. If destroying evidence after it has been made a pivotal issue in a case does not violate *Arizona v. Youngblood*'s prohibition against bad-faith destruction of evidence by the state, it is hard to imagine what set of circumstances would constitute such a violation. *Arizona v. Youngblood*, 488 U.S. 51 (1988).

4

**II.    Mr. Hall objects to the Magistrate's recommendation that his petition for writ of habeas corpus be denied with prejudice. (R & R, p. 19). Mr. Hall further objects to the Magistrate's recommendation that a certificate of appealability should not issue. (R & R, p. 19). Mr. Hall also objects to the Magistrate's recommendations that an appeal of any Order adopting the Report and Recommendation would not be taken in good faith, and that Mr. Hall should be denied leave to appeal *in forma pauperis*. (R & R, p. 19).**

"Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional clams debatable or wrong." *Slack v. McDaniel* (2000), 529 U.S. 473, 484. If the Report and Recommendation is followed, reasonable jurists would find this Court's disposition of Mr. Hall's claims debatable.

Further, Mr. Hall should be allowed to proceed *in forma pauperis* if he provides the proper documentation. For the reasons shown above, an appeal from an Order adopting the Magistrate's Report and Recommendation would not be frivolous and would be in good faith.

## CONCLUSION

Mr. Hall respectfully requests that this Court find merit in his objections, reject the Magistrate's Report and Recommendation, and issue a writ of habeas corpus.

    Respectfully submitted,

    DAVID H. BODIKER  0016590
    Ohio Public Defender

    S/Craig M. Jaquith
    CRAIG M. JAQUITH  0052997
    Assistant State Public Defender
    (COUNSEL OF RECORD)

OFFICE OF THE OHIO PUBLIC DEFENDER
8 East Long Street - 11th floor
Columbus, Ohio 43215
(614) 466-5394
(614) 752-5167 (Fax)
jaquithc@opd.state.oh.us

COUNSEL FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2004, a copy of the foregoing OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

S/Craig M. Jaquith
CRAIG M. JAQUITH
Assistant State Public Defender

COUNSEL FOR PETITIONER

#196370

6