## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **FREDERICK HALL,** : | |
| : | Case No. 1:02-cv-34 |
| Petitioner, : | |
| : | Judge Spiegel |
| v. : | |
| : | Magistrate Judge Black |
| **ERNIE MOORE, Warden,** : | |
| : | |
| Respondent. : | |

### RESPONDENT'S RESPONSE TO THIS COURT'S MAY 1, 2007 ORDER

On May 1, 2007, this Court issued an Order directing Respondent to file "a copy of the transcript of petitioner's first trial, as well as any other available evidence reflecting how the jury voted, or the reasons behind the jury's vote, in the first trial." [Doc. #43.]

Craig Jaquith, Counsel for Petitioner, has provided Respondent with a copy of a transcript containing excerpts from petitioner's first trial. (Trial Transcripts Volumes 1-4; Transcript of Opening Statements.) However, this transcript is not a complete copy of the proceedings in petitioner's first trial. As a result, Respondent contacted the court reporter and obtained a copy of the transcript of the rest of the proceedings in petitioner's first trial. (Trial Transcripts Volumes 1-5).

The attached transcripts demonstrate that the hung jury was the result of jury nullification. (Trial Transcript Volume 5 pp. 499-508.) Specifically, on May 5, 1999, the trial court held the following discussion in chambers:

THE COURT: Hi, Ms. West. How are you doing? Have a seat.

We are in chambers right now.

Ms. West, Mrs. Schweir has indicated to me that you've raised some concerns with her that you and perhaps some of the other jurors have concerning one of the jurors who had a relative shot in the neck or some injury?

FOREPERSON WEST: Yes. And I didn't know the proper protocol, but I felt like I had to ask the bailiff to have the judge to give some direction.

THE COURT: What exactly is going on?

FOREPERSON WEST: There were 12 of us sitting around the table discussing the case, and we were polling people to try and reach some type of a verdict on Count 1, because we can't seem to get anywhere beyond that unless we establish some credibility on Count 1, and one juror -- and if I need to name her, that's fine.

THE COURT: Not right now.

FOREPERSON WEST: She said, she passed on the first go-around. We were taking turns questioning people and going around since I didn't know how to do this and no one else did.

She passed the first time, and the next person gave their indication. Some said guilty, not guilty, some said no opinion yet.

We were still discussing it, and when we came back to her, I asked her if she was ready to give an opinion. And at that point is when she said, "There is no credibility in any of the police officers' testimony. I do not believe anything the police officers say. My son was just shot and died. He was shot in the left side of the neck. The bullet went into the neck, and the police officers ruled it a suicide, and my son is right handed."

Well, we all sat there stunned. I mean, everybody.

THE COURT: Okay. The question is, is your concern that this juror went into this not being able to accept police testimony, or had she said something like that?

 FOREPERSON WEST: Yes, previously she said this person is totally not guilty. She doesn't believe the testimony, the credibility of witnesses that were shot. She doesn't believe the police officers, and that's when she made this comment.

THE COURT: She's free, of course, to believe or disbelieve anybody she wants to believe. Okay. All right. Was there anything else that she said that you can think of?

FOREPERSON WEST: Yesterday, the reason we did not reach any opinion is because if anyone questioned anything that was said, she immediately attacked what they said and how they said it and reflected back on, "You don't believe

me?" Or she assumed an attitude, "Why are you saying that?"

THE COURT: Okay. Do you understand what I am trying to say?

FOREPERSON WEST: Yes, I do.

THE COURT: All right. Well, thank you very much.

FOREPERSON WEST: I think all of us have compassion for her now at this point. That was my main concern.

THE COURT: So you're still going to make an effort to work through the counts after we hear the testimony read back?

FOREPERSON WEST: We would like to. We all want to make some type of a decision.

THE COURT: Okay, good. Why don't I – that's fine. I appreciate your time. I'm sorry to disrupt your deliberations. I appreciate everything that you have said. Go on back. Jill will take you back to the jury room, and we'll get you back as soon as possible.

FOREPERSON WEST: How do I handle going back in there?

THE COURT: Go back in there and say you talked to me. You don't have to say what it was about. Go back and talk about the Reds. Thank you very much.
(Whereupon, Foreperson West was excused.)

MR. RADER: May I renew my motion for a mistrial?

THE COURT: You can do whatever you want to. You can make a motion for mistrial?

MR. RADER: Yes, your Honor.

THE COURT: What is the State's point of view right now?

MR. ANDERSON: I will go along with it. I don't want somebody back there who has made up their mind and not believing anything that a police officer has to say.

