1

```
 1                  COURT OF COMMON PLEAS

 2                  HAMILTON COUNTY, OHIO

 3

 4  STATE OF OHIO   )

 5   PLAINTIFF,     )

 6    vs.           )   Case Number:  B-9807452

 7  FREDRICK HALL   )     (Volume 1 of 5)

 8  DEFENDANT.      )

 9

10                       - - -

11          COMPLETE TRANSCRIPT OF PROCEEDINGS

12                       - - -

13  APPEARANCES:

14          WILLIAM ANDERSON, ESQ.

15                  On behalf of the Plaintiff.

16

17          ELIZABETH ZUCKER, ESQ.
                    and
18          JAMES RADER, ESQ.

19                  On behalf of the Defendant.

20          BE IT REMEMBERED that upon the jury trial

21  of this cause, in the Court of Common Pleas,

22  before the Honorable STEVEN E. MARTIN, one of the

23  judges of the said Court of Common Pleas, on the

24  date hereinafter stated, the following proceedings

25  were had.
```

```
 1            MORNING SESSION, April 27, 1999
 2            THE COURT:  Deputy, bring down Mr.
 3       Hall and that will be for trial.
 4            MR. ANDERSON:  I will ask for a
 5       separation.
 6            THE COURT:  Everybody who is going to
 7       be a witness in this case potentially will
 8       have to have a seat out in the hall.  Are
 9       either one of these people going to be
10       witnesses?
11            MR. RADER:  Yes.
12            THE COURT:  You'll have to have a seat
13       out in the hall on the bench, both of you.
14            MR. RADER:  One of them is not going
15       to be a witness.
16            THE COURT:  What's his or her name?
17            MR. ANDERSON:  That's Mr. Hall's
18       wife.
19            THE COURT:  She can sit there then.
20            THE DEFENDANT:  She's going to be a
21       witness.  My son is not going to be a
22       witness.
23            THE COURT:  Your son?
24            THE DEFENDANT:  Yes.
25            THE COURT:  Okay.
```

```
 1              (Jury entered courtroom at 11:35 a.m.)
 2          THE COURT:  Everybody sit down except
 3      the jurors.
 4          All stand up and raise your right
 5      hand.
 6              (Jury sworn on voir dire.)
 7          THE COURT:  Please be seated.
 8      Welcome, ladies and gentlemen.  My name is
 9      Steve Martin.  I'm the Judge in this
10      courtroom and we're glad to have you here.
11      Our system of justice only works when
12      people like you are willing to take time
13      out of your lives to sit as jurors.
14          We do appreciate your willingness to
15      serve on cases in general and on this case
16      in particular.
17              This is a criminal case.  It involves
18      several charges.  The State is represented
19      by Bill Anderson.  Does anybody know Mr.
20      Anderson?
21              The defendant is Fredrick Hall and his
22      attorneys are James Rader and Elizabeth
23      Zucker.  Does anybody know the defendant or
24      his counsel?
25              This case is likely going into next
```

```
 1        week.  Our trial schedule will be that
 2        we'll go today till about 3:30.  We'll
 3        probably go tomorrow if we can to 4:30 and
 4        then Thursday about 4:30 and then we're
 5        going to be off Friday because I have
 6        another matter, and resume on Monday.  And
 7        I don't know how long it will take after
 8        that.
 9             It will complete, you'll get the case
10        on Monday or Tuesday, whoever the 12 are
11        that deliberate.  But the case will go on
12        that schedule.  Does that schedule present
13        a problem for anyone?
14             Ms. Stein?
15             PROSPECTIVE JUROR 1:  Yes, Your Honor.
16        I had asked originally to be excused
17        Thursday and Friday because of previous
18        vacation plans.
19             THE COURT:  Okay, that's no problem.
20        Glad you're raising it with us now.
21             By the way, for those who don't know,
22        I think most of you do know by now, we've
23        been handed these schematics.  I'm not
24        clairvoyant.  We don't know each other.
25        But that's fine.  We'll excuse you for
```

```
 1        cause at this time.  Thank you very much.
 2        Danny Williams.
 3              Okay.  Anybody else got a scheduling
 4        problem that they know of up front?
 5              This is a criminal case.  The jurors
 6        that are selected to sit on this case will
 7        be asked to decide whether Mr. Hall is
 8        guilty or not guilty.  Does that kind of
 9        decision give anybody such discomfort that
10        they don't want to sit on a criminal case?
11              The charges in this case are
12        felonious assault, attempt murder, and
13        failure to comply with the order of a
14        police officer.
15              Does the nature of those charges give
16        anybody any reason to believe they couldn't
17        be fair and impartial or wouldn't want to
18        serve on the case?
19              The case was investigated by the
20        Cincinnati Police Department and Ms.
21        Newman, I'll ask you -- Mr. Anderson, can
22        you get the officers that are involved?
23              MR. ANDERSON:  Yes, Your Honor?
24              Potential officers from Cincinnati are
25        Huffman, Bailey, Neack, Eatrides, Ruberg
```

6

```
 1      and Fromhold.
 2            THE COURT:  Do you know any of those
 3      folks?
 4            PROSPECTIVE JUROR 12:  All of them.
 5            THE COURT:  Maybe it would be best if
 6      you sit on another case, not this one.  Not
 7      saying you couldn't be fair and impartial.
 8            PROSPECTIVE JUROR 12:  I understand.
 9            THE COURT:  We usually strike people
10      that know any of the witnesses on a case.
11      Mr. Newman, thank you very much.  We'll
12      excuse you for cause at this time.
13            (Prospective Juror 12 excused.)
14            THE COURT:  Ms. Rucker?
15            Does anybody else know any of the
16      officers?  You're Mr. Arkenau?
17            PROSPECTIVE JUROR:  Yes, I'm a retired
18      Cincinnati police officer.
19            THE COURT:  We'll excuse you as well
20      right now.  Thank you very much, Mr.
21      Arkenau.  I appreciate your bringing that
22      up.  I saw the name and I thought I should
23      ask you, too.  Thank you very much.
24            PROSPECTIVE JUROR:  Uh-huh.
25            (Prospective Juror excused.)
```

1              THE COURT:  Now, the process we're

2        about ready to go into is traditionally

3        called voir dire.  That is the process

4        where the attorneys get to ask you

5        questions that bear on your particular

6        fitness to serve on this particular case,

7        not on your fitness to serve on any case

8        but just on this case.

9              And the questions aren't meant to

10       probe into your personal lives but they're

11       meant to give the attorneys the ability to

12       gauge whether or not you can fair and

13       impartial in this case.

14             My job as a Judge is similar to a

15       referee.  I have no interest in this

16       proceeding one way or the other.  My only

17       interest in this proceeding is to make sure

18       that the State of Ohio and the defendant

19       get a fair trial.

20             They are entitled to the same fair

21       trial, no one more so than the other.

22             What we want are jurors who can be

23       fair and impartial.  If, however, the 12

24       that end up deciding the case -- if the

25       jury decides the case and I preside over

```
 1          the case and we can look at each other at
 2          the end of the case and say we gave both
 3          sides a fair trial, that's all anybody can
 4          ask for, regardless of the outcome.
 5              So the voir dire process is set up by
 6          the rules. And it's designed to try and get
 7          jurors that can be fair and impartial in
 8          the case.
 9              With that, we'll begin.
10              Mr. Anderson?
11              MR. ANDERSON:  Thank you, Your Honor.
12                  VOIR DIRE EXAMINATION
13  BY MR. ANDERSON:
14              Good morning everybody.
15              As Judge Martin indicated, my name is
16          Bill Anderson.  I'll be presenting the case
17          to you in the course of the next few days.
18          As Judge Martin indicated I will be asking
19          you questions, along with Mr. Rader and Ms.
20          Zucker, just to determine whether or not
21          you can in fact be fair and impartial in
22          this case.  And I think you saw an example
23          of it just now when Juror Number 12, the
24          police officer who knew all those other
25          officers, the Court felt he probably
```

1          couldn't be fair and impartial because

2          these were guys that he worked with and

3          everything else so he was excused for

4          cause.

5              That's why we're here, to ascertain

6          whether or not you all can be fair and

7          impartial.  So the questions I ask are

8          certainly not meant to pry but merely to

9          determine whether or not on behalf of the

10         State I feel that you could be fair and

11         impartial to the State.

12             I did read off some police officers'

13         names.  I will read them very quickly

14         again.  There are a few civilians that will

15         also testify in this matter.  So listen

16         carefully and if you recognize any of the

17         names, please raise your hand.

18             As I indicated, the potential police

19         officer witnesses are Officers Huffman,

20         Bailey, Neack, Eatrides, Ruberg, and

21         Fromhold.

22             Is anybody familiar with any of those

23         police officers?

24             Potential civilian witnesses include

25         Kevin Davis, Johann Hart, Jimmy Martin, and

```
 1          Lalita Moore.  Does anybody recognize any
 2          of those names?
 3              And the final potential witness is an
 4          individual by the name of Bill Schrand.
 5          He's an employee of the coroner's office.
 6          He does ballistics examinations and things
 7          of that nature.  Does anybody know Mr.
 8          Schrand?  Okay.
 9              As Judge Martin indicated to you,
10          there are several charges in this case.
11          There are two counts of felonious assault;
12          actually I think four counts of felonious
13          assault; two counts of attempted murder and
14          one count of fleeing and eluding from a
15          police officer.
16              I'm not going to get into the facts
17          too much but I think it's reasonable in
18          order to ascertain whether or not you can
19          be fair and impartial to see whether
20          anybody has heard anything about the
21          case or remembers anything about it.
22              This occurred back on October 17,
23          1998, at approximately 3:15 on Republic
24          Street.  It's alleged that the defendant
25          shot two juveniles, Johann Hart and Kevin
```

1       Davis.  One of them was shot once and one

2       twice.

3           A broadcast of the car used in the

4       shooting was put out over the police radio.

5           A car matching the description was

6       observed by the police.  The defendant was

7       observed driving that car by the police and

8       a chase ensued at 60 miles an hour through

9       some city streets.

10          The defendant was finally apprehended

11      by the police a short time thereafter and

12      he did make some statements concerning the

13      offense and things of that nature.

14          Does anybody remember anything about

15      this case?  I'm sure at the time it

16      probably hit the news in the Metro section

17      in the Enquirer, something like that.  I

18      see a lot of blank stares, so I'll assume

19      that nobody knows anything about this.

20              Judge Martin asked you a little

21      bit about whether or not the nature of the

22      case would affect anybody.  Is there

23      anybody on the potential jury panel who is

24      I guess either pro gun or ante gun?

25      Anybody a member of handgun control or NRA?

1          Again, I see a lot of blank stares.

2      The bottom line is handguns are legal.

3      They're in society.  They can be used for

4      good purposes as well as bad purposes.

5      Nobody who has any strong feelings one way

6      or the other?

7          What about the fact that somebody got

8      shot with a gun?

9          I'm not going to introduce a bunch of

10     medical records.  There aren't any gory

11     photographs or anything of that nature that

12     you see in cases like this sometimes, but

13     you probably will see some scars on the

14     neck of one of the guys where he got shot.

15         Does anybody have a problem seeing

16     that, seeing those types of injuries in a

17     case like this?

18         I'll tell you right now, no gun was

19     recovered.  There was no gun recovered in

20     the case so we do not have the weapon that

21     was used to shoot.  There were some shell

22     casings recovered from the car that the

23     defendant was driving.  Actually one shell

24     casing, two shell casings recovered at 10

25         --

1            MR. RADER:  Objection, Your Honor.

2      This sounds like opening statement.

3            THE COURT:  Sustained.  Why don't we

4      move on into the other questions.

5            MR. ANDERSON:  Okay.  The fact that no

6      gun was recovered, is that going to pose a

7      problem for anybody?  I mean we have

8      evidence that they were shot.

9            One of the things that you'll be

10     called upon to do is assess the credibility

11     of the witnesses that you hear from.  And

12     Judge Martin will instruct you on what

13     types of things you look for.  You

14     basically rely on your everyday experiences

15     and things of that nature.

