1       traveling, you know, at the speed limit

2       or, you know, about as fast as the rest

3       of the traffic coming through there."

4              Ladies and gentlemen, that's

5       exactly what he said.  And throughout my

6       remarks of this case -- my remarks are

7       important, and I want to be careful not

8       to mischaracterize the evidence, but to

9       give you a helpful analysis.  That's

10      actually my job at this point to comment

11      on the law and the evidence in a helpful

12      way.

13             The prosecutorial mechanism in this

14      case has tried to belittle Mr. Hall's

15      injury.  In regard to that injury, I ask

16      that you please recall what Officer

17      Huffman said today, that it's procedure

18      to handcuff people's hands behind their

19      back.  He believes after daylight they

20      rode back up to Windsor.  Mr. Hall's

21      hands were handcuffed behind his back.

22             You saw for one, for one, Number 1,

23      you saw Mr. Hall, stand up here, take his

24      arm and move this bone around.  That's

25      not connected to his elbow.  They say

| | |
|---|---|
| 1 | seeing is believing, but that fact, |
| 2 | ladies and gentlemen, is documented by |
| 3 | the Justice Center infirmary medical |
| 4 | records, and you'll have those with you |
| 5 | to factor in your deliberations. You'll |
| 6 | have the University of Cincinnati |
| 7 | hospital records. And if you'll go |
| 8 | through there, past the doctor's notes, |
| 9 | which are in longhand -- and no doctor |
| 10 | can write so we can read it, but if you |
| 11 | go to the first typewritten page in that |
| 12 | report from General Hospital and in the |
| 13 | second type written page, and if you will |
| 14 | take the time to read that second |
| 15 | typewritten page, it will tell you that |
| 16 | the bone was fractured and severed. It |
| 17 | will tell you which digits of his finger |
| 18 | had nerve damage and numbness, just as |
| 19 | Mr. Hall described to you on the witness |
| 20 | stand. |
| 21 | Now, if you take -- this evidence |
| 22 | is his showing you in court the medical |
| 23 | records. If you take that evidence that |
| 24 | he has an arm injury and that sort of |
| 25 | weighs out and has implications. Mr. |

1  Hall sat on this witness stand and told

2  you, yes, he could drive the car, that he

3  went to get the car, and he can drive the

4  car by putting his knee up against the

5  steering wheel as he shifts, essentially

6  driving with one hand.  That's what he

7  said.

8  Now, let's compare that with

9  driving with this arm in this condition

10  through an 80-mile-an-hour chase through

11  twisty winding streets over around Eden

12  Park with a standard-shift automobile,

13  with the arm in the condition as it's

14  described on the second typewritten page

15  in the University of Cincinnati report.

16  Ladies and gentlemen, that is going

17  to cause you doubt.  An 80 mile-an-hour

18  chase, winding streets, in a standard

19  shift automobile, compared to that

20  medical report.

21  The other half of this coming out

22  of the implications of this arm injury,

23  Fred Hall was handcuffed on the scene,

24  and he was taken into custody at 3:43

25  a.m. on October 17th.

1    And the radio tapes, et cetera,

2    will show you conclusively, beyond any

3    doubt, exactly what time that he left.

4    5:11 a.m.   Advised tow truck just left,

5    en route with individual handcuffed."

6    From 3:43 to 5:11 a.m., an hour and 25

7    minutes that Fredrick Hall was sitting in

8    a police car with his hands handcuffed

9    behind him with the injury that's

10   described to you through the University

11   of Cincinnati medical reports.   That

12   injury, by the way, occurred -- again

13   related by the medical records -- on the

14   third of October, 17, 16, 15, 14 -- 16,

15   15, 14, exactly 14 days prior to this

16   incident.

17   If you have a bone shot into in

18   your arm and substantial nerve damage, if

19   you can imagine sitting in this police

20   car handcuffed, sitting on your hands,

21   ladies and gentlemen, for an hour and 25

22   minutes -- what if that happened to you?

23   Is that going to raise your blood

24   pressure?   Are you going to tell

25   somebody, Hell, I went out and got

1    shaving cream?  Can you understand

2    disgust?  Can you understand

3    intimidation?  Can you understand a

4    citizen's feeling of being mistreated.

5        Now, the police, as you know -- I

6    know you know -- the police tried to

7    characterize this, "I went out to get

8    some shaving cream," as an inculpatory

9    admission of guilt.  And I just ask you

10   to wait here.  Is this an inculpatory

11   admission of guilt, or was Mr. Hall in

12   pain?  Was he under duress?

13       And, ladies and gentlemen, back in

14   the jury room, you just read that second

15   page of the typewritten material, and you

16   see that report and you think about him

17   sitting on his hands and arms for an hour

18   and 25 minutes.

19       The police talked about Mr. Hall

20   making statements, and ladies and

21   gentlemen, the Judge is going to give you

22   a instruction.  His Honor, the Judge --

23   let me clarify that.  Manners for a

24   lawyer, when I'm talking to you, I can

25   say "the Judge."  If I'm talking to him,

| | |
|---|---|
| 1 | it's "his Honor." I have done that |
| 2 | without exception. I have great respect |
| 3 | for the Court. I can say "the Judge" |
| 4 | directly but not to him. |
| 5 | His Honor will give you an |
| 6 | instruction that we don't contest. We |
| 7 | don't contest the legal notion that a |
| 8 | person can voluntarily make an admission, |
| 9 | but refuse to waive their rights. We |
| 10 | submit that's technically possible. |
| 11 | But what are the implications or |
| 12 | ramifications of this? Our contention is |
| 13 | that he made no inculpatory admissions of |
| 14 | guilt at all in this case. The best one |
| 15 | that we have heard is that he was out |
| 16 | buying shaving cream. |
| 17 | And do with that whatever you're |
| 18 | going to do with the shaving cream. |
| 19 | Ladies and gentlemen, that's a statement |
| 20 | that comes out of pain and frustration |
| 21 | that has nothing to do with this case at |
| 22 | all. It's irrelevant, immaterial, and it |
| 23 | has nothing to do with this case. It's a |
| 24 | common frustration. |
| 25 | On the topic of statements, there |

| | |
|---|---|
| 1 | is simply no written statement in this |
| 2 | case.  I submit to you that if I were a |
| 3 | police officer, not only would I identify |
| 4 | the evidence so you know where it came |
| 5 | from, but if a person was willing to make |
| 6 | a statement, I would make every effort to |
| 7 | get that statement in writing.  There is |
| 8 | not a statement here that we can analyze |
| 9 | and review and deal with confidence. |
| 10 | There is a cloud over this statement |
| 11 | business. |
| 12 | Why would a person refuse to sign a |
| 13 | waiver?  Why would a person who is |
| 14 | voluntarily going to talk to the police, |
| 15 | why would he not sign a waiver? |
| 16 | Although, technically, as I said, you can |
| 17 | refuse to sign the waiver, but go ahead |
| 18 | and voluntarily make admissions and talk |
| 19 | to the police, that's technically |
| 20 | possible. |
| 21 | In your common sense experience, |
| 22 | which you're going to apply in this case, |
| 23 | why would a person refuse to sign a |
| 24 | waiver if it was their intent to talk to |
| 25 | the police, to deal with the police and |

1        to make statements.

2                I don't know how to pronounce this.

3        Officer Eatrides, the officer who was

4        with the lady officer, arrived at Fulton

5        Street at 3:38 a.m.

6                Ladies and gentlemen, a brief

7        summary of this evidence, trying to shed

8        some light on this situation, the police

9        came to the door.  Mrs. Hall told them

10        that Dexter wasn't there, but she gave

11        him a description of Dexter, and that

12        came out on the radio stuff, computer

13        printout, radio log, recording, et

14        cetera.  And she told them that this was

15        her car, no question about that.

