1           the State proved beyond a reasonable

2           doubt all the essential elements of any

3           one or more of the offenses charged in

4           the separate counts in the indictment,

5           your verdict must be guilty as to such

6           offense or offenses according to your

7           findings.

8                 If you find that the State failed

9           to prove beyond a reasonable doubt any

10          one of the essential elements of any one

11          or more of the offenses charged in the

12          separate counts in the indictment, your

13          verdict must be not guilty as to such

14          offense or offenses according to your

15          findings.

16                The charges set forth in each count

17          in the indictment constitute a separate

18          and distinct matter.  You must consider

19          each count and the evidence applicable to

20          each country separately, and you must

21          state your finding as to each count

22          uninfluenced by your verdict as to any

23          other count.  The defendant may be found

24          guilty or not guilty of any one or all of

25          the offenses charge.

1               Verdict.  You will have with you in

2         the jury room the following forms of

3         verdicts.  No inference is to be drawn

4         from the order in which the Court reads

5         these verdicts.

6               I will now read to you the verdict

7         forms.  Counts 1 through 6, it is the

8         same format.  Count 7 is just a little

9         different but simpler.

10              Count 1 has the heading of the

11        case, State of Ohio v. Fredrick Hall, the

12        case number, jury verdict, and my name on

13        it.

14              "Count 1.  We, the jury in the

15        above-captioned case, do hereby the find

16        the defendant, Fredrick Hall guilty of

17        the offense of felonious assault of Kevin

18        Davis as charged in Count 1 of the

19        indictment."

20              There are signature lines for all

21        12 of you to sign.  As I will explain

22        later, this is a criminal case.  For any

23        verdict, all of you must agree.  There's

24        a signature line here for the foreperson.

25        If you find the defendant guilty of Count

| | |
|---|---|
| 1 | 1, then, as indicated in the instruction, |
| 2 | then you proceed to the specifications. |
| 3 | Specification 1 to Count 1, "We, |
| 4 | the jury in the above-captioned case do |
| 5 | hereby find the defendant, Fredrick Hall, |
| 6 | guilty/not guilty, (circle one) of the |
| 7 | first specification to Count 1, |
| 8 | specifically that the felonious assault |
| 9 | of Kevin Davis was committed while the |
| 10 | defendant had a firearm on or about his |
| 11 | person or under his control." |
| 12 | There is also a Specification 2 to |
| 13 | Count 1. "We, the jury, in the |
| 14 | above-captioned case do hereby find the |
| 15 | defendant, Fredrick Hall guilty/not |
| 16 | guilty (circle one) of the second |
| 17 | specification to Count 1, specifically |
| 18 | that the felonious assault of Kevin Davis |
| 19 | was committed while the defendant had on |
| 20 | or about his person a firearm, that the |
| 21 | defendant displayed the firearm, |
| 22 | brandished the firearm or indicated that |
| 23 | he possessed a firearm, or used it to |
| 24 | facilitate the offense as alleged in |
| 25 | Count 1." There are 12 signature lines. |

1       There is a third specification to

2   Count 1.  "Specification 3 to Count 1.

3   We, the jury, in the above-captioned case

4   do hereby find the defendant, Fredrick

5   Hall, guilty/not guilty of the offense,

6   (circle one) of the third specification

7   to Count 1, specifically that the

8   felonious assault of Kevin Davis included

9   as an essential element or knowingly

10  causing or attempting to cause death or

11  physical harm to another by discharging a

12  firearm from a motor vehicle, other than

13  a manufactured home."  There are 12

14  signature lines.

15      There is an instruction, "Please

16  proceed to Count 2.

17      The other verdict form is not

18  guilty.  "We, the jury, in the

19  above-captioned case, do hereby find the

20  defendant, Fredrick Hall, not guilty of

21  felonious assault of Kevin Davis, as

22  charged in Count 1 of indictment."

23      If this is your finding, there are

24  12 signature lines.  You don't consider

25  the specifications.  You go directly to

| | |
|---|---|
| 1 | Count 2. |
| 2 | Count 2, again, is virtually the |
| 3 | same as Count 1. |
| 4 | "We, the jury, the above-captioned |
| 5 | case, do hereby find the defendant, |
| 6 | Fredrick Hall, guilty of felonious |
| 7 | assault of Johann Hart, as charged in |
| 8 | Count 2 of the indictment." |
| 9 | Do you have the indictment? I'm |
| 10 | pretty sure Count 2 is Kevin Davis. |
| 11 | Yes. I made that change. Just a |
| 12 | typo. There is 12 signature lines. |
| 13 | "...felonious assault of Kevin Davis, as |
| 14 | charged in Count 2 of the indictment." |
| 15 | There are 12 signature lines. |
| 16 | Again, if you find the defendant |
| 17 | guilty on Counts 1 through 6 on any of |
| 18 | the counts, you have to consider the |
| 19 | specifications. |
| 20 | Specification 1 to count 2 is, "we, |
| 21 | the jury, in the above-captioned case, do |
| 22 | hereby find the defendant, Fredrick Hall, |
| 23 | guilty/not guilty (circle one) of the |
| 24 | first specification to Count 2, |
| 25 | specifically that the felonious assault |

1        of Kevin Davis was committed while the

2        defendant had a firearm on or about his

3        person or under his control."

4            There are 12 signature lines.

5            Specification 2 to Count 2.  "We,

6        the jury, in the above-captioned case, do

7        hereby find the defendant, Fredrick Hall,

8        guilty/not guilty, (circle one) of the

9        second specification to Count 2,

10       specifically that the felonious assault

11       of Kevin Davis was committed while the

12       defendant had on or about his person or

13       under his control a firearm, that the

14       defendant displayed the firearm,

15       brandished the firearm, indicated that he

16       possessed a firearm, or used it to

17       facilitate the offense as alleged in

18       Count 2."

19           Specification 3 to Count 2.  We,

20       the jury, in the above-captioned case, do

21       hereby the find the defendant, Fredrick

22       Hall, guilty/not guilty of the offense

23       (circle one) of the third specification

24       to Count 2, specifically that the

25       felonious assault of Kevin Davis,

| | |
|---|---|
| 1 | included as an essential element, |
| 2 | purposely or knowingly causing or |
| 3 | attempting to cause the death or physical |
| 4 | harm of another, by discharging a firearm |
| 5 | from a motor vehicle, other than a |
| 6 | manufactured home."   There are 12 jury |
| 7 | signature lines. |
| 8 | The other verdict form for Count 2, |
| 9 | "We, the jury, in the above-captioned |
| 10 | case, do hereby find the defendant, |
| 11 | Fredrick Hall, not guilty of the offense |
| 12 | of felonious assault of Kevin Davis, as |
| 13 | charged in Count 2 of the indictment." |
| 14 | If you find the defendant not |
| 15 | guilty of Count 2, please proceed to |
| 16 | Count 3." |
| 17 | Count 3, "We, the jury, in the |
| 18 | above-captioned case, do hereby find the |
| 19 | defendant, Fredrick Hall, guilty of the |
| 20 | offense of felonious assault of Johann |
| 21 | Hart as charged in Count 3 of the |
| 22 | indictment." |
| 23 | "If you had find the defendant |
| 24 | guilty, then please proceed to the |
| 25 | specifications." |