THE COURT: That's her right not to believe anything that a police officer says. It's not her right from the beginning of the case never to have been willing to believe anything that the police officer said.

MR. ANDERSON: According to what the foreperson has just stated, she doesn't

3

believe a word of what the police said, and she would never believe a word the police said because of this incident involving her son. That, to me, is a predisposition to not give any weight at all to the police officers' credibility.

She's not weighing their credibility. She's saying, I don't believe a damn thing they say because of what happened to me. That's the first issue. The second issue, which is just as important, is we took a lot of time selecting this jury. I went over the facts of the case. I asked about gunshots. I asked about guns. I asked all sorts of things. Certainly any normal person would raise their hand if their son had been shot in the neck and died and said, you know, this sounds familiar. If she said my son was shot in the neck and died, we would have explored that further.

My personal opinion is she withheld that information willingly in order to interject herself on this jury to fulfill some agenda that she has.

MR. RADER: Your Honor, if I might, my reason is, I think that this has and will create so much animosity and confusion that proper deliberations won't occur.

THE COURT: You guys have had some stipulations in this case. I guess this is another one. All right. Off the record.

(Whereupon, a discussion was held off the record.)

THE COURT: Bring Ms. West back in.

(Whereupon, the following discussion was held with Juror West in chambers:)

THE COURT: Is the juror that you're talking about Ms. Allen?

FOREPERSON WEST: Yes. Doris is her first name.

THE COURT: Black woman?

FOREPERSON WEST: Yes. She sits in the first row about seven or eight, I guess.

THE COURT: Thank you.

(Whereupon, Foreperson West was excused from chambers.)

THE COURT: Bring Ms. Allen in, if you will.

(Whereupon, the following discussion was held with Juror Allen:)

THE COURT: Hi, Ms. Allen.

Would you have a seat, please. This won't take long.

A couple of the jurors have mentioned to Jill -- and I'll get to the point with you, did you have a son that recently got shot and killed?

JUROR ALLEN: Yes, a son-in-law.

THE COURT: I'm sorry to hear that.

JUROR ALLEN: It happened in Chicago.

THE COURT: What happened with it?

THE WITNESS: They said he committed suicide. I just mentioned it to the jurors in this case.

THE COURT: Do you believe that it was something other than suicide, or do you believe it was some sort of foul play?

JUROR ALLEN: It was ruled a suicide?

THE COURT: I know it was, but what do you think?

JUROR ALLEN: It was ruled a suicide. I was here in the Cincinnati. He lives in Chicago. I had to go to Chicago as a mother-in-law, because he had no other relatives to take care of the business.

THE COURT: That's your --

JUROR ALLEN: -- my daughter's ex-husband.

THE COURT: Ex-husband. All right. Thanks. I appreciate it. I told you it wouldn't take long.

(Whereupon, Juror Allen was excused from chambers.)

THE COURT: I am bringing them in, and I'll say, Ladies and gentlemen, you may have noticed we have talked to several jurors. At this point, I am going to declare a mistrial in the case, and I can't entirely go through the reasons, but there is going to be a mistrial declared, and I apologize for any inconvenience that this was to your lives.

MR. ANDERSON: And, "Thank you, Ms. Allen?"

THE COURT: I probably won't say that. Let me be honest with you, Jim. Bill

    has a right to be bitter. What she is doing in this case is just anti – it's anti everything the system is supposed to stand for, and that's not right one way or the other, and you both ought to agree on that.

    (Whereupon, the discussion in chambers was concluded at 11:23.)

(Trial Transcript Volume 5 pp. 499-508.) The trial court granted the joint motion for a mistrial. (Trial Transcript Volume 5 p. 530.)

    Respondent also notes that, during the evidentiary hearing, Prosecutor William Anderson testified that he believed that the hung jury resulted because of a lone holdout on the jury. Prosecutor Anderson also testified that he did not change the presentation of his case following the hung jury mistrial.

                                                  Respectfully submitted,

                                                  MARC DANN (0039425)
                                                  Attorney General

                                                  s/Jerri L. Fosnaught
                                                  JERRI L. FOSNAUGHT (0077718)
                                                  Assistant Attorney General
                                                  Corrections Litigation Section
                                                  150 East Gay Street, 16th Floor
                                                  Columbus, OH  43215
                                                  (614) 644-7233
                                                  FAX:  (614) 728-9327
                                                  jfosnaught@ag.state.oh.us

                                                  Counsel for Respondent

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and accurate copy of the foregoing was electronically filed on July 20, 2007. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                           s/Jerri L. Fosnaught_____
                                                           JERRI L. FOSNAUGHT (0077718)
                                                           Assistant Attorney General