16           But there are certain instructions

17     that you hear from Judge Martin concerning

18     credibility of the witnesses.

19           Ms. Williams, do you feel comfortable

20     assessing and judging the credibility of

21     people that you hear from?

22           PROSPECTIVE JUROR:  Yes.

23           MR. ANDERSON:  I didn't look at your

24     questionnaire.  I'm sure you deal with

25     people on a day-in/day-out basis?

14

```
1              PROSPECTIVE JUROR:  Yes.

2              MR. ANDERSON:  Sometimes you believe

3         everything they tell you and sometimes not.

4              PROSPECTIVE JUROR:  Right.

5              MR. ANDERSON:  But you feel

6         comfortable in that.  Do you all feel

7         comfortable listening to what somebody has

8         to say and then deciding if what they say

9         is true?  Anybody have a problem with that?

10             One of the things that Judge Martin

11        will assist you on, as far as assessing

12        credibility, is whether somebody has a

13        prior conviction for a felony, a term of

14        imprisonment in excess of a year.  And one

15        of the witnesses who got shot that night in

16        fact has a conviction.  He was actually

17        carrying cocaine the night he was shot.  Is

18        that going to sway anybody one way or the

19        other, the fact that he was probably out on

20        the street corner at 3:15 in the morning

21        dealing crack?  Is that going to make you

22        say I don't care what he says, if he was

23        out there dealing crack.

24             Is it Ms. Rasnick?  How does that play

25        in your mind?
```

```
 1            PROSPECTIVE JUROR 6:  It didn't.

 2            MR. ANDERSON:  He was out there

 3       dealing crack was not a good thing.  He's

 4       locked up right now.  He got convicted of

 5       it.  But the fact that he was out dealing

 6       crack you're not going to say, well, that

 7       guy was out dealing crack.  It was against

 8       the law.  He probably deserved to get shot

 9       anyway.

10            Ms.  Richards, how do you feel about

11       that.

12            PROSPECTIVE JUROR 12:  Doesn't have

13       any effect.

14            MR. ANDERSON:  You'll listen to what

15       he has to say and you'll weigh his

16       testimony just like you would anybody else?

17            PROSPECTIVE JUROR 12:  Correct.

18            MR. ANDERSON:  With the provision so

19       that you can use that felony conviction in

20       part of your weighing of credibility?

21            PROSPECTIVE JUROR 12:  True.

22            MR. ANDERSON:  Mr. Trigger, how do

23       you feel about that?

24            PROSPECTIVE JUROR 10:  I feel that

25       marijuana is a major item for a person's
```

```
 1          life.  What we're dealing with is a
 2          person's life.
 3                MR. ANDERSON:  Actually it's crack
 4          cocaine.  It's actually a little more
 5          serious than marijuana but it was illegal.
 6          Because he was dealing doesn't mean he
 7          deserved to get shot.
 8                PROSPECTIVE JUROR 10:  No.
 9                MR. ANDERSON:  Can you all agree with
10          me he was breaking the law?  There is no
11          question about it.
12                Mr. Sauer?
13                PROSPECTIVE JUROR:  Yes, that part is
14          wrong.
15                MR. ANDERSON:  But just because he has
16          broken the law doesn't mean he can't be
17          telling the truth as well?
18                PROSPECTIVE JUROR 10:  They could be
19          doing two things, yes.
20                MR. ANDERSON:  Good things and bad
21          things?
22                PROSPECTIVE JUROR 10:  True.
23                MR. ANDERSON:  Judge Martin is going
24          to instruct you that when you assess the
25          credibility of witnesses you can believe
```

1    everything they say, you can believe

2    nothing they say, or you can believe part

3    of what they say.  So you guys are put in a

4    position where you can pick and choose what

5    you want to believe from each witness.  So

6    you don't have to say I believe him on

7    this, so I have to believe him on

8    everything, or I don't quite believe that.

9         PROSPECTIVE JUROR 10:  In the end the

10   real thing is between him and the Lord.

11        MR. ANDERSON:  That's a very good

12   question, Ms. Traverse.  It's between him

13   and the Lord.  But you know, the Lord is

14   not here right now and you are put in a

15   position to sit in judgment.

16        PROSPECTIVE JUROR:  We're acting

17   through the Lord in my judgment;

18   decision-making, I should say.

19        MR. ANDERSON:  Actually we're not

20   acting through the Lord because what you're

21   going to be instructed to do, Ms. Traverse,

22   if you sit on this jury, is follow the

23   instructions as Judge Martin gives you.

24        And we're dealing with the future

25   lives of these people and their actions and

1         what they have done.

2              Actually, what we're dealing with is

3         whether this defendant, Fredrick Hall, is

4         guilty or not guilty.  Okay.  We're not

5         here about these other two guys.  They are

6         victims in the case.  But we're here for

7         one purpose and that is to assess whether

8         this defendant, Fredrick Hall is guilty or

9         not guilty.

10             And everyone is innocent until proven

11        guilty.  That's true and Judge Martin will

12        instruct you on that as well.

13             Ms. Travis, you've indicated we all

14        meet our maker at some point and that's

15        true.  However, will you follow the law as

16        Judge Martin gives it to you even if you

17        disagree with it?

18             PROSPECTIVE JUROR:  Yes.

19             MR. ANDERSON:  Even if it violates

20        God's law?

21             PROSPECTIVE JUROR:  Right.

22             MR. ANDERSON:  Can you do that?

23             PROSPECTIVE JUROR:  At this point,

24        yes.

25             MR. ANDERSON:  Well, at this point, I

1       need more than that.

2               THE COURT:  Ms. Travis, here's the

3       deal.  What Mr. Anderson is getting at,

4       we're going to hear facts in this case and

5       it will be up to you to determine what

6       those facts are.  I don't know what facts

7       you're going to hear but you're going to

8       hear the facts and it's up to you to

9       determine the facts in this case.

10              On the other hand, I'm the one who

11      determines what the law is.  And when I

12      give you an instruction on the law, the

13      instruction will say that this is the law.

14      You have to follow the law even if you

15      think it's bad, even if you think it's

16      stupid, even if you don't think the law

17      should exist, you have to follow the law.

18              The question we're getting at here,

19      can you agree to do that up front, or are

20      you going to ignore what my instructions on

21      the law are?

22              That goes for everybody.  Hold on just

23      a second.

24              Can everybody agree to do that?

25              Ms. Travis, can you agree to do that?

```
 1              PROSPECTIVE JUROR 10:  Yes.
 2              THE COURT:  Now, sir, what's your
 3         name?
 4              PROSPECTIVE JUROR 9:  Mike Williamson.
 5              THE COURT:  Okay.  You raised your
 6         hand.
 7              PROSPECTIVE JUROR 9:  Honestly
 8         speaking, if it went against my religious
 9         beliefs, I'd probably have to -- I mean,
10         not anything on you or the court system, or
11         anybody or anything.  I do believe in the
12         judicial system, discrepancies between you
13         and the Lord.
14              THE COURT:  I'm not arguing with that.
15         Most of our -- as much as we try and get
16         away from it, our legal system, I don't try
17         to get away from it as much as say our
18         legal system is almost entirely based on
19         religious creeds that are common to a lot
20         of religions.
21              The question becomes this is a case
22         involving felonious assault, attempted
23         murder, and failure to comply with the
24         order of a police officer.  If I give you
25         an instruction in this case, do you think
```

 1          you can follow the law?

 2               PROSPECTIVE JUROR:  Sir, as long as

 3          the law doesn't stray from the Bible.

 4               THE COURT:  Okay.  Well, at this point

 5          then I'll excuse you because here's the

 6          reason.  I can't guarantee how you see the

 7          Bible that the law is going to be in

 8          compliance with that.  My guess is quite

 9          frankly, the way I see it, the law that

10          I'll give you will be -- I don't know what

11          the facts are in this case and I have no

12          opinion in this case.  But I will excuse

13          you at this time because what you have to

14          do at this point is agree to follow the law

15          as I give it to you, and we can't be

16          conditional with that in this situation.

17          We have a lot of very religious people who

18          sit on cases every day.  Christian people.

19          Jewish people.  Muslim people.  They all

20          follow it.  If you think that there might

21          be a potential for a conflict, whether

22          there actually is or not, it's probably

23          best that you don't serve on this

24          particular case.  You go up and see Fritz

25          Meyer, the jury commissioner and serve on

```
 1        another one.  I'll excuse Mr. Williamson
 2        for cause at this time.
 3             Mr. Williamson, thank you very much
 4        for rasing your hand and bringing that to
 5        our attention.  I really appreciate it.
 6        It's appreciated.  Thank you very much.  Go
 7        on back upstairs if you will.
 8             (Prospective Juror excused.)
 9             THE COURT:  Can everybody else agree
10        basically to follow the law as I give it to
11        you?
12             This doesn't usually come up but
13        that's okay.  And you understand that you
14        and you along will decide the facts.  I
15        have no opinion about this case.  Don't
16        interpret anything that I say or do or any
17        rulings that I make that I have an opinion
18        on the facts.
19             Go ahead.
20             MR. ANDERSON:  That gets us to our
21        next question.
22             Is there anybody that has a problem
23        sitting in judgment on another for either
24        religious, moral, or philosophical reasons?
25             No hands raised so I would assume that
```

```
 1         you all feel comfortable.  Basically, what
 2         we're here for is this.  We're going to put
 3         witnesses on the stand.  You're going to
 4         assess what they tell you, decide what to
 5         believe and apply the facts as you as a
 6         deliberative body find them, as Judge
 7         Martin gives them to you.
 8              Ms. Prior, do you watch any TV shows
 9         on homicides?
10              PROSPECTIVE JUROR 2:  No.
11              MR. ANDERSON:  Don't watch that much
12         TV, not on those types of shows?
13              PROSPECTIVE JUROR 2:  No, I really
14         don't.  None of the police type.  Like ER
15         or something I watch.
16              MR. ANDERSON:  I'm sure you've heard
17         the phrase beyond a reasonable doubt,
18         haven't you?
19              PROSPECTIVE JUROR 2:  (Indicate yes.)
20              MR. ANDERSON:  Judge Martin as part of
21         the law will instruct you as a juror what
22         the phrase beyond a reasonable doubt means.
23         And it's his job to instruct you on the
24         law.  Is there any reason, Ms. Prior, that
25         you would hold the State to a higher burden
```

```
 1          than proof beyond a reasonable doubt?
 2                  PROSPECTIVE JUROR:  Do I get to hear
 3          the definition of beyond a reasonable
 4          doubt?
 5                  MR. ANDERSON:  Yes.
 6                  PROSPECTIVE JUROR:  I would say no.
 7                  MR. ANDERSON:  I mean, you won't hold
 8          -- Judge Martin will give you the
 9          definition of proof beyond a reasonable
10          doubt.  You won't say, well, I want the
11          State to prove it beyond any doubt or I
12          want the State to prove it to a hundred
13          percent certainty?  I mean, you're not
14          going to require the State to meet its
15          burden beyond any doubt, are you?
16                  PROSPECTIVE JUROR:  No.
17                  MR. ANDERSON:  Mr. Blames, how about
18          you?
19                  PROSPECTIVE JUROR 11:  If you were
20          able to prove it without a doubt.
21                  MR. ANDERSON:  So what I'm saying is
22          that if the State is successful in meeting
23          its burden of proof as defined by law, you
24          could in fact find the defendant guilty?
25                  PROSPECTIVE JUROR:  Yes.
```

```
 1              MR. ANDERSON:  No problem if we meet
 2      the burden of proof back there signing your
 3      name in ink to a verdict form that this
 4      guy's guilty?
 5              PROSPECTIVE JUROR:  Yes.
 6              MR. ANDERSON:  Likewise, if the State
 7      of Ohio fails to meet its burden and this
 8      is the part that always chokes me up a
 9      little, but if we fail to meet the burden,
10      you have an obligation to find him not
11      guilty.
12              PROSPECTIVE JUROR:  I will do that,
13      sir.
14              MR. ANDERSON:  Fair enough.
15              Mr. Rysteel, how about you?
16              PROSPECTIVE JUROR 8:  Yes.
17              MR. ANDERSON:  It's kind of a weird
18      definition in some respects because there
19      is no absolute certainty of what the
20      definition is.  But you will not hold the
21      State of Ohio to a higher burden because
22      there can be some doubt.  It's doesn't have
23      to be a hundred percent.  Okay?  And
24      likewise if the State does not meet its
25      burden you have a duty and obligation to
```

```
 1          find him not guilty, right?

 2               PROSPECTIVE JUROR 8:  Yes.

 3               MR. ANDERSON:  Ms. Bradford, how about

 4          you?  Do you have any problems with that

 5          one way or the other?

 6               PROSPECTIVE JUROR 7:  No.

 7               MR. ANDERSON:  Is there anybody that

 8          would have a problem if the State of Ohio

 9          meets its burden in signing a guilty

10          verdict in ink back in the jury room?  I

11          know it may sound like a stupid question

12          but "I think he did it," "I can't sit in

13          judgment of another person," "I'm not going

14          to sign a guilty verdict" -- do you all

15          feel comfortable in that?

16               As Judge Martin indicated to you,

17          myself and Mr. Rader have an advantage over

18          you guys because we've got these little

19          juror questionnaires that you filled out.

20          We know a little bit about you guys.  You

21          know absolutely nothing about us.

22               What I'd like to do is kind of go

23          through the questionnaires.  If anything

24          that you filled out on here pops out I'll

25          ask you about it.
```

```
 1              I'll start with Mr. Williams.  You've

 2        indicated that either you or a member of

 3        your family has been the victim of a crime.

 4        I don't want to know what the crime is but

 5        was it reported to the police?

 6              PROSPECTIVE JUROR:  Yes.

 7              MR. ANDERSON:  Were the suspects

 8        apprehended, anything of that nature?

 9              PROSPECTIVE JUROR:  No.

10              MR. ANDERSON:  Do you feel that the

11        police did everything they could in order

12        to solve the case, so to speak?

13              PROSPECTIVE JUROR:  Sure.

14              MR. ANDERSON: Is there any reason that

15        you would give any more or any less

16        credibility to the testimony of a policeman

17        simply because he is a police officer?

18              PROSPECTIVE JUROR:  No.

19              MR. ANDERSON:  You would weigh him

20        just like you would every citizen that

21        walks in off the street?

22              PROSPECTIVE JUROR:  Yes, I would.

23              MR. ANDERSON:  Is there any reason you

24        could not be fair and impartial in this

25        case?
```

```
 1              PROSPECTIVE JUROR:  No.

 2              MR. ANDERSON:  Mr. Carter, is there

 3         any reason you feel you cannot be fair and

 4         impartial?

 5              PROSPECTIVE JUROR 2:  No.

 6              MR. ANDERSON:  I mean you don't know

 7         me, you don't know the defendant, you don't

 8         know anybody, you'll follow the law and all

 9         the rest.  Is there any reason that you

10         would give any more or any less credibility

11         to the police officers?

12              PROSPECTIVE JUROR 2:   No.

13              MR. ANDERSON:  Ms. Rueger, you

14         indicated that either you or a member of

15         your family were a victim of a crime.  I

16         don't know what the crime was but was it

17         reported to the police?

18              PROSPECTIVE JUROR 3:  Yes.

19              MR. ANDERSON:  Were the police

20         successful in apprehending a suspect?

21              PROSPECTIVE JUROR 3:  No.

22              MR. ANDERSON:  Did that cause you any

23         concern at all?

24              PROSPECTIVE JUROR 3:  No, I think they

25         tried to solve it.
```