16                The police came back about a half

17        hour later, and she admitted to them that

18        Dexter was there, and he was arrested and

19        taken down to the Juvenile Detention

20        Center.

21                After the police arrived there, at

22        3:38, had this brief conversation, the

23        car was found at Windsor at 3:43.  From

24        the tape, you can figure out -- and there

25        is just overplay of 10 seconds, 3:18 and

| | |
|---|---|
| 1 | 10 seconds, 3:18 and 20 seconds, |
| 2 | whatever, it makes it difficult to listen |
| 3 | to the tape. But you can discern for |
| 4 | yourself that there was as little as |
| 5 | three minutes, depending how the seconds |
| 6 | fall on each end, there was as little as |
| 7 | three minute between the time that the |
| 8 | police arrived at Fulton and the time |
| 9 | that the car was found on Windsor. |
| 10 | If you listen to the tape and |
| 11 | verify that, it's between five minutes |
| 12 | and three minutes, depending upon how the |
| 13 | seconds fall. It's obvious, ladies and |
| 14 | gentlemen, that when the police arrived |
| 15 | at Fulton, that Dexter was at home, and |
| 16 | Mr. Hall was at the car or almost to the |
| 17 | car or whatever in the area of Windsor |
| 18 | when the police arrived at Fulton. |
| 19 | It's not real complicated if you |
| 20 | listen to the tape. Figure out the |
| 21 | times. Three minutes difference between |
| 22 | the police arriving at Fulton, getting a |
| 23 | description of the car and the finding of |
| 24 | the car on Windsor. |
| 25 | It is apparent that Mr. Hall was |

| | |
|---|---|
| 1 | approaching that car in the vicinity of |
| 2 | that car and that Dexter was at home. It |
| 3 | seems to me the police, the prosecution |
| 4 | have a right to make something out of |
| 5 | that. I think it's apparent he was at |
| 6 | home. |
| 7 | Officer Huffman submitted a latent |
| 8 | fingerprint, a fingerprint that was taken |
| 9 | from the car to the lab, and he also |
| 10 | submitted with it a fingerprint from |
| 11 | Fredrick Hall. The fingerprints didn't |
| 12 | match. |
| 13 | Now, ladies and gentlemen, it's my |
| 14 | job here to shed some light here on the |
| 15 | situation. And I'm just going to -- and |
| 16 | I'm going to tell you that if you think |
| 17 | about your automobile, how many people |
| 18 | touch that automobile, and how many |
| 19 | fingerprints are probably on that |
| 20 | automobile, that the chance of one |
| 21 | fingerprint matching any particular |
| 22 | person is not great. |
| 23 | As a matter of fact, it's very |
| 24 | remote, so Officer Huffman submitted this |
| 25 | fingerprint. We don't know where it came |

| | |
|---|---|
| 1 | from on the car. We submitted it, and it |
| 2 | didn't match. Now, I'm not going to |
| 3 | insult you and tell you that is a |
| 4 | substantially important piece of |
| 5 | evidence, because there are fingerprints |
| 6 | all over the car. There are fingerprints |
| 7 | on the tires from the last person who |
| 8 | fixed a flat. You see what I mean? But |
| 9 | it wasn't Fredrick Hall's fingerprint. |
| 10 | Three cartridge cases were |
| 11 | submitted to the fingerprint specialist |
| 12 | for analysis. Ladies and gentlemen, |
| 13 | Officer Huffman sat here and told you |
| 14 | that it's police procedure fundamentally |
| 15 | to mark evidence where you get it. |
| 16 | Yet these cases were submitted to |
| 17 | the lab for analysis for fingerprints, |
| 18 | and there was another report, which is a |
| 19 | prosecution exhibit, for the firing pin |
| 20 | marks. We paid for better police work |
| 21 | than we got as to this particular |
| 22 | evidence. We should know where those |
| 23 | cases came from. Two of them came from |
| 24 | the same gun; one of them didn't. |
| 25 | I just ask you rhetorically, was |

| | |
|---|---|
| 1 | one in the car from, if you recall, being |
| 2 | robbed 14 days earlier? I don't have a |
| 3 | clue. We need to know that. It's not |
| 4 | Fredrick Hall's fault that that evidence |
| 5 | is not here before you. You may think |
| 6 | there is an undercurrent here, an |
| 7 | undercurrent that maybe there is a |
| 8 | self-fulfilling prophecy. The police |
| 9 | think that they know something, and then |
| 10 | they make it true. |
| 11 | They didn't try to disprove their |
| 12 | own case. I think everybody on this jury |
| 13 | panel is familiar with gunshot residue |
| 14 | tests on people's hands. The police |
| 15 | think they know, so they are not going to |
| 16 | do a gunshot residue test. They are not |
| 17 | going to destroy what they think is their |
| 18 | case. |
| 19 | Officer Huffman said there is a |
| 20 | two-hour limit on that because a person |
| 21 | might wipe their hands off in the grass |
| 22 | or wash their hands. |
| 23 | Let me tell you, if a person washed |
| 24 | their hands, washed it all off, then the |
| 25 | test results are meaningless. But what |

| | |
|---|---|
| 1 | if they don't wash off their hands, and |
| 2 | the test is given three, four, five, six |
| 3 | hours later.  That's evidence that you |
| 4 | could use.  That's conclusive evidence. |
| 5 | And in this class of case and the |
| 6 | magnitude of the case, we need that |
| 7 | evidence. |
| 8 | An officer comes up and says, in 20 |
| 9 | years, he has never done this test.  He |
| 10 | has no training in this test.  The |
| 11 | exhibits weren't marked.  The shell |
| 12 | casings we don't know where they came |
| 13 | from.  He has never had any training in |
| 14 | gunshot residue tests, never used it in |
| 15 | 20 years. |
| 16 | I think that fact pattern -- that's |
| 17 | what I man by undercurrent.  I think it |
| 18 | fits a pattern in this case. |
| 19 | They say that Officer Huffman went |
| 20 | to Windsor to look for the gun with Fred |
| 21 | Hall.  They said Fred Hall went |
| 22 | voluntarily.  Let me tell you, ladies and |
| 23 | gentlemen, Fred Hall was under arrest. |
| 24 | He didn't go anyplace voluntarily.  He |
| 25 | was under arrest.  When they wanted to |

1    take him to the Justice Center, they took

2    him to the Justice Center.

3         When they wanted to take him to

4    Windsor -- had they not wanted to take

5    him to Windsor Avenue, they wouldn't have

6    taken him to Windsor Avenue.

7         What is the logic of telling the

8    police, Okay, I'll show you where the gun

9    is.  I won't put that in writing.  I'm

10   not going to put that in writing.  I'm

11   not going to sign any waiver form.  I'll

12   cooperate with you.  I will show you

13   where the gun is and go up there and not

14   find the gun.  The only thing that you

15   have done is incur the wrath of the

16   policeman.  You have not done anything to

17   your benefit.  What is the logic?

18        The logic in that is Officer

19   Huffman got him in the car, took him up

20   there, they looked for the gun, they

21   thought he might get lucky and find it.

22   The fact is he didn't find it.

23        Ladies and gentlemen, I have said

24   twice already -- I'll say it again --

25   this is a profoundly serious case.  When

1    you read the indictment in this case or

2    the instructions as it relates to the

3    indictment, it will be become chillingly

4    clear how important this case is.  This

5    tape is aggravating to listen to, but you

6    will have that tape back in the jury room

7    with you with a recorder. If you can't

8    get the recorder to work or have problems

9    with it, the Judge will give you

10   instructions about how to communicate

11   that to us.