1     Specification 1 to Count 3 -- and
2     it is by law that I have to read all of
3     those to you. "We, the jury, in the
4     above-captioned case do hereby find
5     defendant, Fredrick Hall, guilty/not
6     guilty (circle one) of the first
7     specification to Count 3, specifically
8     that the felonious assault of Johann
9     Hart was committed while the defendant
10    had a firearm on or about his person or
11    under his control," and there are 12
12    signature lines.
13        "Specification 2 to Count 3. We,
14    the jury, in the above-captioned case, do
15    hereby find the defendant, Fredrick Hall,
16    guilty/not guilty (circle one) of the
17    second specification to Count 3,
18    specifically that the felonious assault
19    of Johann Hart was committed while the
20    defendant had on or about his person or
21    under his control a firearm, that the
22    defendant displayed the firearm,
23    brandished the firearm, indicated that he
24    possessed a firearm or used it to
25    facilitate the offense as alleged in

| | |
|---|---|
| 1 | Count 3." |
| 2 | Specification 3 Count 3. We, the |
| 3 | jury, in the above-captioned case, do |
| 4 | hereby find the defendant, Fredrick Hall, |
| 5 | guilt/not guilty of the offense (circle |
| 6 | one) of the third specification to Count |
| 7 | 3, specifically that the felonious |
| 8 | assault of Johann Hart included as an |
| 9 | essential element, purposely or knowingly |
| 10 | causing or attempting to cause death or |
| 11 | physical harm of another by discharging a |
| 12 | firearm from a motor vehicle other than a |
| 13 | manufactured home." There's signature |
| 14 | lines and instructions to proceed to |
| 15 | Count 3." |
| 16 | Count 3, "We, the jury not the |
| 17 | above-captioned case, do hereby find the |
| 18 | defendant, Fredrick Hall, not guilty of |
| 19 | felonious assault of Johann Hart, as |
| 20 | charged in Count 3 of indictment." |
| 21 | "If you find the defendant not |
| 22 | guilty of Count 3, please proceed to |
| 23 | Count 4." |
| 24 | Count 4. "We, the jury, in the |
| 25 | above-captioned case, do hereby find the |

1    defendant, Fredrick Hall, guilty of the

2    offense of felonious assault of Johann

3    Hart, as charged in the Count 4 of the

4    indictment." There are 12 signature

5    lines.

6         If you find the defendant guilty,

7    you will then proceed to Specification 1

8    to Count 4.

9         We, the jury, in the

10   above-captioned case, do hereby find the

11   defendant, Fredrick Hall guilty/not

12   guilty of the offense (circle one) of the

13   first specification to Count 4,

14   specifically that the felonious assault

15   of Johann Hart was committed while the

16   defendant had a firearm on or about his

17   person or under his control."

18        Specification 2 to Count 4. "We,

19   the Jury, in the above-captioned case, do

20   hereby find the defendant, Fredrick Hall,

21   guilty/not guilty (circle one) of the

22   second specification to Court 4,

23   specifically that the felonious assault

24   was committed while the defendant had on

25   or about his person or under his control

1       a firearm, that the defendant displayed

2       the firearm, brandished the firearm,

3       indicated that he possessed a firearm or

4       used it to facilitate the offense as

5       alleged in Count 4."

6           Specification 3 Count 4, "We, the

7       Jury, in the above-captioned case, do

8       hereby find the defendant, Fredrick Hall,

9       guilty/not guilty (circle one) of the

10      third specification to Count 4,

11      specifically that the felonious assault

12      of Johann Hart included as an essential

13      element, purposely or knowingly causing

14      or attempting cause death or physical

15      harm to another, by discharging a firearm

16      from a motor vehicle other than a

17      manufactured home."

18          "Please proceed to Count five."

19          The other verdict form to Count 4

20      reads, "We, the jury, in the

21      above-captioned case, do hereby find the

22      defendant, Fredrick Hall, not guilty of

23      the offense of felonious assault of

24      Johann Hart, as charged in the Count 4 of

25      the indictment."

1           If you find the defendant not

2      guilty in Count 4, please proceed

3      directly to Count 5."

4           Count 5.  "We, the jury, in the

5      above-captioned case, do hereby find the

6      defendant, Fredrick Hall, guilty of the

7      offense of attempt (murder) of Kevin

8      Davis, as charged in Count 5 of the

9      indictment."

10          "If you find defendant guilty,

11     please proceed to specifications."

12          "Specification 1 to Count 5.  We,

13     the jury, in the above-captioned case do

14     hereby find of the defendant, Fredrick

15     Hall guilty/not guilty (circle one) of

16     the first specification to Count 5,

17     specifically that the attempt (murder) of

18     Kevin Davis was committed while the

19     defendant had a firearm on or about his

20     person or under his control."

21          "Specification 2 to Count 5.  We,

22     the jury, in the above-captioned case do

23     hereby find of the defendant Fredrick

24     Hall guilty/not guilty (circle one) of

25     the second specification to Count 5,

| 1 | specifically that attempt (murder) of |
|---|---|
| 2 | Kevin Davis was committed while the |
| 3 | defendant had on or about his person or |
| 4 | under his control a firearm, that the |
| 5 | defendant displayed the firearm, |
| 6 | brandished the firearm, indicated that he |
| 7 | possessed a firearm or used it to |
| 8 | facilitate the offense as alleged in |
| 9 | Count 5." |
| 10 | "Specification 3 to Count 5. "We, |
| 11 | the Jury, in the above-captioned case, do |
| 12 | hereby find the defendant, Fredrick Hall, |
| 13 | guilty/not guilty (circle one) of the |
| 14 | third specification to Count 5, |
| 15 | specifically that the attempt (murder) of |
| 16 | Kevin Davis included as an essential |
| 17 | element, purposely or knowingly causing |
| 18 | or attempting to cause death or physical |
| 19 | harm to another, by discharging a firearm |
| 20 | from a motor vehicle other than a |
| 21 | manufactured home." |
| 22 | There are 12 signature lines and an |
| 23 | instruction to proceed to count 6. |
| 24 | The other verdict form for Count 5 |
| 25 | reads, "We, the jury, in the |

1          above-captioned case, do hereby find the

2          defendant, Fredrick Hall, not guilty of

3          the offense of attempt (murder) of Kevin

4          Davis, as charged in Count 5 of the

5          indictment."

6                "If you find the defendant not

7          guilty on Count 5, please proceed to

8          Count 6."

9                Count 6. "We, the jury, in the

10         above-captioned case, do hereby find the

11         defendant, Fredrick Hall, guilty of the

12         offense of attempt (murder) of Johann

13         Hart, as charged in Count 6 of the

14         indictment."

15                If you find the defendant guilty of

16         Count 6, please proceed to Specification

17         1 to Count 6."