1               MR. ANDERSON:  You think the police

2       did everything they could to try and solve

3       the crimes against you or a member of your

4       family?

5               PROSPECTIVE JUROR 3:  Yes.

6               MR. ANDERSON:  Was the crime in

7       Cincinnati?

8               PROSPECTIVE JUROR 3:  It was.  The

9       circumstances were that it was on her

10      birthday and the young woman who took it

11      had filled out forms, a questionnaire.

12      When I reported the crime, I gave that

13      information to them.  And, you know, they

14      told me she had aliases.

15              MR. ANDERSON: And you're a new alias?

16              PROSPECTIVE JUROR:  Yeah.

17              MR. ANDERSON:  So you were

18      disappointed with the way the police

19      handled it?

20              PROSPECTIVE JUROR:  Maybe not -- they

21      didn't do everything they could do.

22              MR. ANDERSON:  That's fair enough.

23      That's kind of why we're here.  You'll find

24      certain cases where somebody has reported a

25      crime and they feel the police -- they are

```
 1          not going to believe a word the police say.

 2          But you don't feel that way.  You'll listen

 3          to the police officers?

 4               PROSPECTIVE JUROR:  Yes.

 5               MR. ANDERSON:  Just like you would

 6          anybody else?

 7               PROSPECTIVE JUROR:  Yes.

 8               MR. ANDERSON:  Assess the credibility

 9          by the same standards as you would every

10          other witness?

11               PROSPECTIVE JUROR:  Yes.

12               MR. ANDERSON:  Ms. Moody, is there any

13          reason you feel you couldn't be fair and

14          impartial?

15               PROSPECTIVE JUROR:  No.

16               MR. ANDERSON:  Mr. Ruther, not much on

17          here that sticks out.  So I'd ask do you

18          feel that you can fair and impartial to the

19          State of Ohio and the defendant?

20               PROSPECTIVE JUROR 4:  Yes.

21               MR. ANDERSON:  Do you feel comfortable

22          listening to testimony and determining for

23          yourself what you believe is true and

24          what's not true?

25               PROSPECTIVE JUROR:  Yes.
```

```
 1              MR. ANDERSON:  You can follow the law?
 2              PROSPECTIVE JUROR:  Yes.
 3              MR. ANDERSON:  Hold the State of Ohio
 4      to its burden with no higher burden of
 5      proof, make a decision based on the facts
 6      and the law as Judge Martin gives it to
 7      you?
 8              PROSPECTIVE JUROR:  Yes.
 9              MR. ANDERSON:  Is it Mr. Vonderhyde?
10              PROSPECTIVE JUROR:  Yes.
11              MR. ANDERSON:  Sir, you indicated that
12      you have served as a juror twice before.
13      One in 1992 and one in 1983.
14              PROSPECTIVE JUROR 5:  That's right.
15               MR. ANDERSON:  Both times?
16              PROSPECTIVE JUROR 5:  Yes.
17              MR. ANDERSON:  Did you sit on a jury
18      on both of those occasions?
19              PROSPECTIVE JUROR 5:  Yes.
20              MR. ANDERSON:  Civil or criminal jury?
21              PROSPECTIVE JUROR 5:  Criminal.
22              MR. ANDERSON:  Was there anything
23      about sitting on those criminal juries on
24      those two occasions that would in any way
25      influence your ability to be fair and
```

1          impartial in this case?

2                  PROSPECTIVE JUROR 5:  No, there

3          wasn't.

4                  MR. ANDERSON:  Is there anything that

5          happened during the course of these two

6          trials that would, I don't know, color your

7          outlook on things, so to speak?

8                  PROSPECTIVE JUROR 5:  No.

9                  MR. ANDERSON:  You found it okay to

10         sit back there in a room with 12 people and

11         kind of locked away till you reached a

12         verdict?

13                 PROSPECTIVE JUROR 5:  I did.

14                 MR. ANDERSON:  Any arguments or fights

15         break out?

16                 PROSPECTIVE JUROR 5:  No fights.

17         Disagreements.

18                 MR. ANDERSON:  But you were able to

19         resolve them?

20                  PROSPECTIVE JUROR 5:  Right.

21                 MR. ANDERSON:  Is there any reason you

22         feel you can't be fair and impartial in

23         this case?

24                 PROSPECTIVE JUROR 5:  There isn't.

25                  MR. ANDERSON:  Ms. Resnick, is there

```
 1        any reason you feel you can't be fair and

 2        impartial in this case?

 3             PROSPECTIVE JUROR 6:  No.

 4              MR. ANDERSON:  Both to the State as

 5        well as the defendant?

 6             PROSPECTIVE JUROR 6:  No.

 7             MR. ANDERSON:  Ms. Bradford, you

 8        indicated that you work in the Hamilton

 9        County Department of Human Services.  In

10        what particular branch of the Human

11        Services Department do you work?

12             PROSPECTIVE JUROR 8:  Personnel

13        projects.

14             MR. ANDERSON:  Ms. Vale, in your job

15        as a social worker you have been here all

16        the time testifying in trial, and doing

17        investigations for like welfare fraud and

18        food stamp fraud, things like that.  Do you

19        do any of that?

20             PROSPECTIVE JUROR:  I've done that

21        before, yes.

22             MR. ANDERSON:  Have you ever testified

23        before at trial?

24             PROSPECTIVE JUROR:  Yes.

25              MR. ANDERSON:  How did that go?  I
```

```
 1   mean how did you feel being a witness in a case?

 2              PROSPECTIVE JUROR:  Just state the

 3         facts.  That's what happened.

 4              MR. ANDERSON:  Little nervous?

 5              PROSPECTIVE JUROR:  Yes.

 6              MR. ANDERSON:  Was there anything

 7         about that experience, being a witness in a

 8         case, that would in any way influence your

 9         ability to be fair and impartial in that

10         case?

11              PROSPECTIVE JUROR:  No.

12              MR. ANDERSON:  You work for Hamilton

13         County?   PROSPECTIVE JUROR:  I work for

14         Hamilton County.          MR. ANDERSON:

15         Judge Martin works in Hamilton County.  Is

16         there any reason you would have any certain

17         allegiance to the State of Ohio because you

18         were a Department of Human Services

19         employee?

20              PROSPECTIVE JUROR:  No.

21              MR. ANDERSON:  Make a decision based

22         upon the facts as you determine them to be

23         and the law as Judge Martin gives it to

24         you?

25              PROSPECTIVE JUROR:  Correct.
```

```
 1              MR. ANDERSON:  Mr. Rubenstein, you
 2         indicated you were a juror a long time ago?
 3              PROSPECTIVE JUROR 8:  I think it was
 4         the late sixties.
 5              MR. ANDERSON:  Did you serve on a jury
 6         at that time?
 7               PROSPECTIVE JUROR 8:  Yes.
 8              MR. ANDERSON:  Civil, criminal?
 9              PROSPECTIVE JUROR 8:  One of each.
10              MR. ANDERSON:  You were very busy.
11         I'm assuming you recognize -- I don't know
12         how much you remember about that but there
13         are differences between civil and criminal
14         laws as far as burden of proof and certain
15         admissible evidence and things like that.
16         Was there anything about those two
17         experiences back in the late sixties that
18         would preclude your ability to be fair and
19         impartial to the State as well as the
20         defendant?
21              PROSPECTIVE JUROR 8:  No.
22              MR. ANDERSON:  Do you feel you could
23         be fair and impartial in this case?
24              PROSPECTIVE JUROR 8:  Yes, sir.
25              MR. ANDERSON:  Ms. Allen, how about
```

```
 1      you?  Do you feel that you can be fair and

 2      impartial in this case?

 3           PROSPECTIVE JUROR 9:  Yes.

 4           MR. ANDERSON:  Anything about the

 5      facts of the case that would particularly

 6      trouble you at all?  I think the victims in

 7      the case are both relatively young, 17, 18

 8      years old, maybe 15 years old.  Anything

 9      about that?

10           PROSPECTIVE JUROR 9:  No.

11           MR. ANDERSON:  Ms. Travis, we've

12      already had a little discussion but I got a

13      few other things I'd like to talk about.

14      You indicated that either you or a member

15      of your family has been the victim of a

16      crime?

17           PROSPECTIVE JUROR:  Yes.

18           MR. ANDERSON:  Was that reported to

19      the police?

20           PROSPECTIVE JUROR:  Yes, sir.

21           MR. ANDERSON:  Were the police

22      successful in apprehending the suspect or

23      suspects?

24           PROSPECTIVE JUROR:  No.

25           MR. ANDERSON:  Would you hold that
```

```
 1       against the police?

 2           PROSPECTIVE JUROR:  No, I don't hold

 3       anything against them as yet.

 4            MR. ANDERSON:  You waiting on

 5       something to come up so you could hold it

 6       against them.  PROSPECTIVE JUROR:  I

 7       wouldn't have the proof that they are not

 8       doing their job although there is no news

 9       still.

10           MR. ANDERSON:  How long ago did this

11       happen?   PROSPECTIVE JUROR:  The first

12       Wednesday in March.

13           MR. ANDERSON:  Of this year?

14           PROSPECTIVE JUROR:  Yes.

15           MR. ANDERSON:  City of Cincinnati?

16           PROSPECTIVE JUROR:  Last month.

17           MR. ANDERSON:  So it's relatively new?

18                 PROSPECTIVE JUROR:  Yes,

19       still hanging in the air.  Sometimes I feel

20       like it may not be solved.

21           MR. ANDERSON:  You also indicated that

22       you were either related or close friends of

23       a law enforcement officer or prosecutor and

24       you indicated not here?

25           PROSPECTIVE JUROR:  Right.  Another
```

 1          state.