12       The license number in this case,

13   ADU 6730, came out at 3:21 on the tape

14   thanks to the good effort of Officer

15   Fromhold.  There is an indication of a

16   person with a white T-shirt in the car,

17   involved -- in the car.  I'm not going to

18   characterize this -- I'm telling you this

19   is on the tape and begging your diligence

20   to listen to it, but a white T-shirt at

21   3:23.

22       The three occupants, two in front,

23   one in back, male black, dark hat, at

24   3:28.  Suspect Dexter Hart, male black,

25   at 3:40, passenger, 19 to 20, medium

1       complexion, black ball cap, black jacket

2       clean-shaven.

3               3:52, "Passenger is shooter, male

4       black, 19 to 20, black baseball cap,

5       medium complexion, clean-shaven, thin

6       build, and black jacket.

7               This case is such of a magnitude,

8       I ask you to listen to that tape to

9       verify what is on it.  And it's got a

10      rewind button, if you will be a good

11      enough citizen, good enough people to

12      verify what is on that tape, to listen to

13      it yourself in the original voices, in

14      the original voices, real time, see what

15      is there.

16              Officer Fromhold was apparently the

17      first officer on the scene.  He was on

18      bicycle patrol.  And I was sincere when I

19      indicated to him it's excellent police

20      work having this license number out very

21      quickly.  But let's address the issue of

22      the number of people in the car.  I think

23      we are getting closer to the fundamentals

24      of this case.

25              Kevin Davis said, one, Johann Hart

1    said that the crackhead got into the car

2    briefly and got back out.

3          Now, from Officer Fromhold's

4    testimony -- do you remember Jimmie

5    Martin, who kept repeating the license

6    number, from Officer Fromhold, "a

7    cognizant desire to remember that."  And

8    the license number was, in fact, correct.

9    Jimmie Martin saw this incident.  Jimmie

10   Martin was a good enough citizen --

11   whatever, he was, I don't know, but he

12   was concerned enough to repeat that

13   license number over and over to try to

14   help the police.

15         Is he going to mislead the police

16   in some other way?  Some of the

17   information that Fromhold testified to

18   that he got from Jimmie Martin, male

19   black, dark cap, 20 to 21, three people

20   in the car.

21         Officer Fromhold said in his

22   testimony, "I don't recall where the rear

23   person was seated, but I do recall them

24   explaining to me that it was one of the

25   two people in front, one in the back.  I

1        don't recall where the person in the back

2        was seated, what side of the vehicle."

3            Now, this is information that

4        Jimmie Martin gave Officer Fromhold, and

5        Officer Fromhold relays that to us in

6        court in person.  "I don't recall where

7        the person in the rear was, but I do

8        recall them explaining to me that it was

9        one of the two people in the front, one

10       in the back, and I don't recall where the

11       person in the back was seated, which side

12       of the vehicle."

13           Another comment attributed to

14       Jimmie Martin, he told me -- from Officer

15       Fromhold, "He told me there were three,

16       and one jumped out of the car."

17           Now, I want you to compare Officer

18       Fromhold's implication from Jimmie Martin

19       with Officer Fromhold's analysis of what

20       Lolita said.

21           This is what Lolita Moore told

22       Officer Fromhold, and it's a direct

23       quote.  "She was on 13th, I believe west

24       of the crime scene and saw the vehicle

25       proceed past her, started to make a turn,

| | |
|---|---|
| 1 | multiple gun shots rang out." She said |
| 2 | somebody exited the vehicle, went over to |
| 3 | the fallen victim, the other subject, Mr. |
| 4 | Davis, had run. |
| 5 | Let me back up a minute. She said |
| 6 | somebody had exited the vehicle, went |
| 7 | over to the fallen victim -- and the |
| 8 | other victim, Mr. Davis, had already run |
| 9 | away -- and goes into his pockets and |
| 10 | runs back to the vehicle, back to the |
| 11 | car, and takes off. |
| 12 | Lolita Moore is telling Officer |
| 13 | Fromhold that she saw somebody, one of |
| 14 | the three, jump out of the car, go over |
| 15 | and rifle through Johann's pockets, |
| 16 | because Davis had already run out of the |
| 17 | area. |
| 18 | Compare that with Jimmie Martin's |
| 19 | statement to Officer Fromhold that he |
| 20 | told me there were three and one jumped |
| 21 | out of the car. |
| 22 | There has got to be some |
| 23 | credibility from these people on the |
| 24 | scene that are talking to the police and |
| 25 | trying to assist them. I think this is a |

1    very important revelation, and again,

2    it's from Jimmie Martin to Officer

3    Fromhold on the scene, verbatim.

4         He heard the first gunshot, then

5    turned to see the vehicle drive by,

6    somebody hanging out the window shooting,

7    and that's when he saw the rear of the

8    vehicle proceed southbound and made a

9    mental note of the license plate.

10        Ladies and gentlemen, there is no

11   other evidence in this case of that

12   quality and reliability.  He heard the

13   first gunshot, then turned to see the

14   vehicle drive by, somebody hanging out

15   the window shooting, and that's when he

16   saw the rear of the vehicle proceed

17   southbound and made a mental note of the

18   license plate.  That statement rings more

19   true than anything in this case.

20        You cannot believe that he got this

21   license number correct and believe the

22   identification and rendition of Johann

23   Hart and Kevin Davis.  You cannot do

24   both.

25        Kevin Davis started out by saying

1     that he watched the car from across the

2     street for a half an hour. And there is

3     some more questioning from the

4     prosecutor, he said 15 minutes. They

5     settled on 15 minute.

6          Johann said he talked to him for

7     four minutes, five minutes. You noticed,

8     too, that Kevin Davis says he never saw

9     his hands. Johann says, yes, he all of

10    sudden started waving his arms, waving

11    his hands.

12         Relate that to the injury of Mr.

13    Hall's arm, but more importantly relate

14    this to the statement from Jimmie Martin,

15    the statement that resulted in the

16    license plate being broadcast, that it is

17    a drive-by shooting. That describes a

18    drive-by shooting. Both the statement of

19    Lolita Moore and Jimmie Martin say

20    somebody was hanging out the window

21    shooting. That is a drive-by shooting.

22         Again, Lolita Moore saw the vehicle

23    proceed past there, start to make the

24    turn, multiple gunshots rang out. Ladies

25    and gentlemen,  that is a drive-by

1    shooting.  It is totally diametrically

2    opposed to the statements of Johann Hart

3    in the affidavits.

4         Let me talk about something

5    ancillary here for a minute.  These

6    cartridge cases that were mishandled,

7    Officer Fromhold found those.  They were

8    35 feet apart.  35 feet apart.  How could

9    they get to be 35 feet apart, other than

10   evidence to corroborate the story told to

11   you by Lolita Moore that this car was

12   traveling and somebody was hanging out

13   the window shooting.

14        Now, somebody will probably put

15   this the spin on this case that this was

16   just another casing laying around, just

17   another cartridge case laying around, but

18   somewhere, Officer Fromhold -- that's

19   what I'm looking for, and I can't find it

20   -- says that's rare to find cartridge

21   cases on the street.