18                "We, the jury, in the

19         above-captioned case do hereby find of

20         the defendant Fredrick Hall guilty/not

21         guilty (circle one) of the first

22         specification to Count 6, specifically

23         that the attempt (murder) of Johann Hart

24         was committed while the defendant had a

25         firearm on or about his person or under

1   his control."

2       Specification 2 to Count 6.  We,

3   the jury, in the above-captioned case do

4   hereby find of the defendant Fredrick

5   Hall guilty/not guilty (circle one) of

6   the second specification to Count 6,

7   specifically that attempt (murder) of

8   Johann Hart was committed while the

9   defendant had on or about his person or

10  under his control a firearm, that the

11  defendant displayed the firearm,

12  brandished the firearm, indicated that he

13  possessed a firearm or used it to

14  facilitate the offense as alleged in

15  Count 6.

16      "Specification 3 to Count 3.  We,

17  the Jury, in the above-captioned case, do

18  hereby find the defendant, Fredrick Hall,

19  guilty/not guilty (circle one) of the

20  third specification to Count 6,

21  specifically that the attempt (murder) of

22  Johann Hart included as an essential

23  element, purposely or knowingly causing

24  or attempting cause death or physical

25  harm to another, by discharging a firearm

1        from a motor vehicle other than a

2        manufactured home."

3              There are 12 signature lines and an

4        instruction to proceed to Count 7.

5              The other verdict form for Count 6

6        reads, "We, the jury, in the

7        above-captioned case, do hereby find the

8        defendant, Fredrick Hall, not guilty of

9        the offense of attempt (murder) of Johann

10       Hart, as charged in Count 6 of the

11       indictment."

12             There are 12 signature lines and an

13       instruction to proceed to Count 7.

14             Count 7.  "We, the jury, in the

15       above-captioned case, do find the

16       defendant, Fredrick Hall, not guilty of

17       the offense of failure to comply with an

18       order or signal of a police officer, as

19       charged in Count 7 of the indictment."

20       And there are 12 signature lines.

21             "We, the jury, in the

22       above-captioned case, do find the

23       defendant, Fredrick Hall, guilty of the

24       offense of failure to comply with an

25       order or signal of a police officer, as

1        charged in Count 7 of the indictment."

2        And there are 12 signature lines.

3            You will have 14 forms of verdict.

4        You will return seven verdict forms duly

5        signed by all 12 jurors.

6            The question of what punishment, if

7        any, that follows a conviction in this

8        case is of no concern to you as jurors.

9        This is the concern and duty of the

10       Court.

11           Therefore, the question of

12       punishment is not to enter into your

13       consideration or your deliberations.

14           A criminal case requires the

15       concurrence of all members of the jury.

16       So when all 12 of you have agreed, you

17       will all sign the verdict on which you

18       agreed on the blank lines indicated on

19       the verdict form.

20           The Court will provide you with the

21       verdict forms and the exhibits presented

22       during the case.

23           When you go to the jury room, your

24       first duty will be to choose a foreperson

25       who acts like a chairperson of a meeting.

```
 1          The foreperson is to see that
 2      deliberations are conducted in an orderly
 3      fashion and that everyone has an
 4      opportunity to participate in the
 5      deliberations.  Otherwise, the foreperson
 6      is the same as any other juror.
 7          The foreperson will retain
 8      possession of the verdict forms and the
 9      exhibits and return them to the
10      courtroom.
11          Alternate juror.  Mr. Tresh, at
12      this time, we are going to have to
13      dispense with your services.  None of the
14      contingencies for which you were selected
15      have come about.  You are released at
16      this time with the admonition that you
17      will not tell anyone how you voted in
18      this case until such time as the regular
19      members of the panel have reached a
20      verdict and that verdict has been read in
21      open court.
22          The Court has instructed you on all
23      the law necessary for your deliberations.
24      Whether or not certain instructions are
25      applicable may depend upon the
```

1       conclusions you reach from the facts.

2               If you have an impression that the

3       Court indicated how any disputed fact

4       should be decided, you must put aside

5       such impression because you determine

6       such matters.

7               Your initial conduct upon

8       commencing deliberations is a matter of

9       importance.  It is not wise to express

10      immediately a determination to insist

11      upon a certain verdict.

12              Having so expressed yourself, your

13      sense of pride may be aroused, and you

14      may hesitate to give up your position

15      even if shown that it is not correct.

16              Consult with one another in the

17      jury room and deliberate with a view to

18      reaching an agreement, if you can do so

19      without disturbing your individual

20      judgment.  Each of you must decide this

21      case for yourself.  You should do so,

22      however, only after discussion of the

23      case with the other jurors.

24              Do not hesitate to change an

25      opinion if convinced that it is wrong.

1 | However, you should not surrender your

2 | considered opinion concerning the weight

3 | of the evidence in order to be congenial

4 | or to reach a verdict solely because of

5 | the opinion of other jurors.

6 | Now, ladies and gentlemen, you

7 | recall that you all stood up and raised

8 | your right hand and you took an oath, and

9 | you said that you would fairly and

10 | impartially determine this case on the

11 | basis of the law and the evidence.

12 | I know you will carry out that

13 | oath.  I know you will not be influenced

14 | by any feelings of bias, prejudice, or

15 | sympathy.

16 | I know that you will carry out your

17 | oath, which is to determine this case

18 | fairly and impartially, solely on the

19 | basis of the law as the Court has given

20 | it to you and the facts as you determine

21 | them to be from the evidence.

22 | The Court will place in your

23 | possession the exhibits and the verdict

24 | forms.  The foreperson will retain

25 | possession of these records, including

1      the verdict, and return them to the
2      courtroom.
3           Until your verdict is announced in
4      open court, you are not to disclose to
5      anyone else the status of your
6      deliberations or the nature of your
7      verdict.
8           Counsel, do you have anything you
9      would like to add?
10          MR. ANDERSON: I do, your Honor.
11          (Whereupon, an off-the record
12      discussion was held in chambers.)
13          THE COURT: Okay. Mr. Anderson,
14      has pointed out one omission from the
15      offense that goes in Count 7. Count 7
16      reads as follows. "Defendant is charged
17      with failure to comply with an order or
18      signal of a police officer. Before you
19      can find the defendant guilty, you must
20      find beyond a reasonable doubt that on or
21      about the 17th day of October, 1998, and
22      in Hamilton County, Ohio the defendant
23      operated a motor vehicle, so as to
24      willfully elude or flee a police officer,
25      after receiving a visible or audible

| | |
|---|---|
| 1 | signal from a police officer to bring his |
| 2 | motor vehicle to a stop.  And this is the |
| 3 | stuff I'm adding, "and in committing such |
| 4 | offense, the defendant was fleeing |
| 5 | immediately after the commission of a |
| 6 | felony," and I have added that in there. |
| 7 | You will now retire.  First select |
| 8 | a foreperson, and then when all 12 jurors |
| 9 | agree upon the verdict, you will sign the |
| 10 | verdicts in ink and advise the bailiff by |
| 11 | using the buzzer in the jury room.  You |
| 12 | will then be returned to the courtroom. |
| 13 | Ladies and gentlemen, you're now |
| 14 | free to begin your deliberations in this |
| 15 | case, obviously all of admonitions that I |
| 16 | have given you up to now about not coming |
| 17 | to any conclusions about the case are |
| 18 | lifted.  A few other points, if you go |
| 19 | back -- and I suspect you will -- you |
| 20 | will break for lunch.  That's fine, but |
| 21 | the same admonitions apply.  Do not |
| 22 | discuss the case except when all 12 of |
| 23 | you are not in the room.  Do not discuss |
| 24 | in case among yourselves or with anyone |
| 25 | until all 12 of you are in the jury room, |

1  with the door shot.