 2                  MR. ANDERSON:  A law enforcement

 3          officer or prosecutor?

 4                  PROSPECTIVE JUROR:  Well, a policeman,

 5          law enforcement, now deceased.  And then I

 6          have a relative that is a sheriff.

 7                  MR. ANDERSON:  Where?

 8                  PROSPECTIVE JUROR:  New York State.

 9                  MR. ANDERSON:  Did you ever talk to

10          them about what they do in their job?

11                  PROSPECTIVE JUROR:  No, because I just

12          figure that's private and you can't discuss

13          a lot of things.  In fact, if they

14          discussed every little thing that happened

15          it would probably fill up a newspaper or

16          book, you know.

17                  MR. ANDERSON:  Is there any reason you

18          feel you couldn't be fair and impartial in

19          this case?

20                  PROSPECTIVE JUROR:  No, I'll go by the

21          facts.

22                  MR. ANDERSON:  Fair enough.

23                  Mr. Brady, you indicated that -- I

24          guess it was in New Brunswick, Maryland --

25                  PROSPECTIVE JUROR:  New Jersey.

1           MR. ANDERSON:  -- back in '92 you

2      served on a jury?

3           PROSPECTIVE JUROR:  Yes.

4           MR. ANDERSON:  Anything about that

5      experience that would influence your

6      ability to be fair and impartial in this

7      case?

8           PROSPECTIVE JUROR:  It was a one day

9      affair and I didn't serve on any jury.

10           MR. ANDERSON:  It what?

11           PROSPECTIVE JUROR:  I was called on

12      jury -- see in New Jersey they have one day

13      jury duty.

14           MR. ANDERSON:  One day jury duty.

15           PROSPECTIVE JUROR:  And the thing was,

16      I didn't leave the room.

17           MR. ANDERSON:  Just sat in the room

18      all day?

19           PROSPECTIVE JUROR:  Sat in the room

20      all day.

21           MR. ANDERSON:  How did that affect

22      you?

23           PROSPECTIVE JUROR:  Well, the longer

24      it got into the day I felt I would go on a

25      jury.

```
 1              MR. ANDERSON:  But you did not?
 2              PROSPECTIVE JUROR:  No, I didn't.
 3              MR. ANDERSON:  Is there anything about
 4         waiting around to sit on a jury and not
 5         being on one that caused you any
 6         disappointment or anything?
 7              PROSPECTIVE JUROR:  Oh, no.
 8              MR. ANDERSON:  Do you feel you can be
 9         fair and impartial in this case?
10              PROSPECTIVE JUROR:  Yes.
11              MR. ANDERSON:  You were only on that
12         one for a day.  It may be a little longer
13         than that here.  Are you okay with that?
14              PROSPECTIVE JUROR:  Sure.
15              MR. ANDERSON:  You're related to or
16         close friends of a law enforcement officer
17         or prosecutor?
18              PROSPECTIVE JUROR:  Yes, I am related
19         to, my niece is the city solicitor.
20              MR. ANDERSON:  Where?
21              PROSPECTIVE JUROR:  In Cincinnati.
22              MR. ANDERSON:  What's her name?
23              PROSPECTIVE JUROR:  Jerry Callon.
24              MR. ANDERSON:  Do you talk to her
25         about her job at all?
```

1              PROSPECTIVE JUROR:  No.

2              MR. ANDERSON:  So that would have no

3         influence on your ability to be fair and

4         impartial in this case?

5              PROSPECTIVE JUROR:  Correct.

6              MR. ANDERSON:  You're not allowed to

7         conduct any independent investigation.

8         If you're selected to serve on this jury

9         and you her some testimony during the

10        course of the day, you won't be allowed to

11        run home and call her up and say what do

12        you think about this?  I heard somebody say

13        this today.

14             PROSPECTIVE JUROR:  I wouldn't do

15        that.

16             MR. ANDERSON:  You'll be instructed

17        not to.

18             Ms. Kircher, I got it right.  You also

19        indicated you are a close friend of a law

20        enforcement officer and a prosecutor.

21        PROSPECTIVE JUROR 12:  I checked one of

22        them.

23             MR. ANDERSON:  You checked both of

24        them.

25             PROSPECTIVE JUROR 12:  Can I see it?

42

```
 1        No.
 2             MR. ANDERSON:  So you want to disclaim
 3        that answer?
 4             PROSPECTIVE JUROR 12:  I want to
 5        disclaim that answer.
 6             MR. ANDERSON:  Ms.  Rickert, is there
 7        any reason you feel you could not be fair
 8        and impartial in this case?
 9             PROSPECTIVE JUROR:  No.
10             MR. ANDERSON:  Listen to both sides.
11        State will present evidence, the defendant
12        can present evidence but it does not have
13        to, listen to both sides and make a
14        determination based on the facts?
15             PROSPECTIVE JUROR:  Yes.
16             MR. ANDERSON:  The defendant is
17        presumed innocent until proven guilty
18        beyond a reasonable doubt.  So as he sits
19        here today, he's innocent until the point
20        when the jury goes back to begin
21        deliberating and makes a finding of guilty,
22        and basically apply the law to it.  Do you
23        feel comfortable doing that?
24             PROSPECTIVE JUROR:  Yes.
25             MR. ANDERSON:  Is there any reason any
```

```
 1          one of the 12 jurors sitting in the panel

 2          feels that they couldn't be fair and

 3          impartial in this case, both to the State

 4          of Ohio as well as the defendant, Fredrick

 5          Hall?

 6              Judge, at this point the State will

 7          pass for cause.

 8              THE COURT:  Thank you.

 9              Mr. Rader, for the defense?

10              VOIR DIRE EXAMINATION

11  BY MR. RADER:

12              Good afternoon, ladies and gentlemen.

13          My name is Jim Rader, one of the local

14          lawyers representing Mr. Hall in this case,

15          along with Elizabeth Zucker, who is sitting

16          at counsel table.

17              This is a very serious case so I have

18          those kind of feelings about this case, but

19          I want to tell you that I'm always happy to

20          be an American, be in an American court

21          with a jury.

22              I want you to know that in very few

23          countries in the world are there juries,

24          only the English speaking countries. United

25          States, Canada, Australia, Great Britain
```

```
 1        and some of the smaller British colonies.

 2        Otherwise, this case could be being decided

 3        by a Judge.

 4             So I take this profoundly and

 5        seriously and have great respect for the

 6        fact that a citizen in this country can be

 7        judged by a jury of its peers.

 8             That actually started with the Magna

 9        Carta.  Some of you might know in 1244, 700

10        years ago, peers were peers.  They were

11        nobility and the king couldn't punish a

12        peer without the consent of the rest of the

13        nobility.  And that's why juries, you sit

14        here as the rest of the nobility judging

15        one of your peers.

16             This leads to the point that I guess

17        every lawyer has asked himself, what he's

18        going to try to do in voir dire or in

19        questioning the jury or qualifying the

20        jury, seeing that the jury is qualified.

21        Seems to me after 20 years of practice that

22        the most helpful thing for me to address is

23        the judges instructions. Those

24        instructions, some of the concepts, go back

25        as I said for over 700 years.  The language
```

```
 1          that the Judge deals with is critically

 2          important.  These words are chosen with

 3          extreme care.  And it's the quality of the

 4          definitions that you give them or your

 5          interpretation that will make this job easy

 6          or make it difficult.  Your attention to

 7          the Judge's instructions will probably have

 8          a great deal to do with your satisfaction

 9          with yourself as you think back on this

10          case later.

11               I'm told that public speaking is am

12          somewhere on the fear list between or after

13          death and snakes.  And Ms.  Bradford

14          indicated that the courts make her nervous;

15          is that right?

16               PROSPECTIVE JUROR 7:  In the

17          beginning, yes.

18               MR. RADER:  You've testified in

19          courtrooms probably many times, haven't

20          you?

21               PROSPECTIVE JUROR 7:  Yes.

22               MR. RADER:  I've seen you around the

23          system for at least a couple of years.

24          I know you're very busy.  And let me

25          rephrase that by saying, we can take,
```

```
 1              this is the only point in the trial
 2   where  we can carry on a dialogue, we can carry
 3          on a conversation.  I can say things to you
 4          and you can say things back to me.  And
 5              your candor is extremely helpful to
 6   me as  it is to the Court.
 7              I know you have an extremely heavy
 8          workload and I would certainly respect the
 9          notion that you would rather be back at the
10          job doing your workload.
11              Will you be candid with me about that,
12          or do you want to serve on this jury,
13          you've been waiting for this opportunity or
14          looking for this opportunity?  How do you
15          feel about it?              PROSPECTIVE JUROR:
16          Well, I haven't exactly been waiting or
17          looking forward to it.  I'm here, so I'm
18          willing to do what I'm supposed to do.  I
19          would not rather be back at the office with
20          my case load, no.
21              MR. RADER:  Are you willing to give
22          this a shot?
23              PROSPECTIVE JUROR:  I'm willing, yes.
24              MR. RADER:  I've done this for 20
25          years.  I'm still a little nervous myself
```

```
 1          until I get into a case so I can understand
 2          that.  And that's the problem that I'd like
 3          to address with you to some extent.
 4              What if you're back in the jury room
 5          and the foreman says, well, I think we all
 6          agree on that point, let's move on, and you
 7          don't agree with that point.  Can you shed
 8          some light on what you would do in that
 9          case?
10              PROSPECTIVE JUROR:  I would say that I
11          did not agree with it and state why.
12              MR. RADER:  And you can see the
13          necessity of taking that position?
14              PROSPECTIVE JUROR:  (Indicate yes.)
15              MR. RADER:  Can you understand that
16          this is an individual responsibility,
17          although there are 12 of you, that this is
18          your responsibility?
19              PROSPECTIVE JUROR:  Yes.
20              MR. RADER:  Collectively.  You act
21          collectively but you also act individually?
22              PROSPECTIVE JUROR:  Yes.
23              MR. RADER:  And there's got to be a
24          unanimous verdict even though you listen to
25          each other?
```

```
 1              PROSPECTIVE JUROR:  Yes.

 2              MR. RADER:  You understand that it

 3         takes all 12 to find Mr. Hall guilty.  It

 4         takes all 12 to find him not guilty?

 5              PROSPECTIVE JUROR:  Yes.

 6              MR. RADER:  And if your vote is not

 7         among that 12, then there's no majority,

 8         there's no finding.  You understand that?

 9              PROSPECTIVE JUROR:  Yes.

10              MR. RADER:  And you'll exercise your

11         judgment?

12              PROSPECTIVE JUROR:  Yes.

13              MR. RADER:  Let's move on and talk to

14         Mr.  Rinestatler, if you don't mind.  I

15         first that you're an investor; is that

16         right?

17              PROSPECTIVE JUROR:  Right.

18              MR. RADER:  Finances?

19              Right.

20              MR. RADER:  I understand.  Mr.

21         Rinestatler, the prosecutor in his remarks

22         to you indicated that Mr. Hall had been

23         seen leaving the scene of the crime by a

24         policeman; do you recall that?

25              PROSPECTIVE JUROR:  Yes.
```

1          MR. RADER:  He had made some

2     statements?