22        What is the probability or

23   possibility of finding the cartridge

24   cases of the same rank, same caliber,

25   .380, within 35 feet on the same day at

| | |
|---|---|
| 1 | the same time? |
| 2 | I found that. I can quote to you |
| 3 | directly from Officer Fromhold, "That's |
| 4 | unusual to find shell casings in that |
| 5 | area." |
| 6 | Question: That shell casing was |
| 7 | also recovered from the scene, correct?" |
| 8 | "Yes." |
| 9 | Ladies and gentlemen, the scene is |
| 10 | the heart of this case. You cannot |
| 11 | believe the testimony of Johann Hart and |
| 12 | Kevin Davis and believe this testimony |
| 13 | from the two witnesses on the stand -- |
| 14 | MR. ANDERSON: Objection, your |
| 15 | Honor. |
| 16 | THE COURT: Sustained. |
| 17 | MR. RADER: And if you have a |
| 18 | problem with the identification of Johann |
| 19 | Hart and Kevin Davis, if you have problem |
| 20 | with that scene, their identification in |
| 21 | the photo lineup is part and parcel of |
| 22 | that. It's inextricably based on what |
| 23 | they claim they saw sitting still in the |
| 24 | car carrying on this conversation. They |
| 25 | claim that is the basis of the |

1    identification. They claim that's where

2    they saw Fred Hall.

3    If that opportunity did not happen,

4    if it did not happen as they say it

5    happened, if it happened as the other

6    people say it happened, and the photo

7    identification is part and parcel of this

8    misrepresentation to us about what

9    happened, was this a drive-by shooting?

10    Was this a five-minute or a 30-minute

11    deal?

12    And when you answer that question,

13    things start to fall into place. Shell

14    casings 35 feet apart. There is the

15    license number being broadcast. His

16    Honor, the Judge, will give you these

17    written jury instructions to take with

18    you. I said in opening statement, these

19    words are chosen with profound care over

20    hundreds of years.

21    His Honor will tell you with great

22    care how you are to use proof beyond a

23    reasonable doubt, the doubt that would

24    concern you in the most important of your

25    own personal affairs. Is buying a car

1    one of your most important affairs?  Or

2    is it not that?  Is it buying a house?

3    Buying a house.  Think about that.

4    Buying a house.  If anybody came up to

5    you in this case and tried to sell you a

6    house, you would walk away from them

7    absolutely stone-flat walk away from

8    them.  Don't do to Fred Hall what you

9    wouldn't to somebody purchasing your own

10   house.

11       If this is so uncredible, so

12   confusing that you would not rely on it

13   in the most important of your own

14   affairs, buying a house, if you would

15   turn around and walk away from it, then

16   ladies and gentlemen, turn around and

17   walk away from this case.  Don't convict

18   this man on this kind of evidence.

19       Ladies and gentlemen, I'm proud to

20   have the opportunity to talk to you.  We

21   are content to leave it in your hands.

22   Thank you very much

23       THE COURT:  Mr. Anderson, you have

24   18 minutes left, if you need it.

25       MR. ANDERSON:  Thank you, your

1        Honor.

2                    There is an interesting thing that

3        occurred throughout the course of this

4        case, and that is this: We just heard

5        Mr. Rader allude to the testimony of

6        Jimmie Martin and Lolita Moore, and we

7        all know that Jimmie Martin and Lolita

8        Moore were never present in Court.

9        Despite the effort of the State and

10       despite the effort of Mr. Rader and Ms.

11       Zucker, they couldn't be found. They

12       didn't testify here. And the interesting

13       thing about it is that the Court, upon my

14       objection, could have prevented you from

15       hearing anything about those people. I

16       could have prevented Mr. Rader from

17       getting into the descriptions that they

18       gave, the number of occupants of the

19       vehicle and everything else they said

20       based on hearsay. I could have objected.

21       The Judge could have sustained it, and

22       you wouldn't have heard anything about

23       it.

24                    I didn't think that it was fair in

25       this case. I didn't think that it was

```
 1            reasonable, because Lolita Moore and
 2            Jimmie Martin were there.  Jimmie Martin
 3            did give a license plate number.  Lolita
 4            Moore did see the car drive by, but it
 5            wasn't fair for you not to hear it,
 6            although you didn't get chance to hear
 7            them testify.  Because they didn't, you
 8            didn't get a chance to assess their
 9            credibility, because they were not here.
10                 Let's talk about the problem with
11            the identification by Johann Hart and
12            Kevin Davis.  There is no problem with
13            the identification.  If this defendant.
14            Fredrick Hall, wasn't the gunman, how
15            would those two individuals picked him
16            out independent of each other?  They
17            wouldn't.  They saw him.  He was there
18            with the gun.
19                 What about the identification by
20            Officer Bailey?  Was he wrong too?  I
21            haven't heard any dispute -- there's been
22            no dispute by defense counsel that this
23            car with this license plate number was
24            used in the shooting.  There is no
25            dispute.  Somebody has to be driving the
```

1           car. Somebody has to be behind the

2           wheel.

3                Kevin Davis and Johann Hart said it

4           was the defendant. Officer Bailey said

5           he chased the defendant. In opening

6           statement -- I wrote this down -- part of

7           opening statements was the facts that are

8           going to come out was that Dexter Hall

9           came home and told his dad that the

10          police were following him. Dexter Hall

11          came into the house in a panic with the

12          car keys and told his dad that the police

13          were following him, and based on that

14          information that's why Fredrick Hall went

15          to the car on Windsor. But we know

16          that's not true.

17                Look at the defense exhibits

18          themselves. Look at the timeframe

19          between when the police arrived on the

20          scene at Fulton, which is where they were

21          living. Eatrides and a few other

22          officers were on the scene while the car

23          chase was going on.

24                How was Dexter Hall, if he was

25          involved in this -- and that's what the

1    defense is attempting to allude to, that
2    somehow Dexter Hall and his buddies were
3    the ones involved. How would Dexter Hall
4    have gotten past Officer Bailey, and
5    Officer Bailey makes bad identification?
6    How would Dexter Hall get from that car,
7    into his house and past the police? How
8    would he have time to tell daddy and give
9    him the keys, and then dad comes out the
10   front door?

11          It wouldn't happen that way. The
12   police were there when Dexter Hall was in
13   the house and this defendant was found
14   cowering behind the bushes, after having
15   just abandoned the car. That was his
16   opening. That was what his evidence was
17   going to show.

18          Mr. Rader indicated that we were
19   attempting to belittle the defendant's
20   injuries. I am not belittling his
21   injuries. He was shot with a gun -- if
22   he was shot with a gun in his elbow, I
23   don't know, but I know this, that no
24   officer testified that he had a sling on
25   that night. Nobody testified that the

1    defendant had a sling on at all that

2    night.  He certainly is capable of

3    driving a car, because he told you that.

4         Let's take a look at these medical

5    records.  There is a document dated

6    December 4, 1998, date of request

7    12/2/98.  This is a form filled out by

8    the defendant to the hospital, to the

9    Justice Center's personnel.  It says I

10   went to the hand doctor two weeks ago,

11   the hand doctor ordered a few things for

12   me, pain medication was one thing.  So,

13   he has been to the hand doctor.  They

14   ordered a few things for him.  One of the

15   things was pain medication.  These

16   reports look pretty thick.

17        When you look through the reports,

18   I would say the majority of them contains

19   some other conditions the defendant had,

20   kidney stones.  But then look at the

21   December 4th entry from the defendant,

22   pain medication along with other things

23   that the doctor recommended.  Then look

24   at the one dated December 14, '98, and

25   under treatment provided.  I believe it's

| | |
|---|---|
| 1 | a splint and a glove.  December 14th is |
| 2 | when those items were given to him for |
| 3 | the treatment of this injury.  There is |
| 4 | no other evidence indicating that he |
| 5 | received that sling beforehand or |
| 6 | anything else.  The first notation of |
| 7 | that is on December 14th, 1998. |
| 8 | I'm not saying he was not shot. |
| 9 | I'm not saying it might not have hurt. |
| 10 | I'm saying he is wearing that sling in |
| 11 | court to attempt to mislead you as to the |
| 12 | severity of the injuries for you to |
| 13 | believe that he was incapable of driving |
| 14 | a car that night. |
| 15 | Let's talk about the refusal to |
| 16 | sign the rights waiver.  Mr. Rader says, |
| 17 | why would anybody refuse to sign a rights |
| 18 | waiver if had he wanted to give a |
| 19 | voluntary statement. |
| 20 | It happens every day.  The police |
| 21 | give a defendant advice of his or her |
| 22 | rights, and they say, I understand that, |
| 23 | but I don't want to sign anything. |
| 24 | Do we see that anywhere else?  Yes. |
| 25 | Fredrick Hall's medical report, dated |

1      10/23/98, they are trying to treat him

2      for the medical injures that he

3      sustained.  He refused the finger splint.