2  If you go to lunch, People will

3  trickle, if you want to look at the

4  exhibit, individually, that's fine. Don't

5  discuss the case until all of 12 you are

6  not room with the door shut much you have

7  the benefit of each others knowledge and

8  recollection about the evidence? If you

9  have questions or questions arise, have

10  the foreperson, whoever that is, put them

11  in writing, use the buzzer, and Jill will

12  show you, if she hasn't already, where

13  the buzzer is. I won't guarantee that I

14  can answer all of questions that you ask,

15  but on the other hand, you may never

16  know, until you ask. Some juries have a

17  lot of questions, some don't have any.

18  The speed and pace of your deliberation,

19  it's entirely up to you. You can go as

20  fast as you want or as slow as you want.

21  We are here to serve you at this point in

22  time. And with that, if you decide to

23  take a break, buzz, and just -- if you

24  decide to break for lunch, buzz and tell

25  us. We don't need to bring you in. We

1    do need you to bring in here forms and

2    the exhibits at the end of the day.  With

3    that, you free to begin your

4    deliberations. Thank you.

5         (The jury left the courtroom to

6    begin their deliberations at 1:18 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                        CERTIFICATE
2    I, Deborah Kahles, RPR, the undersigned, an
3    Official Court Reporter for the Hamilton County
4    Court of Common Pleas, do hereby certify that
5    at the same time and place stated herein, I
6    recorded in stenotype and thereafter
7    transcribed the within pages, and that the
8    foregoing Transcript of Proceedings is a true,
9    complete, and accurate transcript of my said
10   stenotype notes.
11           IN WITNESS WHEREOF, I hereunto set my
12   hand this 19th day of July, 2007.
13
14                    _____
                      Deborah Kahles, RPR
15                    Official Court Reporter
                      Court of Common Pleas
16                    Hamilton County, Ohio
17
18
19
20
21
22
23
24
25
```

may5a99.txt

499

1                MORNING SESSION, May 5, 1999

2                (Jury began deliberating at 9:00

3        a.m.)

4                (The following discussion was held

5        in chambers at 10:53 a.m. with the

6        foreperson, Ms. West.)

7                THE COURT:  Hi, Ms. West.  How are

8        you doing?  Have a seat.

9                We are in chambers right now.

10               Ms. West, Mrs. Schweir has

11       indicated to me that you've raised some

12       concerns with her that you and perhaps

13       some of the other jurors have concerning

14       one of the jurors who had a relative shot

15       in the neck or some injury?

16               FOREPERSON WEST:  Yes.  And I

17       didn't know the proper protocol, but I

18       felt like I had to ask the bailiff to

19       have the judge to give some direction.

20               THE COURT:  What exactly is going

21       on?

22               FOREPERSON WEST:  There were 12 of

23       us sitting around the table discussing

24       the case, and we were polling people to

25       try and reach some type of a verdict on

500

1        Count 1, because we can't seem to get

2        anywhere beyond that unless we establish

3        some credibility on Count 1, and one

4        juror -- and if I need to name her,

                        Page 1

may5a99.txt

5      that's fine.

6              THE COURT:  Not right now.

7              FOREPERSON WEST:  She said, she

8      passed on the first go-around.  We were

9      taking turns questioning people and going

10     around since I didn't know how to do this

11     and no one else did.

12             She passed the first time, and the

13     next person gave their indication.  Some

14     said guilty, not guilty, some said no

15     opinion yet.

16             We were still discussing it, and

17     when we came back to her, I asked her if

18     she was ready to give an opinion.  And at

19     that point is when she said, "There is no

20     credibility in any of the police

21     officers' testimony.  I do not believe

22     anything the police officers say.  My son

23     was just shot and died.  He was shot in

24     the left side of the neck.  The bullet

25     went into the neck, and the police

O

                                                    501

1      officers ruled it a suicide, and my son

2      is right handed."

3              Well, we all sat there stunned.  I

4      mean, everybody.

5              THE COURT:  Okay.  The question is,

6      is your concern that this juror went into

7      this not being able to accept police

8      testimony, or had she said something like

9      that?

10             FOREPERSON WEST:  Yes, previously

                          Page 2

may5a99.txt

11          she said this person is totally not

12          guilty.  She doesn't believe the

13          testimony, the credibility of witnesses

14          that were shot.  She doesn't believe the

15          police officers, and that's when she made

16          this comment.

17               THE COURT:  She's free, of course,

18          to believe or disbelieve anybody she

19          wants to believe.  Okay.  All right.  Was

20          there anything else that she said that

21          you can think of?

22               FOREPERSON WEST:  Yesterday, the

23          reason we did not reach any opinion is

24          because if anyone questioned anything

25          that was said, she immediately attacked

O                                                    502

1          what they said and how they said it and

2          reflected back on, "You don't believe

3          me?"  Or she assumed an attitude, "Why

4          are you saying that?"

5               THE COURT:  Okay.  Do you

6          understand what I am trying to say?

7               FOREPERSON WEST:  Yes, I do.

8               THE COURT:  All right.  Well, thank

9          you very much.

10               FOREPERSON WEST:  I think all of us

11          have compassion for her now at this

12          point.  That was my main concern.

13               THE COURT:  So you're still going

14          to make an effort to work through the

15          counts after we hear the testimony read

                        Page 3

may5a99.txt

16    back?

17    FOREPERSON WEST:  We would like to.

18    We all want to make some type of a

19    decision.

20    THE COURT:  Okay, good.  Why don't

21    I -- that's fine.  I appreciate your

22    time.  I'm sorry to disrupt your

23    deliberations.  I appreciate everything

24    that you have said.  Go on back.  Jill

25    will take you back to the jury room, and

O

503

1     we'll get you back as soon as possible.

2     FOREPERSON WEST:  How do I handle

3     going back in there?

4     THE COURT:  Go back in there and

5     say you talked to me.  You don't have to

6     say what it was about.  Go back and talk

7     about the Reds.

8     Thank you very much.

9     (Whereupon, Foreperson West was

10    excused.)

11    MR. RADER:  May I renew my motion

12    for a mistrial?

13    THE COURT:  You can do whatever you

14    want to.  You can make a motion for

15    mistrial?

16    MR. RADER:  Yes, your Honor.

17    THE COURT:  What is the State's

18    point of view right now?

19    MR. ANDERSON:  I will go along with

20    it.  I don't want somebody back there who

21    has made up their mind and not believing

Page 4

may5a99.txt

22    anything that a police officer has to

23    say.

24         THE COURT:  That's her right not to

25    believe anything that a police officer

504

1    says.  It's not her right from the

2    beginning of the case never to have been

3    willing to believe anything that the

4    police officer said.

5         MR. ANDERSON:  According to what

6    the foreperson has just stated, she

7    doesn't believe a word of what the police

8    said, and she would never believe a word

9    the police said because of this incident

10    involving her son.  That, to me, is a

11    predisposition to not give any weight at

12    all to the police officers' credibility.

13    She's not weighing their credibility.

14    She's saying, I don't believe a damn

15    thing they say because of what happened

16    to me.  That's the first issue.

17         The second issue, which is just as

18    important, is we took a lot of time

19    selecting this jury.  I went over the

20    facts of the case.  I asked about

21    gunshots.  I asked about guns.  I asked

22    all sorts of things.  Certainly any

23    normal person would raise their hand if

24    their son had been shot in the neck and

25    died and said, you know, this sounds

505

may5a99.txt
```
 1    familiar.  If she said my son was shot in
 2    the neck and died, we would have explored
 3    that further.
 4          My personal opinion is she withheld
 5    that information willingly in order to
 6    interject herself on this jury to fulfill
 7    some agenda that she has.
 8          MR. RADER:  Your Honor, if I might,
 9    my reason is, I think that this has and
10    will create so much animosity and
11    confusion that proper deliberations won't
12    occur.
13          THE COURT:  You guys have had some
14    stipulations in this case.  I guess this
15    is another one.  All right.  Off the
16    record.
17          (Whereupon, a discussion was held
18    off the record.)
19          THE COURT:  Bring Ms. West back in.
20          (Whereupon, the following
21    discussion was held with Juror West in
22    chambers:)
23          THE COURT:  Is the juror that
24    you're talking about Ms. Allen?
25          FOREPERSON WEST:  Yes.  Doris is
```
                                        506
```
 1    her first name.
 2          THE COURT:  Black woman?
 3          FOREPERSON WEST:  Yes.  She sits in
 4    the first row about seven or eight, I
 5    guess.
 6          THE COURT:  Thank you.
                    Page 6
```

may5a99.txt

7          (Whereupon, Foreperson West was

8     excused from chambers.)

9          THE COURT:  Bring Ms. Allen in, if

10    you will.

11         (Whereupon, the following

12    discussion was held with Juror Allen:)

13         THE COURT:  Hi, Ms. Allen.

14         Would you have a seat, please.

15    This won't take long.

16         A couple of the jurors have

17    mentioned to Jill -- and I'll get to the

18    point with you, did you have a son that

19    recently got shot and killed?

20         JUROR ALLEN:  Yes, a son-in-law.

21         THE COURT:  I'm sorry to hear

22    that.

23         JUROR ALLEN:  It happened in

24    Chicago.

25         THE COURT:  What happened with it?

o                                              507

1          THE WITNESS:  They said he

2     committed suicide.  I just mentioned it

3     to the jurors in this case.

4          THE COURT:  Do you believe that it

5     was something other than suicide, or do

6     you believe it was some sort of foul

7     play?

8          JUROR ALLEN:  It was ruled a

9     suicide?

10         THE COURT:  I know it was, but what

11    do you think?

Page 7

may5a99.txt

12          JUROR ALLEN:  It was ruled a

13     suicide.  I was here in the Cincinnati.

14     He lives in Chicago.  I had to go to

15     Chicago as a mother-in-law, because he

16     had no other relatives to take care of

17     the business.

18          THE COURT:  That's your --

19          JUROR ALLEN:  -- my daughter's

20     ex-husband.

21          THE COURT:  Ex-husband.  All right.

22     Thanks.  I appreciate it.  I told you it

23     wouldn't take long.

24          (Whereupon, Juror Allen was excused

25     from chambers.)

o
                                            508

1          THE COURT:  I am bringing them in,

2     and I'll say, Ladies and gentlemen, you

3     may have noticed we have talked to

4     several jurors.  At this point, I am

5     going to declare a mistrial in the case,

6     and I can't entirely go through the

7     reasons, but there is going to be a

8     mistrial declared, and I apologize for

9     any inconvenience that this was to your

10     lives.

11          MR. ANDERSON:  And, "Thank you, Ms.

12     Allen?"

13          THE COURT:  I probably won't say

14     that.

15          Let me be honest with you, Jim.

16     Bill has a right to be bitter.  What she

17     is doing in this case is just anti --

Page 8

may5a99.txt

18        it's anti everything the system is

19        supposed to stand for, and that's not

20        right one way or the other, and you both

21        ought to agree on that.

22              (Whereupon, the discussion in

23        chambers was concluded at 11:23.)

24

25

O

509