3          PROSPECTIVE JUROR:  Yes, sir.

4          MR. RADER:  Do you believe the

5     prosecutor?

6          PROSPECTIVE JUROR:  I don't believe or

7     disbelieve.  I haven't heard any evidence

8     yet.

9          MR. RADER:  And you haven't been to

10    law school?  Or have you?

11         PROSPECTIVE JUROR:  No.

12         MR. RADER:  'Cause that's an astute

13    answer.  What I'm talking about is that

14    once you believe something you start down

15    that road, then you pick out things to

16    support your point of view.  And it's

17    awfully hard for you to turn it around.

18    Fundamentally, what I'm asking you is can

19    you sit through this whole proceeding and

20    hear witness after witness after witness,

21    and force yourself by willpower to keep

22    from reaching a conclusion until the end of

23    this case?

24         PROSPECTIVE JUROR:  I think so.

25         MR. RADER:  Do you have any feelings

```
 1      about that?  I mean that's not easy.
 2            PROSPECTIVE JUROR:  I can do that.
 3      It's like you decide you want to apply an
 4      investment before you know all about it.
 5            MR. RADER:  So you're not troubled by
 6      hearing a little bit about it and
 7      understanding that you might hear something
 8      different?
 9            PROSPECTIVE JUROR:  No.
10            MR. ANDERSON:  How's Ms. Allen today?
11            PROSPECTIVE JUROR 9:  Fine.
12            MR. RADER:  Do you feel comfortable
13      being on this jury?
14            PROSPECTIVE JUROR 9:  Yes.
15            MR. RADER:  I believe the Court gives
16      a written jury instruction to the jury; is
17      that correct?
18            THE COURT:  Yes, at the end of the
19      case, after I read it.
20            MR. RADER:  You understand that these
21      instructions, these words, and I'm not
22      being facetious, these words were chosen by
23      geniuses over years and years and years,
24      chosen with great care.  Will you keep that
25      in mind, and pay particular attention to
```

```
 1          the Judge's instructions?
 2               PROSPECTIVE JUROR 9:  Yes.
 3               MR. RADER:  Do you feel comfortable
 4          talking to me?
 5               PROSPECTIVE JUROR 9:  Yes.
 6               MR. RADER:  Do you feel comfortable
 7          expressing yourself in the jury
 8          deliberations?
 9               PROSPECTIVE JUROR:  Definitely.
10               MR. RADER:  Give me some insight into
11          this.  And this is a situation that
12          happened to me.  I tried a case several
13          years ago in Judge Nadel's room on the
14          fifth floor.  And some months later, Judge
15          Nadel related to me, he was walking through
16          the airport terminal and a gentleman -- it
17          was a man, not a woman -- walked up to him
18          and said, Judge, I recognize you.  Do you
19          remember me?  I was on the jury in that
20          case.  And you know, Judge, I never was
21          quite sure whether that guy was guilty or
22          not.
23               Does that bring something to mind to
24          you?  What does that bring to mind?
25               PROSPECTIVE JUROR:  Well, obviously,
```

52

```
1          he had some concerns about the verdict if
2          it still bothered him at that point.
3               MR. RADER:  And you understand that by
4          following the Judge's instructions
5          carefully, you won't end up like that?
6               PROSPECTIVE JUROR:  Uh-huh.
7               MR. RADER:  There's this notion, as
8          the prosecutor alluded to, about proof
9          beyond a reasonable doubt, something that
10         we relate to the most important of our own
11         personal affairs.  Have you ever bought a
12         house?
13              PROSPECTIVE JUROR:  I own a house.
14              MR. ANDERSON:  Do you consider that
15         one of your most important personal
16         affairs, the decision to buy that house?
17              PROSPECTIVE JUROR:  Yes.
18              MR. RADER:  That's one of them.  You
19         understand the magnitude of what we're
20         talking about in the matter of most
21         important decisions?
22              PROSPECTIVE JUROR:  Yes.
23              MR. RADER:  Ms. Travis, are you a
24         native Cincinnatian?
25              PROSPECTIVE JUROR:  Not originally.  I
```

```
 1          wasn't born and raised here.

 2               MR. RADER:  How long have you lived in

 3          the city?

 4               PROSPECTIVE JUROR:  Since '76.  July

 5          of '76.

 6               MR. RADER:  Do you understand that

 7          this is a profoundly serious case?

 8               PROSPECTIVE JUROR:  Definitely.

 9          Felonious assault and so forth, yes.

10               MR. RADER:  And the fact that you will

11          have to make an individual decision in your

12          deliberations?

13               PROSPECTIVE JUROR 10:  Right.  And I

14          will do my best to make sure it is the

15          right decision and know all the facts

16          presented to me.

17               MR. RADER:  Will you listen to the

18          other members of the jury panel in

19          deliberations and still independently make

20          up your own mind?

21               PROSPECTIVE JUROR:  Yes.  I will weigh

22          out their opinions and decisions and then

23          still apply my own.

24               MR. RADER:  Mr. Brady, how are you

25          today?
```

54

```
 1              PROSPECTIVE JUROR 11:  Fine.
 2              MR. RADER:  I understand from your
 3         questionnaire that you're into computer --
 4              PROSPECTIVE JUROR 11:  I was.
 5              MR. RADER:  -- programming, that kind
 6         of thing.
 7              PROSPECTIVE JUROR 11:  Well, I wasn't
 8         until I had a stroke nine years ago.
 9              MR. RADER:  Are you a native of
10         Cincinnati, this area?
11              PROSPECTIVE JUROR 11:  No, I'm not.  I
12         moved from New Jersey four and a half years
13         ago.
14              MR. RADER:  How do you feel about
15         being on this jury?
16              PROSPECTIVE JUROR 11:  I feel I can
17         weigh the -- I'm trying to think of the
18         word.                    MR. RADER:  Can
19         you weigh the evidence?    PROSPECTIVE
20         JUROR 10:  That's what I said.
21              MR. RADER:  Pros and cons?
22              PROSPECTIVE JUROR 10:  Yes.
23              MR. RADER:  Do you feel that there are
24         serious terrible consequences to this
25         defendant on the one hand, and the
```

1           requirement of society that it protect

2           itself, do you understand that balance?

3                   PROSPECTIVE JUROR 10:  Yes, sir.

4                   MR. RADER:  Do you know what I mean by

5           it?

6                   PROSPECTIVE JUROR 11:  Yes.

7                   MR. RADER:  By putting it this way?

8                   PROSPECTIVE JUROR 11:  Yes.

9                   MR. RADER:  Do you feel that either

10          one of those are outweighed by the other?

11                  PROSPECTIVE JUROR 11:  No.

12                  MR. ANDERSON:  Objection, Your Honor.

13                      THE COURT:  Sustained.

14  What you have to do in this case is you're going

15  to have to weigh the evidence and you decide what

16  happened in this case, the jury does, and then

17  decide that.  Filter the evidence through the

18  instructions of law that I give you, both verbally

19  and in writing, and go back and make your

20  decision.  That's the only thing you really have

21  to do in this situation.

22                  MR. RADER:  Do you have a feeling

23          about the credibility of the police and can

24          you pick a percentage whether there maybe

25          --  and I have a lot of respect for them in

```
 1          general and I know a lot of them are fine

 2          people, but could you communicate to me

 3          your feeling about the credibility of the

 4          police?  Do you feel that they are 90

 5          percent truthful and candid or 95 percent

 6          or 98 percent or can you put your gut

 7          feelings into some kind of percentage?

 8              MR. ANDERSON:  I'll object to that,

 9          too, Your Honor.

10              THE COURT:  Sustained.

11              The police officers are to be judged

12          the same as any other witnesses.  And can

13          everybody agree to Judge their credibility,

14          not necessarily to believe them simply

15          because they're police officers, not to

16          disbelieve them simply because they're

17          police officers but just take them as

18          another witness, hear their testimony, hear

19          their responses, whatever they maybe, and

20          judge that.  Can everybody agree to do

21          that?

22              PJs:  Yes.

23              THE COURT:  Great.  Thank you.

24              MR. RADER:  And we have Ms. Rucker on

25          the end.  Any particular feeling about
```

1           serving on a jury, whether you would --

2           have you looked forward to the opportunity,

3           is it a burden to you, do you have personal

4           considerations or family things that need

5           to be done, or difficulty with your

6           employment, taking time off?

7                   PROSPECTIVE JUROR 12:  No, it's not a

8           burden.

9                   MR. RADER:  Do you view this as a

10          civic opportunity to do a civic duty?

11                  PROSPECTIVE JUROR 12:  Yes, I would

12          say so.

13                  MR. RADER:  Were you aware of the fact

14          that relatively few countries have juries?

15                  PROSPECTIVE JUROR 12:  Yes, I was.

16                  MR. RADER:  Anybody in your family

17          ever been caused great sorrow or trauma or

18          whatever by drugs?

19                  PROSPECTIVE JUROR 12:  No.

20                  MR. RADER:  Any close friends?

21                  PROSPECTIVE JUROR 12:  No.

22                  MR. RADER:  Your Honor, if it please

23          the Court, we'll pass for cause.

24                  THE COURT:  All right.  Ladies and

25          gentlemen, we'll move into what's called

58

```
1           the peremptory challenge phase.  Each side
2           in a criminal case is entitled to four
3           peremptory challenges.
4               The attorneys may excuse one or more
5           of you from the jury for almost any reason
6           under the sun.  And it's a perfectly
7           legitimate and permissible part of the
8           trial.  As with anything else, the State
9           goes first.  State care to exercise its
10          first peremptory?
11              MR. ANDERSON:  The State would thank
12          and excuse Juror Number 10.
13              THE COURT:  Ms. Naves, thank you very
14          much.  You can go back up to the jury
15          commissioner's office.  Thank you very much
16          for being with us this morning.  They might
17          still be able to get you on another panel
18          today.  So thank you very much.
19               Mr. Adams.
20              Mr. Anderson, do you care to inquire
21          of Mr. Adams?
22              MR. ANDERSON:  Yes, Your Honor.
23              Good morning.  How are you?
24              PROSPECTIVE JUROR:  I'm fine.
25              MR. ANDERSON:  You heard the questions
```

```
1          that I asked the prospective juror panel

2          and you heard the questions that Mr. Rader

3          asked the prospective jury panel.  Are

4          there any answers that you would give to

5          those questions that would differ markedly

6          from what seems to be the consensus of the

7          panel?

8               PROSPECTIVE JUROR:  No.

9               MR. ANDERSON:  Do you feel comfortable

10         assessing and weighing credibility of

11         witnesses that you may hear from?

12              PROSPECTIVE JUROR:  Yes.

13              Do you have any problem following the

14         law as Judge Martin gives it to you?

15              PROSPECTIVE JUROR:  No.

16              MR. ANDERSON:  Do you have any problem

17         holding the State of Ohio to proof beyond a

18         reasonable doubt and no higher?

19              PROSPECTIVE JUROR:  No.

20              MR. ANDERSON:  If the State meets its

21         burden you have a duty and obligation to

22         find the defendant guilty, right?

23              PROSPECTIVE JUROR:  Yes.

24              MR. ANDERSON:  But if we don't meet

25         the burden of proof, you have a duty and
```

```
 1          obligation to find him not guilty?

 2                   PROSPECTIVE JUROR:  Yes.

 3                   MR. ANDERSON:  Do you have any problem

 4          sitting in judgment of another person?

 5                   PROSPECTIVE JUROR:  No.

 6                   MR. ANDERSON:  Is there any reason you

 7          feel you can't be fair and impartial in

 8          this case?

 9                   PROSPECTIVE JUROR:  No.

10                   MR. ANDERSON:  The fact that at least

11          one of these victims did in fact have crack

12          cocaine on him, or cocaine on him, at the

13          time of the shots, would that in any way

14          influence your decision-making in this

15          case?

16                   PROSPECTIVE JUROR:  No.

17                   MR. ANDERSON:  Think you could be fair

18          and impartial to the State of Ohio as well

19          as the defendant?

20                   PROSPECTIVE JUROR:  Yes.

21                   MR. ANDERSON:  Thank you, Judge.

22          State would pass for cause.

23                   THE COURT:  Mr. Rader?

24                   MR. RADER:  Mr. Adams, how are you

25          this afternoon?
```

```
1              PROSPECTIVE JUROR:  Okay.
2              MR. RADER:  Do you want to serve on
3         this jury?
4              PROSPECTIVE JUROR:  Yes.
5              MR. RADER:  Can you start out with --
6         because you've heard accusations made
7         against Mr. Hall already.  You heard, I
8         think the prosecutor indicated what the
9         case was about.  Can you start out with a
10        clean slate, with a balance scale?
11             PROSPECTIVE JUROR:  Yes.
12             MR. RADER:  And you have no
13        preconceived notions about what the nature
14        of this case might be?
15             PROSPECTIVE JUROR:  No.
16             MR. RADER:  And can you tell me
17        whether you will hold that attitude until
18        the Judge sends you back to the jury room
19        to deliberate?
20             PROSPECTIVE JUROR:  Yes.
21             MR. RADER:  That's not easy.  You
22        understand hearing witness after witness
23        and going this way and that way and this
24        way and that way, you're confident that you
25        can withhold judgment until you hear all
```

1     the evidence?