4      He refused medical treatment.

5              How about the injury dated

6      12/23/1998, refused --

7              MR. RADER:  Objection, your Honor.

8              THE COURT:  Overruled.

9              MR. ANDERSON:  It's right there on

10     this page, and you can look at them.

11     Refused.  Refusing medical treatment for

12     these injuries that he apparently

13     sustained.  What is preventing him from

14     refusing to sign a rights waiver?

15             Mr. Rader talks about inculpable

16     statement, what he feels is the most

17     inculpable statement that the defendant

18     made, that he was out buying shaving

19     cream.  I would submit to you that is

20     something that the defendant made up on

21     the spot because he was caught cowering

22     behind the bushes behind the car.  He

23     made it up, and he was going to stick

24     with that story as long as he could.

25             Then Mr. Rader indicated there is a

1    cloud over his statement.  There is no

2    written statement in this case.  The

3    defendant did not give a written

4    statement.  Officer Huffman took notes of

5    the statement.  But you saw the defendant

6    on the witness stand.  I asked the

7    defendant, "Tell the ladies and gentlemen

8    of the jury what you told the police that

9    night."

10             "I don't remember."

11             "Tell them what you told them."

12             "I don't remember."

13             "Well, did you tell them about the

14   shaving cream?"

15             "Yes, I think I might have."

16             "Did you tell them about picking up

17   some guy named Dave?"

18             "I might have said that, too, but I

19   don't remember --"

20             He doesn't remember anything that

21   he said.  Either he does not remember, or

22   he does remember it, and he doesn't want

23   to tell you because it confirms

24   everything that Officer Huffman indicated

25   that he said in his statement.

1        Ladies and gentlemen, this car was

2    used in the shooting.  This defendant,

3    Fredrick Hall, was operating the car.

4    Dexter was at home.  Officer Bailey saw

5    him.  Officer Bailey chased him.  Officer

6    Bailey identified him.  Johann Hart

7    identified him.  Kevin Davis identified

8    him.

9        Proof beyond a reasonable doubt.

10    Can you say that you are firmly convinced

11    of the truth of the charge?  It's one of

12    two ways.  He driving the car or Dexter

13    was driving the car with his friends.

14    Dexter was at home.  He was driving the

15    car.

16        Carefully consider the evidence,

17    carefully assess the credibility of the

18    witnesses that you have heard from, and

19    render a true and just verdict in this

20    matter.  A true and just verdict in this

21    case is a verdict of guilty as charged

22    against Fredrick Hall for the cold-

23    blooded shooting of Johann Hart and Kevin

24    Davis.

25        THE COURT:  Thanks, Mr. Anderson.

1           We are going to break until 12:25.

2       I'm going to read you the charge before

3       we break before lunch.  The reason the

4       charge isn't finished is the printer is

5       not the newest.  So, in any event, we'll

6       break until 12:25.

7           Don't come to any conclusions based

8       upon anything that you have seen or heard

9       thus far.  Don't discuss this case with

10      anyone else or allow anyone to discuss it

11      in your presence.  We'll get you back in

12      here as soon as possible.

13          (Whereupon, the jury left the

14      courtroom at 12:16 p.m.)

15          THE COURT:  All right.  Any

16      objections from the State as to the jury

17      charge?

18          MR. ANDERSON:  No, your Honor.  I

19      have not had a chance to look at the

20      revised edition, but assuming is it

21      incorporates the changes we discussed

22      yesterday, I have no objection

23          THE COURT:  Come on up.  Both of

24      you look at this together.

25          Any objections from the defendant

| | |
|---|---|
| 1 | to the jury charge? |
| 2 | MR. RADER: No, your Honor. |
| 3 | THE COURT: Jury verdict forms, the |
| 4 | forms are guilty/not guilty for each |
| 5 | count, Counts 1 through 6, and stapled to |
| 6 | that are forms for the specifications. |
| 7 | What they do or don't do on the |
| 8 | guilty/not guilty of the specifications, |
| 9 | it says "circle one." There are |
| 10 | instructions, "If you find the defendant |
| 11 | guilty in Count 1, then please proceed to |
| 12 | the specifications." |
| 13 | For the not guilty on Count 1, "If |
| 14 | you find the defendant not guilty on |
| 15 | Count 1, please proceed to Count 2." |
| 16 | It's like that all the rest of way |
| 17 | through. |
| 18 | Bring them in. |
| 19 | (Whereupon, the jury returned to |
| 20 | the courtroom at 12:28 p.m.) |
| 21 | THE COURT: Ladies and gentlemen, |
| 22 | I'm going to read you my instructions. |
| 23 | They'll be with you back in the jury |
| 24 | room, and having just told that you, I |
| 25 | don't want you to just not listen. There |

1       are little over 21 pages long, double

2       spaced, and I will also go over the jury

3       verdict forms that you'll have with you

4       in the jury room.

5              Ladies and gentlemen of the jury,

6       you have now heard all of the evidence in

7       this case and the attorneys have just

8       concluded their arguments.

9              It is the duty of the Court to

10      charge you on the law; that is, to

11      instruct you on the law which you must

12      apply to the facts as you determine them

13      to be in order to arrive at your verdict.

14      You may have your own ideas as to what

15      the law is or what it ought to be.  You

16      must put those out from your mind.  It is

17      your sworn duty to apply only the law as

18      the Court gives it to you.

19              On the other hand, you are the

20      exclusive judges of the facts.  You

21      determine what happened in this case.  Do

22      not infer from any ruling or statement

23      that the Court has made during the course

24      of the trial, or any facial expression,

25      or anything else, that the Court has any

1      conclusion on any factual question.

2      Factual questions are the sole province

3      of the jury.

4            Evidence.  Your conclusions about

5      the facts will be based on what is called

6      the evidence.  You will recall that we

7      started with opening statements by

8      counsel in which they told you what they

9      thought the evidence was going to be.

10     Counsel have said various things or

11     incorporated certain things into their

12     questioning, and now they have concluded

13     their final arguments.

14            All of this is a proper part of the

15     trial, but none of it is evidence.

16            The evidence on which you will make

17     your decisions is what you heard from the

18     mouths of the witnesses sitting on the

19     witness stand, plus the exhibits which

20     have been admitted by the Court, plus

21     agreed or stipulated facts.

22            Evidence may be direct or

23     circumstantial or both.  Direct evidence

24     is the testimony by a witness who has

25     seen or heard the facts to which he or

1    she testifies.  It includes exhibits and

2    all agreed or stipulated facts.

3           Evidence may also be used to prove

4    a fact by inference.  This is referred to

5    as circumstantial evidence.

6    Circumstantial evidence is the proof of

7    facts by direct evidence from which you

8    may infer or derive by reasoning other

9    reasonable facts or conclusions.

10           Where the evidence is both direct

11    and circumstantial, the combination of

12    the two must satisfy you of the

13    defendant's guilt beyond a reasonable

14    doubt.

15           Statements or answers that were

16    stricken by the Court or which you were

17    instructed to disregard are not evidence

18    and must be treated as though you never

19    heard them.