```
 1              (Discussion in chambers with Juror
 2         Doris Allen.)
 3              THE COURT:  Hi, Ms. Allen.  Have a
 4         seat right there.  Pat's here taking this
 5         down.  The record should reflect we're in
 6         chambers with Doris Allen, one of the
 7         jurors in the State of Ohio vs. Fredrick
 8         Hall.
 9              Ms. Allen, Ms. Schwier came in and
10         indicated that you have some problems
11         continuing as a juror in this case.
12              JUROR ALLEN:  Yes.
13              THE COURT:  What is that?
14              JUROR ALLEN:  Well, it began
15         yesterday with how to proceed with the,
16         with the deliberations.
17              THE COURT:  Uh-huh.
18              JUROR ALLEN:  And I made a couple of
19         suggestions.  One, mainly since there were
20         no --
21              THE COURT:  You don't have to tell us
22         what the suggestions were.  We want to
23         know as little about the deliberations as
24         possible.  Just tell us what happened.
25              JUROR ALLEN:  So that was not
```

```
 1          acceptable.

 2                  THE COURT:  To the other jurors?

 3                  JUROR ALLEN:  To some of the other

 4          jurors.  Everything I had suggested was

 5          not acceptable.  As far as I was concerned

 6          their minds had already been made up.  And

 7          what I wanted to do was have a discussion

 8          first.  So it became a little heated.

 9          Okay?  Today I said, well, I talked to

10          myself and I said well, I'm going to try

11          to avoid that type of situation.

12                  And so today, someone suggested that

13          we take a poll on the first count.  Well,

14          whatever.

15                  THE COURT:  I don't want to know what

16          the count was.

17                  JUROR ALLEN:  I'm not going to say

18          the count.

19                  THE COURT:  Good.  We're in agreement

20          there.

21                  JUROR ALLEN:  We went around the

22          room.  I passed at first so I was the last

23          person.  And I made a statement as to how

24          I was going to vote.  And I was admonished

25          and said that -- and I said I was not
```

511

```
1          going to change my mind on that.