2          PROSPECTIVE JUROR:  Yes.

3          MR. RADER:  I'll take your word for

4     it.  Thank you.

5           Your Honor, we pass for cause as to

6     Mr. Adams.

7          THE COURT:  Defense care to exercise

8     its first peremptory challenge?

9          MR. RADER:  Your Honor, we

10    respectfully ask the Court to excuse Juror

11    Number 1, Ms. Williams.

12         THE COURT:  Ms. Williams, thank you

13    very much for your time.  You're excused.

14    You can head back up to the jury

15    commissioner's office if you will.  Thank

16    you very much.

17         (Prospective Juror Williams excused.)

18         THE COURT:  Ms. Brooks, have a seat in

19    seat number one, if you would.

20          State care to inquire as to Ms.

21    Brooks?

22         MR. ANDERSON:  Yes, Your Honor.

23         Good afternoon, Ms. Brooks.

24         PROSPECTIVE JUROR:  Hi.

25         MR. ANDERSON:  I know you heard the

```
 1          questions that I've asked and you've heard
 2          the questions Mr. Rader has asked.  Is
 3          there any reason you feel you cannot be
 4          fair and impartial in this case?
 5               PROSPECTIVE JUROR:  No.
 6               MR. ANDERSON:  Think you can listen to
 7          the testimony and the evidence, and make a
 8          determination of the facts, follow the law
 9          as Judge Martin gives it to you and render
10          a true and just verdict?
11               PROSPECTIVE JUROR:  Yes.
12               MR. ANDERSON:  You indicated you have
13          a friend or family member in law
14          enforcement or a prosecutor.
15               PROSPECTIVE JUROR:  I have a cousin
16          who is an officer in Forest Park.
17               MR. ANDERSON:  Is that the one and
18          only relation?
19               PROSPECTIVE JUROR:  Also there is a
20          member of my church.  He's a Judge or
21          something.    MR. ANDERSON:  He's a Judge?
22               PROSPECTIVE JUROR:  Yeah.
23               MR. ANDERSON:  Do you know where?
24               PROSPECTIVE JUROR:  Domestic Relations
25          I think.
```

1           MR. ANDERSON:  Who is that?

2           PROSPECTIVE JUROR:  I don't remember

3      his name.  Payne.

4           MR. ANDERSON:  Do you ever talk to

5      your cousin who's a police officer in

6      Forest Park?

7           PROSPECTIVE JUROR:  I hardly ever see

8      him.

9           MR. ANDERSON:  Never talk to him about

10     his job?

11          PROSPECTIVE JUROR:  No.

12          MR. ANDERSON:  The fact that you're

13     related to a police officer, will that in

14     any way affect how you assess the

15     credibility of the police officer?

16          PROSPECTIVE JUROR:  No.

17          MR. ANDERSON:  You've indicated also

18     that you work for the IRS.  What do you do

19     for them?

20          PROSPECTIVE JUROR:  I work in customer

21     service.          MR. ANDERSON:  Has it

22     slowed down a little bit in the last couple

23     of weeks?

24          PROSPECTIVE JUROR:  No.

25          MR. ANDERSON:  Going on strong.  I'm

```
 1        sure you could probably use a couple days

 2        off, couldn't you?

 3             PROSPECTIVE JUROR:  Yes.

 4             MR. ANDERSON:  Is there any reason

 5        you feel you couldn't be fair and

 6        impartial?

 7             PROSPECTIVE JUROR:  No.

 8             MR. ANDERSON:  Your Honor, the State

 9        will pass for cause.

10             THE COURT:  Thank you.

11             Mr. Rader?

12             MR. RADER:  Ms. Brooks, how are you

13        today?

14             PROSPECTIVE JUROR:  Okay.

15             MR. RADER:  Do you feel like you come

16        to this case with an even scale, a balanced

17        scale, that you have no disposition one way

18        or the other?

19             PROSPECTIVE JUROR:  No.

20             MR. RADER:  Have you personally or any

21        of your friends been hurt or damaged by the

22        drug problem that we have?

23             PROSPECTIVE JUROR:  No.

24             MR. RADER:  IRS people have a

25        reputation for being assertive, I guess,
```

```
1          but can you be assertive when you're back

2          in the room if you feel confident that

3          you'll state your position?

4                    PROSPECTIVE JUROR:   Yes.

5                    MR. RADER:   You understand from -- you

6          probably heard my questions about when the

7          jury foreman says, I think we all agree on

8          this, let's move on, and you feel

9          uncomfortable and say hey, wait a minute.

10         I don't agree.

11                   PROSPECTIVE JUROR:   I would do that.

12                   MR. RADER:   Your Honor, we pass for

13         cause as to Ms. Brooks.

14                   THE COURT:   State care to exercise its

15         second peremptory?

16                   MR. ANDERSON:   State is satisfied with

17         the composition of the jury.  We would

18         pass.

19                   THE COURT:   If someone passes that's

20         deemed to have used their peremptory.

21                        Defense care to exercise their

22         second peremptory challenge?

23                   MR. RADER:  Yes, Your Honor.  We

24         respectfully ask the Court to excuse Juror

25         Number 5, Mr. Sonderhyde.  Thank you very
```

```
 1      much.

 2              (PROSPECTIVE JUROR 5 excused.)

 3              THE COURT:  Ms. West, have a seat in

 4      seat Number 5.

 5              All right, Mr. Anderson.

 6              MR. ANDERSON:  Ms. West, again, you've

 7      heard all the questions that I asked the

 8      panel previously and the questions Mr.

 9      Rader has asked.

10              Is there any answer that you feel

11      would differ from what the consensus has

12      been?

13              PROSPECTIVE JUROR:  No.

14              MR. ANDERSON:  Do you feel comfortable

15      sitting in judgment of another person?

16              PROSPECTIVE JUROR:  Yes, sir.

17              MR. ANDERSON:  Do you feel comfortable

18      assessing the credibility of the witnesses

19      you may hear from?

20              PROSPECTIVE JUROR:  Yes.

21              MR. ANDERSON:  You can follow the law

22      as Judge Martin gives it to you?

23              PROSPECTIVE JUROR:  Yes.

24              MR. ANDERSON:  Have no problem signing

25      a guilty verdict in ink if the State meets
```

```
 1        its burden?

 2             PROSPECTIVE JUROR:  No.

 3             MR. ANDERSON:  And sign a not guilty

 4        verdict if we don't?

 5             PROSPECTIVE JUROR:  That's correct.

 6             MR. ANDERSON:  Can you be fair to both

 7        the State of Ohio as well as the defendant,

 8        Fredrick Hall?

 9             PROSPECTIVE JUROR:  I'll do my best.

10             MR. ANDERSON:  Thank you.  The State

11        will pass for cause.

12              THE COURT:  Mr. Rader?

13             MR. RADER:  Good afternoon.  How are

14        you?  MR. RADER:  Is this your first week

15        on jury duty?

16             PROSPECTIVE JUROR:  Yes, it is.

17             MR. RADER:  Are you looking forward to

18        it?

19             PROSPECTIVE JUROR:  Yes.

20             MR. RADER:  What were your feelings

21        about coming down here for jury duty?

22             PROSPECTIVE JUROR:  I was reluctant

23        but I'm now into it.  I've never been on a

24        jury before but I have been in a courtroom

25        before.
```

1          MR. RADER:  Did you hear my recitation

2     initially about this being a very rare

3     system in the world, that being judged by a

4     jury of your peers?

5          PROSPECTIVE JUROR:  Yes.

6          MR. RADER:  You realize how awesome

7     your responsibility is here, especially in

8     this jury; very serious case.

9          PROSPECTIVE JUROR:  It's nice that we

10    can do that.   MR. RADER:  Thank you very

11    much.  I appreciate your time.  Thank you.

12         We pass for cause as to Ms. West, Your

13    Honor.

14         THE COURT:  Mr. Anderson, State care

15    to exercise its third peremptory?

16         MR. ANDERSON:  State would pass.

17         THE COURT:  Defense care to exercise

18    its third peremptory challenge?

19         MR. RADER:  May I have just a moment?

20         THE COURT:  Sure, take the time you

21    need.

22         (Pause in proceedings.)

23         MR. RADER:  Your Honor, we

24    respectfully ask the Court to excuse Juror

25    Number 11, Mr. George Blade.

```
 1            THE COURT:  Mr. Blade, thank you very
 2     much for your time.  Head back up to the
 3     Jury Commissioner's office if you will.
 4     Thank you for being with us today.
 5            (Prospective Juror excused.)
 6            Ms. Thomason.
 7            MR. ANDERSON:  Ms. -- is it Thomason?
 8            PROSPECTIVE JUROR:  Yes,
 9            MR. ANDERSON:  You've indicated you're
10     retired.
11            PROSPECTIVE JUROR:  Yes.
12            MR. ANDERSON:  What did you do when
13     you were working?
14            PROSPECTIVE JUROR:  Secretarial,
15     administrative assistant for 45 years.
16            MR. ANDERSON:  Where?
17            PROSPECTIVE JUROR:  The last 15 years
18     for Johnson & Johnson.
19            MR. ANDERSON:  Okay.  Ms. Thomason,
20     you've heard the questions I've asked.  You
21     heard the questions Mr. Rader has asked.
22     Is there any reason you feel you couldn't
23     be fair and impartial in this case?
24            PROSPECTIVE JUROR:  No.
25            MR. ANDERSON:  Follow the law, assess
```

```
 1          the credibility of witnesses, do all the

 2          things that we've talked about previously?

 3               PROSPECTIVE JUROR:  Yes.

 4               MR. ANDERSON:  Okay.  Thank you.

 5               Your Honor, the State will pass for

 6          cause.

 7               THE COURT:  Mr. Rader?

 8               MR. RADER:  It's not Thomas, it's

 9          Thomason?

10               PROSPECTIVE JUROR:  Right.

11               MR. RADER:  I'll essentially ask you

12          the same questions I asked Ms. West.  What

13          was your feeling about coming down here for

14          jury duty?

15               PROSPECTIVE JUROR:  Well, I didn't

16          jump up and down with joy.  It's an

17          obligation.    It's a duty.

18               MR. RADER:  Do you feel that it's a

19          duty, you know, like, more than a

20          privilege, or do you have any feelings

21          about that?

22               PROSPECTIVE JUROR:  Well, it's a

23          privilege to live in a country where you

24          can do it.

25               MR. RADER:  Do you think the
```

72

```
 1          government should be more restrictive in
 2          order to suppress crimes or do you think
 3          that it's about right the way it is?  Can
 4          you give me some notion as to how you feel
 5          about that?    Should the government crack
 6          down and try to lower the crime rate even
 7          though in doing so they suppress some of
 8          our freedom?
 9               MR. ANDERSON:  Objection.
10               THE COURT:  Sustained.  Next question.
11               MR. RADER:  Do you feel an obligation
12          to defend the rights of an innocent
13          defendant?
14               PROSPECTIVE JUROR:  Well, certainly.
15               MR. RADER:  Thank you.
16               THE COURT:  Okay.  State care to
17          exercise its fourth peremptory challenge?
18               MR. ANDERSON:  State would pass, Your
19          Honor.
20               THE COURT:  Defense care to exercise
21          its fourth peremptory challenge?
22               MR. RADER:  May I have just a moment?
23               THE COURT:  Sure.  Take the time you
24          need.
25               (Pause in proceedings.)
```