20           You must not speculate as to why

21    the Court sustained the objection to any

22    question or what the answer to such

23    question might have been.  You must not

24    draw any inference or speculate on the

25    truth or any suggestion included in a

1        question that was not answered.

2              The jury is also the exclusive

3        judge of the credibility or believability

4        of the witnesses and the weight to be

5        given to the evidence.  You may believe

6        or disbelieve all or any part of the

7        testimony of any witness.

8              In determining what part of a

9        witness' testimony you wish to believe,

10       you consider a number of facts:

11             The witness' appearance on the

12       witness stand; their candor; what

13       interest, if any, they may have in the

14       outcome of this litigation; what

15       relationship, if any, they have to anyone

16       else involved in the case; the

17       consistency or inconsistency of one thing

18       they said with something else you believe

19       to be true or untrue; whether they were

20       in a position to know that concerning

21       which they testified; and all the facts

22       and circumstances surrounding the

23       testimony.

24             In brief, you will use all of those

25       tests which you use in your ordinary

| 1 | everyday life in order to determine what |
|---|---|
| 2 | testimony is worthy of belief and what |
| 3 | testimony is not worthy of belief. |
| 4 | Evidence was received that the |
| 5 | defendant was convicted of prior felony |
| 6 | offenses. That evidence was received |
| 7 | only for a limited purpose. |
| 8 | It was not received, and you may |
| 9 | not consider it, to prove the character |
| 10 | of the defendant in order to show he |
| 11 | acted in accordance with that character. |
| 12 | If you find that the defendant was |
| 13 | convicted of prior felony offenses, you |
| 14 | may consider that evidence only for the |
| 15 | purpose of testing the defendant's |
| 16 | credibility and the weight of the |
| 17 | evidence to be given the defendant's |
| 18 | testimony. It cannot be considered for |
| 19 | any other purpose. |
| 20 | All criminal cases start with an |
| 21 | indictment, but the indictment has |
| 22 | absolutely nothing whatsoever to do with |
| 23 | the guilt or innocence of this defendant. |
| 24 | It simply advised the defendant exactly |
| 25 | what the offense is with which he is |

| 1 | charged and sets out exactly what the |
|---|---|
| 2 | State of Ohio must prove to you beyond a |
| 3 | reasonable doubt before you can return a |
| 4 | verdict of guilty. |
| 5 | The defendant is presumed innocent |
| 6 | unless and until the jury has determined |
| 7 | that his guilt has been proved beyond a |
| 8 | reasonable doubt.  There is no necessity |
| 9 | or requirement that the defendant present |
| 10 | any evidence. |
| 11 | The burden of proof rests entirely |
| 12 | on the State of Ohio.  The defendant must |
| 13 | be acquitted unless the State produces |
| 14 | evidence which convinces you beyond a |
| 15 | reasonable doubt of every essential |
| 16 | element of the crime charged in the |
| 17 | indictment. |
| 18 | You have evidence before you that |
| 19 | the defendant refused to sign a written |
| 20 | rights waiver.  A signed written rights |
| 21 | waiver is not necessary for statements to |
| 22 | be lawfully obtained.  A defendant can |
| 23 | refuse to sign a rights waiver, but if |
| 24 | the defendant is explained or knows his |
| 25 | rights, understands them, and voluntarily |

| | |
|---|---|
| 1 | makes statements, those statements are, |
| 2 | in fact, properly obtained and are part |
| 3 | of the evidence in this case. |
| 4 | Reasonable doubt. Reasonable doubt |
| 5 | is defined by the Ohio legislature as |
| 6 | follows: |
| 7 | Reasonable doubt is present when |
| 8 | the jurors, after they have carefully |
| 9 | considered and compared all the evidence, |
| 10 | cannot say they are firmly convinced of |
| 11 | the truth of the charge. It is a doubt |
| 12 | based on reason and common sense. |
| 13 | Reasonable doubt is not mere |
| 14 | possible doubt, because everything |
| 15 | relating to human affairs or depending on |
| 16 | moral evidence is open to some possible |
| 17 | or imaginary doubt. |
| 18 | Proof beyond a reasonable doubt is |
| 19 | proof of such character that an ordinary |
| 20 | person would be willing to rely and act |
| 21 | upon it in the most important of his own |
| 22 | affairs. |
| 23 | Meaning of words. Remember that |
| 24 | words in the English language, whether |
| 25 | used in this charge or in the evidence |

| | |
|---|---|
| 1 | you are to weigh, are to be given their |
| 2 | normal and customary meaning in the |
| 3 | English language unless you are |
| 4 | specifically instructed to give them some |
| 5 | specialized or different meaning in this |
| 6 | charge.  This instruction on |
| 7 | interpretation should govern you |
| 8 | throughout your deliberations. |
| 9 | Count 1, felonious assault, Section |
| 10 | 2903.11(A)(2), with specifications.  The |
| 11 | defendant is charged with felonious |
| 12 | assault.  Before you can find the |
| 13 | defendant guilty of felonious assault, |
| 14 | you must find beyond a reasonable doubt |
| 15 | that on or about the 17th day of October, |
| 16 | 1998, and in Hamilton County, Ohio, the |
| 17 | defendant knowingly caused or attempted |
| 18 | to cause physical harm to Kevin Davis by |
| 19 | means of a deadly weapon or dangerous |
| 20 | ordinance. |
| 21 | Knowingly.  A person acts |
| 22 | knowingly, regardless of his purpose, |
| 23 | when he is aware that his conduct will |
| 24 | probable cause a certain result.  A |
| 25 | person has knowledge of circumstances |

1    when he is aware that such circumstances

2    probably exist.

3         Knowingly means that person is

4    aware of the existence of the facts and

5    that his acts will probable cause a

6    certain result.

7         Since you cannot look into the mind

8    of another, knowledge is determined from

9    all the facts and circumstances in

10   evidence. You will determine from these

11   facts and circumstances whether there

12   existed at the time in the mind of the

13   defendant an awareness of the probability

14   that he was committing felonious assault.

15        Causation. The State charges that

16   the act of the defendant caused physical

17   harm to Kevin Davis. Cause is an

18   essential element of the offense. Cause

19   is an act or failure to act which in a

20   natural and continuous sequence directly

21   produces the physical harm to Kevin

22   Davis, and without which it would not

23   have occurred.

24        Physical harm. Physical harm to

25   persons means any injury, illness, or

1    other physiological impairment,

2    regardless of its gravity or duration.

3    Deadly weapon. Deadly weapon means

4    any instrument, device or thing cable of

5    inflicting death, and designed or

6    specially adapted for use as a weapon, or

7    possessed, carried or used as a weapon.

8    Capability of deadly weapon. A

9    deadly weapon is any instrument, device

10   or thing which has two characteristics.

11   The first characteristic is that it

12   is capable of inflicting or causing

13   death.

14   The second characteristic is in the

15   alternative, either the instrument,

16   device or thing was designed or specially

17   adapted for use as a weapon, such as a

18   gun, knife, billy club or brass knuckles,

19   or it was possessed, carried or used in

20   this case as a well. These are questions

21   of fact for you to determine.

22   Attempt. A criminal attempt is

23   when one purposely does or fails to do

24   anything which is an act or omission

25   constituting a substantial step in a

1       course of conduct planned to culminate in

2       his commission of the crime.  To

3       constitute a substantial step, the

4       conduct must be strongly corroborative of

5       the actor's criminal purpose.

6              Preparing, planning, or arraigning

7       the means for the commission of the crime

8       does not constitute an attempt.

9              It is not a defense to a charge of

10      attempt that, in retrospect, the

11      commission of the for instance, which was

12      the object of the attempt, was impossible

13      under the circumstances.