2               THE COURT:  Uh-huh.

3               JUROR ALLEN:  And I had a little

4          planner, a little tiny small planner that

5          I put in my purse yesterday when I knew we

6          were going in there.  I sat down and sort

7          of started going back through my mind on

8          things I felt were discrepancies and I

9          made little notes.  And then on the steno

10         pad, I pulled a sheet out and I started

11         putting pros and cons down.  I was writing

12         this for myself.

13              So I brought this out and then they

14         immediately started pounding on me that

15         you're not supposed to take notes.  Prior

16         we were admonished not to take notes.  And

17         I said I was not taking notes during the

18         session.  I took those notes, and several

19         of them -- I think the whole thing boils

20         down to the fact that I made the statement

21         as to how I was going to vote.

22              THE COURT:  Was that just as to one

23         count or all of the counts?

24              JUROR ALLEN:  It was the first count.

25              They said well, we must -- I made the
```

512

```
 1            statement that I'm not going to change my

 2            mind.  And that sort of sent everybody

 3            spinning which I did not understand at

 4            first why it did.  They said if you're not

 5            going to change your mind, then we might

 6            as well just leave here.

 7            THE COURT:  Why do you want to -- what

 8            you're saying is at times it's

 9            uncomfortable in there.  What you're

10            saying is largely some things that happen

11            frequently during jury trials.

12                 Is there anything about this case

13            that you cannot evaluate the evidence and

14            follow the law and come to whatever

15            conclusion you're going to come to?

16                 JUROR ALLEN:  I felt that I did.

17                 THE COURT:  Is there any reason why

18            you can't go back in there and continue to

19            do that?

20                 JUROR ALLEN:  Well, I felt that

21            several people were teaming up to say that

22            I took those notes prior to that time, and

23            it was going to be bad.

24                 THE COURT:  When did you take these

25            notes?
```

```
1              JUROR ALLEN:  I took the notes
2         yesterday in my little planner and sat
3         there in the room.
4              THE COURT:  After the closing
5         arguments and instructions?
6              JUROR ALLEN:  After the closing
7         arguments.  And the only thing I have on
8         the notes are just some simple things
9         about --
10             THE COURT:  You don't have to tell me
11        what's on them.  You didn't take notes
12        during the trial?
13             JUROR ALLEN:  I didn't take a note
14        during the trial.
15             THE COURT:  Your notes are fine.  Is
16        there any reason -- I guess, is there any
17        reason why you can't continue to go
18        through the counts with these folks and
19        come to whatever conclusion it is you're
20        going to come to?  I mean, evaluating the
21        law and the evidence as you've heard it?
22             As I told you before, what
23        conclusions you all come to are the
24        conclusions you all come to.  It really
25        doesn't -- I have no opinion.  My interest
```

```
 1          is in a fair trial.

 2               And my only question for you is I

 3          know it's gotten a little uncomfortable

 4          for you because you've expressed that to

 5          me.

 6               Is there any reason why you can't

 7          follow the law and evaluate the evidence

 8          as you see fit and come to whatever

 9          conclusions you can come to?

10               JUROR ALLEN:  I have no problem with

11          that.  I wanted to -- we sat in there, and

12          we had not had an opportunity to discuss

13          the matter with each other.  And that's

14          all I wanted to do was discuss it and sort

15          of weed out what we heard, where the

16          discrepancies were and maybe somebody

17          heard something that the other person

18          hadn't heard and it started right in with:

19          Here's our opinion.

20               Now, they had opinions.

21               THE COURT:  Well, hold on.  Different

22          people deliberate differently and you got

23          12 people.  You all did not know each

24          other before you got in this case.  You

25          all, it's not surprising that you all
```

```
 1          would have different approaches as to how

 2          to deliberate.

 3               JUROR ALLEN:  Right.

 4               THE COURT:  They may differ as to any

 5     number of things.  But can you go back into the

 6     jury room, and follow the law and evaluate the

 7     evidence as you see fit and try and -- you've only

 8     done one count.  There's six more to go.

 9               JUROR ALLEN:  Right.

10               THE COURT:  Can you go back in there

11          and do that?

12               JUROR ALLEN:  Yes, I can do that.

13               THE COURT:  Good, 'cause that's what

14          I'm going to ask you to do.  All right?

15               JUROR ALLEN:  Okay.

16               THE COURT:  Thanks.  Just go on back.

17          Go back to the jury room with Jill, and

18          we've got your questions here and we're

19          going to try and get those addressed as

20          soon as possible.

21               JUROR ALLEN:  Thank you.

22               (Juror Allen returned to jury room.)

23               THE COURT:  Counsel for the State,

24          anything to add to that?

25               MR. ANDERSON:  Well, Judge, I do have
```

516

```
 1          a couple of things to add.  I mean it
 2          seems to me that she is having a problem
 3          getting along with some of the other
 4          jurors which we all know is a basic fact
 5          of jury deliberations where there are
 6          disagreements.
 7               THE COURT:  Uh-huh.
 8               MR. ANDERSON:  It sounds to me, and
 9          I'm not trying to read too much into it,
10          but it sounds like she is having a
11          disagreement with the rest of the jurors
12          as far as the potential verdict on Count
13          1, and that her vote disagreed with the
14          rest of the members of the jury.  And I'm
15          just presupposing that from what she
16          stated.
17               THE COURT:  Certainly several of the
18          other members of the jury.
19               MR. ANDERSON:  Right.  It sounds to
20          me, Judge, like she is not going to change
21          her mind, come hell or high water.  And I
22          know that we've asked her to go back in
23          deliberations.  My personal impression was
24          that when her suggestions about how to
25          deliberate were not well received
```

1           yesterday by the rest of the group, that

2           she took that personally.  And this is

3           maybe a result of that.

4                My personal opinion is that I think

5           that at some point, it needs to be

6           explained that, you know, she has a duty

7           and an obligation to deliberate.  She has

8           a duty and obligation to listen to the

9           views of the other jurors.

10               I mean, it sounds to me like it's a

11          Howard charge situation where, according

12          to that note, she's made up her mind and

13          she's not going to change it, come hell or

14          high water.

15               THE COURT:  But they are only on

16          Count 1.

17               MR. ANDERSON:  I'm looking down the

18          road.  If she's going to reach the same

19          conclusions on Counts 2, 3, 4, 5, 6 and 7,

20          what I'm saying is we're faced with a

21          situation where, I don't know, but it

22          sounded to me from what she said in here

23          that she's essentially made up her mind

24          and she is not going to change it and she

25          is not going to participate fully in the

```
 1          free exchange of ideas that deliberations

 2          require.

 3               THE COURT:  Okay.

 4               MR. ANDERSON:  Not that I'm asking

 5          for anything except that maybe down the

 6          road it would be explained to the jury as

 7          a panel that in fact they have a duty and

 8          obligation to listen to the opposing views

 9          of others and maybe decide if they are in

10          opposition to what the opposing view ought

11          to be.  If so, they are in the minority in

12          this effort.

13               MR. RADER:  I think the crux of what

14          she said was she is upset because they

15          wouldn't listen to her explanation and her

16          reasons.  I think that's a normal part of

17          jury deliberations.  I think it should go

18          to its conclusion, whatever that might be.