1           MR. RADER:  Your Honor, I respectfully
2       ask the Court to excuse Juror Number 8, Mr.
3       Ramsey.
4           THE COURT:  Mr. Ramsey, thank you very
5       much for your time today.  Have a great
6       afternoon.  Go back on up to the Jury
7       Commissioner's office if you will.
8           Mr.  Stratton, have a seat in seat
9       Number 8, please.
10          Mr. Anderson?
11          MR. ANDERSON:  Mr. Stratton, you heard
12      the questions.  Do you think you can be
13      fair and impartial in this case?
14          PROSPECTIVE JUROR:  Yes, sir.
15          MR. ANDERSON:  Listen to the
16      testimony, the evidence, make a
17      determination based on your assessment of
18      the witness's credibility, apply the law as
19      Judge Martin gives it to you and render a
20      verdict that you believe to be true and
21      just?
22          PROSPECTIVE JUROR:  Yes, sir.
23          MR. ANDERSON:  Any reason that you
24      would be biased one way or another, either
25      for or against the State or for or against

```
 1        the defendant?

 2             PROSPECTIVE JUROR:  No.

 3             MR. ANDERSON:  Thank you, Your Honor.

 4        The State would pass for cause.

 5             THE COURT:  Mr. Rader?

 6             MR. RADER:  Mr. Stratton, how are you

 7        this afternoon?

 8             PROSPECTIVE JUROR:  Little nervous.

 9             MR. RADER:  You've got stage fright or

10        public speaking?

11             PROSPECTIVE JUROR:  Public speaking.

12             MR. RADER:  I'll be honest.  This is a

13        wonderful room.  Do you feel comfortable in

14        stating your position to the rest of the

15        jury in deliberations?

16             PROSPECTIVE JUROR:  Yes, I do.

17             MR. RADER:  What do you do for a

18        living?

19             PROSPECTIVE JUROR:  Sales and

20        marketing for the directory of Cincinnati

21        Bell.

22             MR. RADER:  Do you do sales work?

23             PROSPECTIVE JUROR:  Yes, sir.

24             MR. RADER:  Just a comment about

25        nervousness.  Some of us, like lawyers for
```

```
 1          instance, they put themselves in a role,
 2          and then talk and communicate pretty well.
 3               I'm sure sales is something similar,
 4          isn't it?
 5               PROSPECTIVE JUROR:  Yes.
 6               MR. RADER:  Glad to have you here.
 7          Thank you.
 8               We pass for cause, Your Honor.
 9               THE COURT:  Okay.  The peremptories
10          having been exhausted, we will now seat an
11          alternate or attempt to do so.
12               Mr. Wagner, have a seat in the seat
13          marked A.  Since this case is going to go
14          for an extended period of time -- it's
15          going to go into next week, it's customary
16          that we seat an alternate in case some
17          illness or emergency would befall one of
18          the regular jurors.  We, of course, hope
19          that doesn't happen but it might.
20               And the point I'm getting to here is
21          that if you're the alternate juror, you may
22          or may not actually get to go back and
23          deliberate, but you'd be here for the whole
24          trial.  But at the end of the trial I might
25          just excuse you out the door and say thank
```

1          you very much, and that would be the extent

2          of your jury service in the courtroom and

3          the whole time you're on jury duty.

4               Knowing that can happen, can you still

5          give this case your best attention possible

6          and pay the most attention you can to it,

7          understanding that it's possible that you

8          won't go back for deliberations, and it's

9          possible that you might?  Can you still do

10         that?

11              THE COURT:  Be honest.  It's too

12         important.

13              PROSPECTIVE ALTERNATE:  Well, I'm

14         willing at this point.  I got the alternate

15         position.

16              THE COURT:  Would you rather just try

17         and get on another panel?

18              PROSPECTIVE ALTERNATE:  Yeah, I'd

19         rather go to another jury.

20              THE COURT:  I appreciate your honesty.

21         Thank you very much.  It's better that you

22         raised that now rather than daydream

23         through the case and at the end then you

24         got a problem.

25              With that, we'll excuse you.  Thank

```
 1          you very much.  You can go back up to the
 2          Jury Commissioner's office.
 3               And that raises -- we are going to
 4          put an alternate on this jury.  What we're
 5          going to do and I hope this doesn't
 6          inconvenience you all too much, what we're
 7          going to do is break now until 2:00.  We've
 8          got to check two things.  We have to see if
 9          there are more jurors upstairs.  I already
10          asked Ms. Schwier to do that.  There is
11          another panel upstairs.  If that case would
12          not go, we would have other people to come
13          up here and be our prospective alternate.
14               You 12 are at this point in time the
15          12 jurors that will hear the case.  It's
16          important, though, that we have an
17          alternate.  I'd say in 20 to 25 percent of
18          our cases, especially those that go more
19          than three or four days.  If something does
20          come up with somebody, death of a family
21          member, something comes up, some sort of
22          illness, so we do need alternates?
23               So what I would ask you to do is come
24          back at 2:00.  If there's no more
25          alternates, prospective alternates, what
```

1         I'll do is excuse you at 2:00 until

2         tomorrow morning. Then we'll come back and

3         seat the alternates, do opening statements

4         and go from there.

5              So there's several admonitions that

6         I'm going to give you, and I'll give them

7         to you now, and I'll repeat them during the

8         trial.

9              At no time until you're called upon to

10        deliberate this case are you to come to any

11        conclusions based on anything you see or

12        hear.  I don't want you to come to a

13        conclusion -- it's unfair to both sides if

14        you come to one conclusion after the first

15        witness, then a conclusion after the second

16        witness, and each witness throughout the

17        entire case, and then at the end of the

18        case there's 12 of you and that's not a

19        reason.  You'll be able to sit and share

20        each other's experiences and come to a

21        resolution of the case.

22             So don't come to any conclusions based

23        on anything you see or hear until you're

24        called upon to do so and that's when you're

25        required to do that.

```
 1              At no time are you to discuss this
 2      case amongst yourselves or with anyone else
 3      or permit anyone to discuss it in your
 4      presence until you're called upon to
 5      deliberate.
 6              At no time are you to do anything to
 7      independently prove or disprove any facts
 8      you may hear in this case.  In other words,
 9      don't try and visit the scene, don't try
10      out certain things that you may hear
11      witnesses testify about.  To do so is
12      improper.
13              Listen to the evidence that's going to
14      be proffered to you today.  Neither side
15      thus far has made any motion to visit or go
16      any place or show you anything.  And that
17      tells me that both sides believe that a
18      fair trial could be had if you just hear
19      the evidence that you hear here.
20              I don't believe there are going to be
21      any news reports of this case.  There have
22      not been any reporters in here.  You've all
23      indicated that if there were previous
24      reports, you've either forgotten about them
25      or never saw them, which is fine.
```

1           In some cases we have, as you might

2      imagine, I instruct the jury not to go like

3      a week and don't read the newspapers, don't

4      watch TV news, don't listen to the radio

5      news.  I'm not going to do that in this

6      case.

7           If you should come across something

8      that is about this case, report it to us

9      but you're to ignore it.  It's your own

10      observations and your own analysis.  This

11      case is to be decided on the evidence.  It

12      will be the testimony of the witnesses, any

13      exhibits that are admitted, and also you'll

14      filter the evidence through my instructions

15      as to what the law is.  That's all it

16      should be decided on.

17           The attorneys and the parties, and

18      some of the witnesses you may see out in

19      the hallway.  They're all going to ignore

20      you.  That's because I am telling them to

21      ignore you.

22           This case is to be decided on the

23      facts, not some courtesy from a person who

24      had a chance to hold the door open or

25      anything else.  It's to be decided solely

1       on the facts as you hear them.

2            If you have issues that come up that

3       you need answers on, or scheduling problems

4       or anything else, contact Ms. Schwier and

5       she will give you our phone number if

6       necessary.  But just ask her.  She cannot

7       answer questions relating to factual issues

8       or legal questions. But if you want to know

9       where's a good place to get a bite to eat,

10      she can answer that.

11           If you can't make it tomorrow at 9:45

12      but you can at 10:00, tell her that, too,

13      and she will help you out with that.

14           The people who work in the courtroom

15      are Pat Nash.  She's the court reporter.

16      She takes everything down in steno.  Jill

17      Schweir is the bailiff and she's primarily

18      in charge of your care.  And Krista Hekler

19      is a law student.  And she had to go to a

20      doctor's appointment.  She's our constable.

21           We have pending in this courtroom

22      approximately four hundred cases.The door's

23      going to open.  The phones are going to

24      ring.  Ms. Schweir and Ms. Hekler will be

25      getting up and handling things.  Some

```
 1        people will come to the door and Jill will

 2        signal them around, like this.  That means

 3        you're supposed to go around to this door.

 4            I tell you all this stuff because I

 5        want you to ignore all of it.  And none of

 6        it has anything to do with the case

 7        whatsoever.  Every time that doors opens, I

 8        don't want 12 heads swinging that way.

 9        Just ignore it.  It's all part of the

10        natural operation of the courtroom.  Has

11        nothing to do with this case.

12            We have no more important case than

13        this one.  This is these parties only

14        opportunity to get a fair trial.  As I

15        indicated before, the State is entitled to

16        a fair trial and the defendant is entitled

17        to a fair trial.  They're entitled to the

18        same fair trial.  Part of giving them a

19        fair trial is you give them your undecided

20        attention.

21            And that said, we'll meet back, return

22        to the jury room by 2:00.  And we'll see if

23        we can seat an alternate today, and if we

24        can't, we'll come back tomorrow morning.

25        Thank you very much.        (Jury left
```

```
 1      courtroom at 1:00 p.m.)
 2          THE COURT:  Anything on behalf of the
 3      State?
 4          MR. ANDERSON:  No, Your Honor.
 5          THE COURT:  Defense?
 6          MR. RADER:  No, Your Honor.
 7          THE COURT:  I think we're going to be
 8      able to seat an alternate.  Probably what
 9      we'll do today is seat an alternate if we
10      can.  We think -- yeah, the other jury
11      might wash out.  We'll seat an alternate if
12      we can and then we'll do opening statements
13      and that might be as far as we're able to
14      get.  Let's see how long it takes.
15          You think about 30 minutes for
16      opening, Mr. Rader?
17          MR. RADER:  Best guess, Your Honor.
18          THE COURT:  You're 15?
19          MR. ANDERSON:  Not long.
20          THE COURT:  We'll see how far we can
21      get.
22              (Proceedings recessed.)
23
24
25
```

JUL-20-2002 12:08 CNRO0004-CAS-TSD REPORTER DOCUMENT 4532 Filed 07/20/2007 Page 84 of 97 P.002/015

1          **AFTERNOON SESSION**

2          **APRIL 27, 1999**

3              (The prospective jury panel

4          entered the courtroom at 2:05 p.m.)

5              THE COURT: Welcome back, ladies

6          and gentlemen.

7              Will the prospective alternates,

8          and that's what you all are today, stand

9          and raise your right hand.

10             (The prospective alternate jurors were

11         sworn.)

12             THE COURT: What you all are here

13         for today is we've seated 12 members on

14         the jury. This is a criminal case and we

15         ran out of jurors and we're looking for

16         an alternate. And we got you up to see

17         if one of you would be willing to do it.

18             The course of the trial is going to

19         go -- we were going to go today --

20         originally I was going to go to about

21         3:30. We'll probably only do opening

22         statements today after we seat the jury.

23         We'll go tomorrow, Thursday, and then

24         into next week.