14             If you find that the State proved

15      beyond a reasonable doubt all the

16      essential elements of the offense of

17      felonious assault, your verdict must be

18      guilty of that offense in Count 1.

19             If you find that the State failed

20      to prove beyond a reasonable doubt any

21      one of the essential elements of the

22      offense of felonious assault, your

23      verdict must be not guilty of that

24      offense in Count 1.

25             Specification to Count 1.  If your

1       verdict is guilty, you will separately.

2       decide whether the defendant had a

3       firearm on or about his person or under

4       his control while committing the offense

5       of felonious assault.

6           Specification 2 to Count 1.  If you

7       find the defendant guilty of felonious

8       assault, you will also separately

9       determine if the defendant did have on or

10      about his person or under his control, a

11      firearm while committing the offense of

12      felonious assault and displayed the

13      firearm, brandished the firearm,

14      indicated that he possessed a firearm or

15      used it to facilitate the offense as

16      alleged in Count 1 hereof.

17          Specification 3 to Count 1.  If you

18      find the defendant guilty of felonious

19      assault in Count 1, you will also

20      separately decide whether the defendant

21      committed the offense of felonious

22      assault, a felony that included as an

23      essential element, purposely or knowingly

24      causing or attempting to cause death or

25      physical harm to another by discharging a

1        firearm from a motor vehicle, other than

2        a manufactured home.

3             Firearm.  Firearm means any deadly

4        weapon capable of expelling or propelling

5        one or more projectiles by the action of

6        an explosive or combustible propellant.

7        Firearm includes an unloaded firearm and

8        any firearm which is inoperable, but

9        which can be readily rendered operable.

10            When deciding whether a firearm is

11       capable of expelling or propelling one or

12       more projectiles by the action of an

13       explosive or combustible propellant, you

14       may rely on circumstantial evidence,

15       including but not limited to the actions

16       of the individual exercising control over

17       the firearm.

18            The definition of firearm applies

19       to all specifications in Counts 1, 2, 3,

20       4, 5, and 6.

21            Count 2, felonious assault, Section

22       2903.11(A)(1) with specifications. the

23       defendant is charged with felonious

24       assault.  Before you can find the

25       defendant guilty of felonious assault,

| | |
|---|---|
| 1 | you must find beyond a reasonable doubt |
| 2 | that on or about the 17th day of October, |
| 3 | 1998, and in Hamilton County, Ohio, the |
| 4 | defendant knowingly caused serious |
| 5 | physical harm to Kevin Davis. |
| 6 | Knowingly. This has been |
| 7 | previously defined. |
| 8 | Causation. This has been |
| 9 | previously defined, with the exception |
| 10 | that the words physical harm should be |
| 11 | replaced with serious physical harm. |
| 12 | Serious physical harm. Serious |
| 13 | physical harm to persons means any of the |
| 14 | following. |
| 15 | One, any mental illness or |
| 16 | condition of such gravity as would |
| 17 | normally require hospitalization or |
| 18 | prolonged psychiatric treatment. |
| 19 | Two, any physical harm which |
| 20 | carries a substantial risk of death. |
| 21 | Three, any physical harm which |
| 22 | involves some permanent incapacity, |
| 23 | whether partial or total, or which |
| 24 | involves some temporary, substantial |
| 25 | incapacity. |

1          Four, any physical harm which
2     involves some permanent disfigurement, or
3     which involves some temporary, serious
4     disfigurement.
5          Five, any physical harm which
6     involves acute pain of such duration as
7     to result in substantial suffering, or
8     which involves any degree of prolonged
9     intractable pain.
10         Specification 1 to Count 2.  If
11    your verdict is guilty in Count 2, you
12    will separately decide whether the
13    defendant had a firearm on or about his
14    person or under his control while
15    committing the offense of felonious
16    assault.
17         Specification 2 to Count 2.  If you
18    find the defendant guilty of felonious
19    assault, you will also separately
20    determine if the defendant did have on or
21    about his person or under his control, a
22    firearm while committing the offense of
23    felonious assault and displayed the
24    firearm, brandished the firearm,
25    indicated that he possessed a firearm or

```
 1              used it to facilitate the offense as
 2              alleged in Count 2 hereof.
 3                   Specification 3 to Count 2.
 4                   If you find the defendant guilty of
 5              felonious assault in Count 2, you will
 6              also separately decide whether the
 7              defendant committed the offense of
 8              felonious assault, a felony that included
 9              as an essential element, purposely or
10              knowingly causing or attempting to cause
11              death or physical harm to another by
12              discharging a firearm from a motor
13              vehicle, other than a manufactured home.
14                   Firearm.  This has been previously
15              defined.
16                   Count 3, felonious assault, Section
17              290311(A)(2) with specifications.  The
18              defendant is charged with felonious
19              assault.  Before you can find the
20              defendant guilty of felonious assault,
21              you must find beyond a reasonable doubt
22              that on or about the 17th day of October,
23              1998, and in Hamilton County, Ohio, the
24              defendant knowingly caused or attempted
25              to cause physical harm to Johann Hart by
```

1    means of a deadly weapon.

2            Knowingly, this has been previously

3        defined.

4            Causation, this has been previously

5        defined.

6            Physical harm, this has been

7        previously defined.

8            Deadly weapon, this has been

9        previously defined.

10           Capability of deadly weapon, this

11       has been previously defined.

12           Attempt, this has been previously

13       defined.

14           Specification 1 to Count 3.  If

15       your verdict is guilty, you will

16       separately decide whether the defendant

17       had a firearm on or about his person or

18       under his control while committing the

19       offense of felonious assault.

20           Specification 2 to Count 3.  If you

21       find the defendant guilty of felonious

22       assault, you will also separately

23       determine if the defendant did have on or

24       about his person or under his control, a

25       firearm while committing the offense of

1      felonious assault and displayed the

2      firearm, brandished the firearm,

3      indicated that he possessed a firearm or

4      used it to facilitate the offense as

5      alleged in Count 3 hereof.

6           Specification 3 to Count 3.  If you

7      find the defendant guilty of felonious

8      assault in Count 3, you will also

9      separately decide whether the defendant

10     committed the offense of felonious

11     assault, a felony that included as an

12     essential element, purposely or knowingly

13     causing or attempting to cause death or

14     physical harm to another, by discharging

15     a firearm from a motor vehicle other than

16     a manufactured home.

17          Firearm, this has been previously

18     defined.

19          Count 4, felonious assault, Section

20     2903.11(A)(1) with specifications.  The

21     defendant is charged with felonious

22     assault.  Before you can find the

23     defendant guilty of felonious assault,

24     you must find beyond a reasonable doubt

25     that on or about the 17th day of October,

| | |
|---|---|
| 1 | 1998, and in Hamilton County, Ohio, the |
| 2 | defendant knowingly caused serious |
| 3 | physical harm to Johann Hart. |
| 4 | Knowingly, this has been previously |
| 5 | defined. |
| 6 | Causation, this has been previously |
| 7 | defined, with the exception that the |
| 8 | words physical harm should be replaced |
| 9 | with serious physical harm. |
| 10 | Serious physical harm, this has |
| 11 | been previously defined. |
| 12 | Specification 1 to Count 4.  If |
| 13 | your verdict is guilty in Count 4, you |
| 14 | will separately decide whether the |
| 15 | defendant had a firearm on or about his |
| 16 | person or under his control while |
| 17 | committing the offense of felonious |
| 18 | assault. |
| 19 | Specification 2 to Count 4.  If you |
| 20 | find the defendant guilty of felonious |
| 21 | assault, you will also separately |
| 22 | determine if the defendant did have on or |
| 23 | about his person or under his control, a |
| 24 | firearm while committing the offense of |
| 25 | felonious assault and displayed the |