19               THE COURT:  All right.  With regard

20          to questions, I'm going to ask to bring

21          the jury in and ask for clarification as

22          to do they want police testimony, do they

23          want the wife's testimony, and if so, on

24          what topics.

25               They say on the note, and this will
```

```
 1          be marked as Court's Exhibit 1:  We need
 2          to check times.
 3              There's times all through this case.
 4          Every witness testified as to time.  It's
 5          an important portion of the case.  I'm not
 6          reading back the entire transcript to
 7          them.
 8              Second question they got:  Is there a
 9          mandatory sentence for cocaine possession,
10          penalty for cocaine selling?
11              That's of no significance in this
12          case.  No one in this case was found with
13          cocaine.
14              MR. ANDERSON:  That's not true.
15          Kevin Davis was found with cocaine.
16              MR. RADER:  It's not relevant or
17          material to the issues in this case.
18              THE COURT:  I'm going to say there
19          are mandatory sentences for cocaine.
20              MR. ANDERSON:  Depending on the
21          amount of cocaine involved.
22              MR. RADER:  Just keep it simple.
23          It's not necessary to decide this case.
24              MR. ANDERSON:  What you need to tell
25          them, I guess what you need to tell them
```

520

```
 1          is that cocaine in this case is not

 2          relevant except to the extent that you can

 3          use Kevin Davis's conviction for cocaine

 4          possession in assessing his credibility.

 5              MR. RADER:  I'd object to that.

 6          That's too much of an instruction.

 7              THE COURT:  What I'm guessing they

 8          are getting at here is was Kevin Davis

 9          offered any kind of deal to testify.

10              MR. ANDERSON:  Which he wasn't and he

11          testified as such.

12              THE COURT:  Go back and look at the

13          evidence.  But the best answer is that

14          that information is not necessary to

15          resolve this case.  That's your opinion.

16              So how do you want me to answer

17          this?  Is there a mandatory sentence for

18          cocaine possession, penalty for cocaine

19          selling?

20              MR. ANDERSON:  I mean you can answer

21          it a bunch of different ways.

22              THE COURT:  Depends on how you want

23          to do it.  I'm inclined not to get into it

24          at all.

25              MR. ANDERSON:  That's the way to go.
```

```
 1              MR. RADER:  I agree with that.  One

 2         juror says not guilty with no change

 3         emphatically, and we're only on Count 1.

 4              That should be ignored, Your Honor.

 5              THE COURT:  Tell them they have a

 6         duty and obligation, to use Bill's words,

 7         have a duty and obligation to deliberate

 8         with each other, go through seven counts,

 9         see if you can reach a verdict.  If you

10         can't, let us know.

11              MR. RADER:  Can I state for the

12         record an objection to question one?  I

13         think, my interpretation is that they are

14         asking for the times.  And it was a

15         suggestion by the Court to suggest reading

16         back either the wife's testimony --

17              MR. ANDERSON:  Actually, that's not

18         specifically -- the testimony of the

19         police and the wife.

20              THE COURT:  I mean the note speaks

21         for itself.  If they want police

22         testimony, which police officer do they

23         want.  If they want us to pull out times

24         from the transcript --

25              MR. ANDERSON:  My question is they
```

```
 1          want the testimony of Officer Eatrides who

 2          responded to the Fulton Avenue address,

 3          talked to the wife and was outside the

 4          entire time when the kid was found in the

 5          house.

 6               THE COURT:  I'm going to ask them

 7          which police officer they want and they

 8          can go back and deliberate and check on

 9          that.

10               So let's line them up, Ms. Schwier,

11          and let's go through these questions with

12          them.

13               With regard to the witnesses and the

14          attorneys on the Johnson and Alexander

15          case, I haven't forgotten about you.

16          We've got a jury out right now and they've

17          got a question.  We're going to bring them

18          in.

19               There are several questions.  I'm not

20          going to answer Number 1, answer another

21          and ask for a clarification.  We've had

22          quite a few discussions in chambers about

23          these issues.  Because this jury trial has

24          been going on, this is the sixth day so

25          I'm going to bring the jury in right now
```

523

```
1          and do that.

2                 (Jury entered courtroom at 11:20

3          a.m.)

4                 THE COURT:  Ms. West, we've got

5          questions from the jury and what I'm going

6          to do is answer them not in the order you

7          asked them, but I'll mark this as Court's

8          Exhibit 1.  And when we're done --

9                 JUROR WEST:  Sorry.  I should have

10         written that more plainly.

11                THE COURT:  The second question you

12         asked was:  Is there a mandatory sentence

13         for cocaine possession, penalty for

14         cocaine selling?

15                I'm not going to answer that.  It

16         really is not relevant in this case.  The

17         defendant was not charged with any drug

18         offenses in this matter.  He's charged

19         what a number of other things but no drug

20         offenses.  So I'm really not going to get

21         into answering the question on that.

22         There's no easy answer and I can't give

23         you, I'm not going to give you the answer

24         because the defendant is just simply not

25         charged with that.
```

524

1           The only thing I would remind you, as

2       I indicated on the instructions, is any

3       questions of punishment that would follow

4       a conviction, if any, are not to be

5       considered by you.

6           The third question is:  One juror

7       votes not guilty with no change

8       emphatically.  We are only on Count 1.

9           My suggestion is to remind you all

10      that you are to decide this case for

11      yourselves.  As the instructions indicated

12      you have a duty and an obligation to

13      deliberate.

14          You're only on Count 1.  Let me know

15      where you stand once you've gone through

16      all the counts, okay?  And however long

17      that takes, if it takes you another 20

18      minutes or if it takes you another two

19      days, let me know where you are when you

20      get done with all the counts.

21          As the jury instructions indicate,

22      the counts in a multi-count indictment

23      like this, each count stands alone and is

24      to be decided on its own merits.  So I

25      appreciate the situation you're in with

1          regard to Count 1.  You've got six more to

2          go.  So if you could deliberate on those,

3          we'll all appreciate it.

4                 The first question you asked, you

5          have:  Police - then you have wife - Ms.

6          Parker-Hall's testimony at home of Hall.

7          We need to check times.

8                 Which police officer's testimony do

9          you want read back?  I need to know that.

10         If it's all the police officers' testimony

11         it probably isn't going to take place.

12                I don't want you to answer right

13         here.  I want you to go back in the room

14         and tell us what you want.  If you want

15         all the police officers' testimony read

16         back, I'm probably not going to do that.

17         But if you just want one of them read

18         back, plus Ms. Parker-Hall, we can do

19         that.  So figure out which police officer

20         it is that you want read back.

21                So if you can go back and check

22         with the other jurors and see if there is

23         some consensus for one person or whatever,

24         buzz us and we'll bring you back in.  And

25         then we'll get the testimony prepared as

 1    soon as possible.  But just let us know.

 2         (Jury retired to continue

 3    deliberating at 11:30 a.m.)

 4         THE COURT:  Let's leave him here for

 5    a few minutes.  I think that they are

 6    going to go back and decide what they want

 7    to do.  So let's leave him here.

 8         (Question from jury at 12:00 noon.)

 9         THE COURT:  Anybody object to reading

10    back the testimony?

11         The next question from the jury is we

12    would like the transcript -- which I will

13    not give them -- of the officer at the

14    Hall home, Officer Eatrides -- with a

15    question mark -- and Ms. Sheila

16    Parker-Hall.  Then they put parens:  The

17    first officer to arrive at the Hall home

18    on October 17, 1998.

19         Was it Eatrides?

20         MR. ANDERSON:  Yes.

21         THE COURT:  Then it also says we

22    would like to have Officer Bailey's

23    testimony.

24         My policy in these things is I won't

25    give them transcripts.  I'll have it read

1          back.

2                  The defense objects to any readback;

3          is that true?

4                  MR. RADER:  Yes, Your Honor.

5                  THE COURT:  State have any objection

6          to the readback?

7                  MR. ANDERSON:  No.

8                  MR. RADER:  May I express my thoughts

9          on that, Your Honor?

10                 THE COURT:  Yes.

11                 MR. RADER:  I believe that it takes

12         the testimony out of context and adds

13         improper emphasis to certain parts of the

14         testimony.

15                 They have heard all the evidence in

16         this case and I believe it should be

17         submitted to them on equal footing without

18         any added emphasis, which I think is the

19         net result of you reading the testimony

20         back.

21                 THE COURT:  I will caution them if

22         just because we are reading it back

23         doesn't mean it's --

24                 MR. RADER:  Your Honor, if it please

25         the Court, too, I would like to make a

528