25             Does that schedule give anybody a

```
 1          problem?  Anybody got any commitments or
 2      anything, a place they've got to go?
 3      Okay.
 4              It's a criminal case.  And does
 5      anybody know Mr. Anderson, Bill Anderson,
 6      from the prosecutor's office?  Jameses
 7      Radar and Elizabeth Zucker for the
 8      defendant.  The defendant is Frederick
 9      Hall.
10              Okay.  Anybody have any problem
11      sitting on a criminal case?  No.  All
12      right.  We'll, let's go through this.
13              Mr. Frenchs, come on up.  Have a
14      seat in the seat, if you will.
15              Is it French?
16              PROSPECTIVE ALTERNATE:  Yes.
17              THE COURT:  Well, we've got 12
18      jurors that are as of now going to hear
19      this case, and decide it.  However, we
20      seat an alternate in a case that's going
21      to go for four or five days because you
22      never know what's going to happen.
23      Illness may befall one of them, a family
24      emergency, and you might be pressed into
25      service.  There's a possibility, of
```

```
 1        course, that you won't be able to go back
 2        and deliberate on the case.
 3             Both sides in this case are
 4        entitled to the utmost attention of all
 5        the jurors and the alternate because you
 6        don't know until the jury instruction is
 7        given whether you're going to be on the
 8        case or not.
 9             Knowing that it's possible you
10        won't be on a case, but it's also
11        possible that you will decide the case,
12        can you still give this case your utmost
13        attention?
14             PROSPECTIVE ALTERNATE:  Yes sir.
15             THE COURT:  Okay.  If so selected,
16        you're willing to be the alternate in
17        this case?
18             PROSPECTIVE ALTERNATE:  Yes, sir.
19             THE COURT:  Okay.  Great.
20        Mr. Anderson will have some questions for
21        you, as will Mr. Radar.
22             MR. ANDERSON:  Your Honor.
23             Good afternoon, Mr. French.  How
24        are you?
25             PROSPECTIVE ALTERNATE:  Fine. Thank
```

| | |
|---|---|
| 1 | you. |
| 2 | MR. ANDERSON:  How long have you |
| 3 | been on jury duty?  Is this your first |
| 4 | weeks, second week, third week? |
| 5 | PROSPECTIVE ALTERNATE:  Second |
| 6 | week. |
| 7 | MR. ANDERSON:  Ddid you serve on a |
| 8 | jury last week? |
| 9 | PROSPECTIVE ALTERNATE:  No. |
| 10 | MR. ANDERSON:  Judge Martin |
| 11 | indicated to you a little about the case. |
| 12 | But, anyway, it's a felonious assault |
| 13 | case.  Two counts of attempted murder, |
| 14 | fleeing and alluding a police officer. |
| 15 | Basically it's alleged that this |
| 16 | defendant shot two young men on the |
| 17 | street at about 3:15 in the morning. |
| 18 | Is there anything about the facts |
| 19 | of this case that would in any way |
| 20 | disturb you at all? |
| 21 | PROSPECTIVE ALTERNATE:  No. |
| 22 | MR. ANDERSON:  Do you have any |
| 23 | feelings one way or the other pro gun or |
| 24 | anti gun? |
| 25 | PROSPECTIVE ALTERNATE:  No. |

1        MR. ANDERSON:  All right.

2        One of the victims that was shot,

3    in fact, turned out to possess cocaine on

4    his person when he was being treated.

5    The fact that one of the witnesses that

6    the State intends to call will have been

7    convicted of a felony offense, would that

8    in any way influence how you judge his

9    credibility?

10       PROSPECTIVE ALTERNATE:  No.

11       MR. ANDERSON:  Okay.  I mean,

12    you're allowed to use a prior conviction

13    in certain respects; one of which is to

14    judge credibility, as Judge Martin will

15    explain to you.  But just because he had

16    been convicted of an offense, a felony

17    offense doesn't mean that you just

18    automatically discard everything he says.

19    Okay?

20       PROSPECTIVE ALTERNATE:  (Nodding)

21       MR. ANDERSON:  Do you feel

22    comfortable assessing the credibility of

23    people that you hear from?

24       I mean, we're going to hear

25    witnesses from this witness stand.  And

1    you're going to be allowed to believe all

2    of what they say, none of what they say

3    or certain portions of it.

4         Do you feel comfortable separating

5    out what you believe versus what you may

6    not believe when you talk to people on a

7    daily basis?

8         PROSPECTIVE ALTERNATE:  Possibly.

9         MR. ANDERSON:  Okay.  I know it's

10   hard.  It's really hard the way I'm

11   giving it to you, but that's about the

12   best way I can do it.

13        Until you hear it, you're not going

14   to -- I mean, if somebody takes a witness

15   stand and says something that's just so

16   outlandishly false, you're going to say

17   that's garbage, right?

18        PROSPECTIVE ALTERNATE:  Yes, sir.

19        MR. ANDERSON:  Is there any reason

20   that you would hold the State of Ohio to

21   a higher burden of proof than that which

22   is required by law?

23        PROSPECTIVE ALTERNATE:  No.

24        MR. ANDERSON:  Okay.  If the State

25   of Ohio meets its burden of proof, you

1    have the duty to find the defendant

2    guilty. And if we don't meet our burden

3    of proof, you have an obligation to find

4    the defendant not guilty.

5          PROSPECTIVE ALTERNATE: Fair.

6          MR. ANDERSON: Is there any reason

7    you feel you could not be fair and

8    impartial in this case?

9          PROSPECTIVE ALTERNATE: No.

10         MR. ANDERSON: Thank you, Your

11    Honor. At this point, the State will

12    pass for cause.

13         THE COURT: Mr. Radar?

14         MR. RADAR: Good afternoon. How

15    are you?

16         PROSPECTIVE ALTERNATE: Fine.

17         THE COURT: I'm Jim Radar, along

18    with Elizabeth Zucker, representing the

19    defendant in this case, Fred Hall.

20         We're not going to go through the

21    whole voir dire process.

22         Do you want to serve as an

23    alternate on this jury?

24         PROSPECTIVE ALTERNATE: Do I want

25    to? It's my duty, I assume.

```
 1            MR. RADAR:  I appreciate that.
 2       Does it conflict with your work?
 3            PROSPECTIVE ALTERNATE:  Not really.
 4       I drive a school bus for Mariemont
 5       schools.
 6            MR. RADAR:  Do they plug in a
 7       substitute while you're gone?
 8            PROSPECTIVE ALTERNATE:  They'd like
 9       to have me there.  I'm a good driver.
10            MR. RADAR:  So would you rather be
11       there or is this a nice break?  Or would
12       you really rather be there?  I mean, is
13       it a hardship on the school board or
14       whatever?
15            PROSPECTIVE ALTERNATE:  Well, they
16       seem to think it is.  But, like I say, as
17       a responsible citizen -- I've voted ever
18       since I've been old enough to vote and I
19       feel like it's a citizen's
20       responsibility.
21            MR. RADAR:  You know, the crux of
22       what I want to get at is I have said to
23       other members of the jury that the
24       judge's instructions have been developed
25       over a long period of time.  And, you
```

 1          know, people say I know something. I
 2          believe something as a matter of faith or
 3          I think somebody is probable.
 4                  And, really, the crux of following
 5          the judge's instructions is to think
 6          about those words carefully, very
 7          carefully, what you know, what you see,
 8          observe with your senses, feel, touch,
 9          you know that. But a lot of other things
10          you believe firmly.
11                  As in the case of religion, you
12          believe profoundly but it's a matter of
13          faith. And other things will fit the
14          judge's instructions, something that you
15          believe beyond a reasonable doubt which
16          he will define for you.
17                  Will you follow those instructions?
18                  I'll ask you a two-part question:
19          Will you follow his instructions?
20                  PROSPECTIVE ALTERNATE: The best of
21          my ability, yes.
22                  MR. RADAR: And will you not vote
23          guilty simply on a hunch or because you
24          think that's probable?
25                  PROSPECTIVE ALTERNATE: Is that a

```
1          yes or no question?

2                  MR. RADAR:  Well, I'm asking you to

3          differentiate between what's probable.

4                  THE COURT:  Let me --

5                  MR. RADAR:  And what's based on

6          evidence.

7                  THE COURT:  Let me ask it another

8          way.  I don't know if you've sat on any

9          other juries.  But in a civil case the

10         standard of proof or the burden of proof

11         is by a preponderance of the evidence.

12         In other words, more likely than not.  In

13         a criminal case, it's different.  It's

14         beyond a reasonable doubt.

15                 And the legislature has defined

16         reasonable doubt and I'll read it to you

17         in the instructions and you'll have it

18         back there.

19                 Reasonable doubt is when you say

20         you're not firmly convinced.  There's a

21         lot of things.  It's not absolute because

22         it says everything relating to human

23         affairs is open to some possible or

24         imaginary doubt, but it's reasonable

25         doubt.
```

```
 1            Beyond a reasonable doubt.  That's
 2       the burden the State has to prove their
 3       case in a criminal matter.
 4            Can you follow the instructions as
 5       I give it to you applying the facts as
 6       you hear them and in making a
 7       determination as to whether the defendant
 8       is guilty or not guilty of the offense?
 9            PROSPECTIVE ALTERNATE:  Yes.
10            THE COURT:  Okay.
11            MR. RADAR:  We pass for cause, Your
12       Honor.
13            THE COURT:  All right.  Does the
14       State care to exercise a peremptory
15       challenge to the alternate?
16            MR. ANDERSON:  Your Honor, the
17       State would pass.
18            THE COURT:  Mr. Radar, do you care
19       to exercise a peremptory challenge to the
20       alternate?
21            MR. RADAR:  May we have a second?
22            THE COURT:  Sure.
23            MR. RADAR:  Your Honor, we accept
24       this alternate.
25            THE COURT:  Okay.  So you waive.
```

1    All right. Thank you very much.

2        Ladies and gentlemen in the back,

3    because we bought five of you up, we

4    don't need you. If we only brought one

5    of you up, we would have. That's the way

6    things work.

7        Do any of you have anything in the

8    jury room? Come up and grab your stuff

9    out of the jury room. Come on up and you

10   can go back to the Jury Commissioner's

11   office. Thank you all very much for

12   being with us today and sticking around

13   all afternoon. Thank you.

14       All right, will you all stand and

15   raise your right hand to be sworn.)

16       (The jury panel was duly sworn.)

17       THE COURT: Thank you.

18       Ladies and gentlemen, due to the

19   fact that it took a little longer than I

20   thought, which is nobody's fault, what

21   we're going do today is hear the opening

22   statements of counsel and then we'll

23   adjourn to 10:00 tomorrow morning.

24       The opening statements of counsel,

25   I would advise you are not evidence. The

```
 1      only evidence upon which you will decide
 2      this case is what you hear from the
 3      witness stand, and the exhibits, and
 4      using my instructions of the law to make
 5      your decision in this case.  Nonetheless,
 6      it is a proper part of a trial to allow
 7      each attorney to tell you what they
 8      believe the evidence is going to be in
 9      this case and what they believe the
10      evidence is going to show.
11              So some attorneys call it a road
12      map.  Some use other terms.  It's a
13      proper part of the trial.  But keep in
14      mind that nothing either attorney says is
15      evidence.
16              With that, we'll begin.
17              Mr. Anderson.
18              MR. ANDERSON:  Thank you, Your
19      Honor.
20              (Opening statements have been
21      previously transcribed.)
22              THE COURT:  All right, ladies and
23      gentlemen, at this time we're going to
24      break until tomorrow.  We'll begin
25      hopefully promptly at 10:00 with
```

97

testimony. Tomorrow I expect to go to between 4:00 and 4:30. There's another matter that's come up that I have to attend to that's absolutely unrelated to that this afternoon. So the same admonitions apply as I gave you earlier.

Don't discuss this case amongst yourselves or with anyone else or permit anyone to discuss it in your presence. Don't come to any conclusions based on anything you see or hear because you've not heard one bit of evidence. So don't come to any conclusion based on anything you've seen. And don't attempt to do any independent investigation to prove or disprove any facts that you may have heard in this case. And if you do come across any media accounts of the case, which I strongly doubt you will, but if you do, disregard them in their totality. With that, we'll break until tomorrow. Be in the jury room at five until 10:00 tomorrow and we'll get started as close to 10:00 as possible. Thank you.