| | |
|---|---|
| 1 | firearm, brandished the firearm, |
| 2 | indicated that he possessed a firearm or |
| 3 | used it to facilitate the offense as |
| 4 | alleged in Count 4 hereof. |
| 5 | Specification 3 to Count 4. If you |
| 6 | find the defendant guilty of felonious |
| 7 | assault in Count 4, you will also |
| 8 | separately decide whether the defendant |
| 9 | committed the offense of felonious |
| 10 | assault, a felony that included as an |
| 11 | essential element, purposely or knowingly |
| 12 | causing or attempting to cause death or |
| 13 | physical harm to another, by discharging |
| 14 | a firearm from a motor vehicle, other |
| 15 | than a manufactured home. |
| 16 | Firearm, this has been previously |
| 17 | defined. |
| 18 | Count 5, attempt, murder, Section |
| 19 | 2923.02(A) with specifications. The |
| 20 | defendant is charged with the attempted |
| 21 | murder of Kevin Davis. Before you can |
| 22 | find the defendant guilty of attempted |
| 23 | murder, you must find beyond a reasonable |
| 24 | doubt that on or about the 17th day of |
| 25 | October, 1998, and in Hamilton County, |

1       Ohio, the defendant knowingly engaged in

2       conduct which, if successful, would have

3       constituted or resulted in the offense of

4       the murder of Kevin Davis.

5           Knowingly, this has been previously

6       defined.

7           Attempt, this has been previously

8       defined.

9           Murder.  Murder is defined as

10      purposely causing the death of another.

11      Purpose to cause the death of another is

12      an essential element of the crime of

13      attempted murder.

14          A person acts purposely when it is

15      his specific intention to cause a certain

16      result.  It must be established in this

17      case that at the time in question there

18      was present in the mind of the defendant

19      a specific intention to commit attempted

20      murder.

21          Purpose is a decision of the mind

22      to do an act with a conscious objective

23      of producing a single result or engaging

24      in specific conduct.  To do an act

25      purposely is to do it intentionally and

1       not accidentally.

2               Purpose and intent mean the same

3       thing.  The purpose with which a person

4       does an act is known only to himself,

5       unless he expresses it to others or

6       indicates it by his conduct.

7               The burden of proof with which a

8       person does an act is determined from the

9       manner in which it is done, the means

10      used and all the other facts and

11      circumstances in evidence.

12              If you find is that the State

13      proved beyond a reasonable doubt all the

14      essential elements of the offense of

15      attempted murder, your verdict must be

16      guilty of that offense in Count 5.

17              If you find that the State failed

18      to prove beyond a reasonable doubt any

19      one of the essential elements of the

20      offense of attempted murder, your verdict

21      must be not guilty of that offense i9n

22      Count 5.

23              Specification 1 to Count 5.  If

24      your verdict is guilty in Count 5, you

25      will separately decide whether the

1    defendant had a firearm on or about his

2    person or under his control while

3    committing the offense of attempted

4    murder.

5            Specification 2 to Count 5.  If you

6    find the defendant guilty of attempted

7    murder, you will also separately

8    determine if the defendant did have on or

9    about his person or under his control, a

10   firearm while committing the offense of

11   attempted murder and displayed the

12   firearm, brandished the firearm,

13   indicated that he possessed a firearm or

14   used it to facilitate the offense as

15   alleged in Count 5 hereof.

16           Specification 3 to count 5.  If you

17   find the defendant guilty of attempted

18   murder in Count 5, you will also

19   separately decide whether the defendant

20   committed the offense of attempted

21   murder, a felony that included as an

22   essential element, purposely or knowingly

23   causing or attempting to cause death or

24   physical harm to another, by discharging

25   a firearm from a motor vehicle, other

1      than a manufactured home.

2              Firearm, this has been previously

3      defined.

4              Count 6, attempt, murder, Section

5      2923.02(A), with specifications.  The

6      defendant is charged with the attempted

7      murder of Johann Hart.  Before you can

8      find the defendant guilty of attempted

9      murder, you must find beyond a reasonable

10     doubt that on or about the 17th day of

11     October, 1998, and in Hamilton County,

12     Ohio, the defendant knowingly engaged in

13     conduct which, if successful, would have

14     constituted or resulted in the offense of

15     the murder of Johann Hart.

16             Knowingly, this has been previously

17     defined.

18             Attempt, this has been previously

19     defined.

20             Murder, this has been previously

21     defined.

22             If you find that the State proved

23     beyond a reasonable doubt all the

24     essential elements of the offense of

25     attempted murder, your verdict must be

1           guilty of that offense in Count 6.

2                 If you find that the State failed

3           to prove beyond a reasonable doubt any

4           one of the essential elements of the

5           offense of attempted murder, your verdict

6           must be not guilty of that offense in

7           Count 6.

8                 Specification 1 to Count 6.  If

9           your verdict is guilty in Count 6, you

10          will separately decide whether the

11          defendant had a firearm on or about his

12          person or under his control while

13          committing the offense of attempted

14          murder.

15                Specification 2 to Count 6.  If you

16          find the defendant guilty of attempted

17          murder, you will also separately

18          determine if the defendant did have on or

19          about his person or under his control, a

20          firearm while committing the offense of

21          attempted murder and displayed the

22          firearm, brandished the firearm,

23          indicated that he possessed a firearm or

24          used it to facilitate the offense as

25          alleged in Count 6 hereof.

|   |   |
|---|---|
| 1 | Specification 3 to Count 6.  If you |
| 2 | find the defendant guilty of attempted |
| 3 | murder in Count 6, you will also |
| 4 | separately decide whether the defendant |
| 5 | committed the offense of attempted |
| 6 | murder, a felony that included as an |
| 7 | essential element, purposely or knowingly |
| 8 | causing or attempting to cause death or |
| 9 | physical harm to another by discharging a |
| 10 | firearm from a motor vehicle, other than |
| 11 | a manufactured home. |
| 12 | Firearm, this has been previously |
| 13 | defined. |
| 14 | Count 7, failure to comply with an |
| 15 | order or signal of police officer, |
| 16 | Section 2921.331(B). |
| 17 | The defendant is charged with |
| 18 | failing to comply with an order or signal |
| 19 | of a police officer.  Before you can find |
| 20 | the defendant guilty, you must find |
| 21 | beyond a reasonable doubt that on or |
| 22 | about the 17th day of October, 1998, and |
| 23 | in Hamilton County, Ohio, the defendant |
| 24 | operated a motor vehicle so as willfully |
| 25 | to elude or flee a police officer after |

|     |                                            |
| --- | ------------------------------------------ |
| 1   | receiving a visible or audible signal      |
| 2   | from a police officer to bring his motor   |
| 3   | vehicle to a stop.                         |
| 4   | Failure to comply.  Failed to              |
| 5   | comply means ignored or disobeyed.         |
| 6   | Police officer.  Police officer            |
| 7   | means every officer authorized to direct   |
| 8   | or regulate traffic or to make arrests     |
| 9   | for violations of traffic regulations.     |
| 10  | Willfully.  A person acts willfully        |
| 11  | when it is his specific intention to       |
| 12  | cause a certain result or that he          |
| 13  | intentionally failed to do that which      |
| 14  | should be done.  It must be established     |
| 15  | in this case that at the time in           |
| 16  | question, there was present in the mind     |
| 17  | of the defendant a specific intention to   |
| 18  | flee or elude a police officer.            |
| 19  | Elude.  Elude means to get away            |
| 20  | from.                                      |
| 21  | Visible.  Visible means capable of         |
| 22  | being seen.                                |
| 23  | Audible.  Audible means capable of         |
| 24  | being heard.                               |
| 25  | Multiple counts.  If you find that         |