```
1          motion for a mistrial based on Ms. Allen's
2          testimony in chambers.
3              THE COURT:  She didn't testify but
4          she answered questions.  The fundamental
5          reason I'm going to leave her on the jury
6          is that she said that she could fairly
7          review the evidence and follow the law,
8          and that's all we can ask.
9              The fact that it's gotten
10         uncomfortable for her back there doesn't
11         make her different than any other juror
12         from time to time.  The fact that she
13         spoke up makes her a little unusual but
14         she can follow the law and apply the
15         evidence to the law.  That's all we can
16         ask.
17             I understand your objection.  It will
18         be noted until the trial is over.  If
19         there's no objection, since we've had to
20         take the defendant back up, I'll just go
21         back and tell them it will take until
22         about 1:30 to get this together and that's
23         about when they can expect to have some
24         testimony read back.
25             Any objection by the defense?
```

529

```
 1              MR. RADER:  No.
 2              THE COURT:  Any objection from the
 3         State?
 4              MR. ANDERSON:  No.
 5              THE COURT:  I'll go back and tell
 6         them.
 7              (Proceedings in jury room as
 8         follows:)
 9              THE COURT:  We're in the jury room.
10         I've got your request for transcripts and
11         I'm going to mark this as Court's Exhibit
12         2.  We don't provide transcripts.  What I
13         will do is I'll read back testimony or
14         have the testimony read back of Officer
15         Eatrides, Sheila Parker-Hall, and Officer
16         Bailey, some of which we've already got in
17         a close form to getting ready to read
18         back, some of which is not that close.
19         What I will tell you is we'll be in a
20         position to start reading back testimony
21         at 1:30.
22              Your conduct till then is up to you.
23         If you want to break for lunch and come
24         back, if you want to continue to discuss
25         other matters, that's entirely up to you.
```

```
 1          But it will probably be about 1:30 before

 2          we can get to a point where we can start

 3          reading back testimony.  So that's what

 4          we'll do.  Thank you.

 5               (Proceedings recessed.)

 6               (Jury in at 2:00 p.m.)

 7               THE COURT:  Please be seated.

 8               Ladies and gentlemen of the jury,

 9          it's not easy to tell you this, but at

10          this point both sides -- we've had some

11          discussions on and off the record -- both

12          sides of the case have made a motion for a

13          mistrial.

14               Both sides believe they cannot

15          receive, for similar and different

16          reasons, but believe that they cannot

17          receive a fair trial in this case.  And

18          I'm going to grant the motion, the joint

19          motions for mistrial in this matter.

20               I do want to thank you all for the

21          time and attention you paid in this case.

22          And I apologize for any inconvenience that

23          sitting through six days of this and not

24          being able to complete your deliberations

25          may cause you, but that's not been
```

```
 1          necessarily convenient for my calendar

 2          either.

 3              But on the other hand, it is

 4          important that we get a fair trial in this

 5          case.  And for a number of different

 6          unrelated reasons, both sides believe that

 7          it's just not possible right now.

 8              I do want to thank you for the time

 9          and attention you've given us and the time

10          you spent.

11              Anybody that would like to stay in

12          the jury room -- anybody that wants to

13          leave can leave.  Anybody that wants to

14          stay in the jury room so I can talk to

15          you, and I'll explain various things that

16          happened during the trial, I'll be more

17          than happy to spend time and talk with

18          you.

19              I usually do that at the end of the

20          deliberations but we'll be happy to do it

21          with you here.  So that's it.

22              Thank you all very much.

23              MR. RADER:  Your Honor, would you

24          convey to the jury that after today they

25          are free to discuss the case with anyone
```

532

```
1              they choose, including counsel?
2                   THE COURT:  Well, you can discuss
3              this case.  Any admonitions I've laid on
4              you or given to you prior to now, are
5              officially lifted.  You can discuss this
6              case with anyone you want to, including
7              counsel for either party.
8                   You are also perfectly within your
9              rights not to say anything to anybody
10             about it if you don't want to.  It's up to
11             you.  If you don't want to talk to
12             anybody, any of the counsel about it or
13             any one of the counsel or all of them, you
14             don't have to.  If you don't want to talk
15             to me about it, it just doesn't matter at
16             this point in time.
17                  Thank you.  Anybody that wants to
18             stay, I'll be back in the jury room in a
19             few minutes.  Thank you.
20                  (Jury excused at 2:15 p.m.)
21                  THE COURT:  Let's set a new trial
22             date.
23                  MR. RADER:  Your Honor, can we do
24             that tomorrow?
25                  THE COURT:  Nope.  Let's just do it
```

533

```
 1        now.  When do I have a week to do this
 2        trial?  Not until maybe the end of June.
 3        I'm booked on criminal cases.  How about
 4        June 24th?  I got that day and the
 5        following week open.
 6             This case will go a lot quicker the
 7        next time because if we're not ready with
 8        witnesses, Mr. Hall, the next time we're
 9        just going to go forward.  All right?
10             The State had their witnesses pretty
11        much here.  Sometimes your witnesses
12        weren't.  So we will just go straight
13        through and if you don't have witnesses,
14        that will be the end of it.  We will just
15        rest.
16             We won't have any breaks because
17        everybody knows what Officer Eatrides is
18        going to testify, so I imagine we can
19        tighten this thing up.
20             Is June 24th okay with everybody?
21             MR. ANDERSON:  Judge, I haven't
22        checked my calender but I will make myself
23        available.
24             MS. ZUCKER:  Yes, Your Honor.
25             (Proceedings concluded.)
```