1

<pre>
 1                    COURT OF COMMON PLEAS

 2                  HAMILTON COUNTY, OHIO

 3                         -  -  -

 4    STATE OF OHIO,              :
                                  :
 5                  Plaintiff,    :
                                  :
 6           vs.                  :   Case No.  B-980752
                                  :
 7    FREDRICK HALL,              :
                                  :
 8                                :
                    Defendant,    :
 9                                :

10                         -  -  -

11          TRANSCRIPT OF OPENING STATEMENTS

12                         -  -  -

13    APPEARANCES:

14          WILLIAM ANDERSON, ESQ.

15                  On behalf of the Plaintiff

16          ELIZABETH ZUCKER, ESQ.,
                    and
17          JAMES RADER, ESQ.
                    On behalf of the Defendant
18
                           -  -  -
19

20                  BE IT REMEMBERED that upon the hearing of

21    this matter, on the dates hereinafter indicated, before

22    the Honorable STEVEN E. MARTIN, one of the judges of the

23    said Court of Common Pleas, the following proceedings were

24    had, to wit:

25
</pre>

1          Proceedings, April 27, 1999

2          MR. ANDERSON:  Thank you, Your Honor.

3          May it please the Court, defense counsel,

4     ladies and gentlemen of the jury, the evidence in

5     this case will show that on October 17th of 1998,

6     this defendant, Fredrick Hall, took a .380

7     caliber handgun and shot two individuals with it.

8     Shot Kevin Davis, and he shot Johann Hart at 3:15

9     in the morning on Windsor Avenue.

10          The evidence will show that Mr. Davis and

11    Mr. Hart were out on the street in the early

12    morning hours that morning; Mr. Davis had crack

13    cocaine on him -- they were probably out there

14    dealing, making their deals -- and this defendant

15    was operating a car and pulled up and motioned

16    them to come over and began to engage in what they

17    believe to be a drug transaction.  He wanted to

18    buy some crack cocaine.

19          At that point, he pulled out a handgun

20    and he shot Kevin Davis in the right shoulder with

21    that .380 caliber handgun.  He shot Johann Hart

22    twice; he shot him in the neck and he shot him in

23    the back.

24          After Fredrick Hall fired that gun and

25    hit those two individuals, he took off in his car.

1          A description of the car he was driving was made.

2     The license plates were obtained from the car he

3     was driving, and the police put out a broadcast to

4     be on the lookout for a car with a certain license

5     plate number and they gave a general area where

6     that car had last been seen.

7          You will hear testimony from Officer

8     Bailey that he observed that car driven by this

9     defendant.  And when this defendant became aware

10    that Officer Bailey had spotted him, he took off

11    at a high rate of speed going 60 to 70 miles an

12    hour down Gilbert Avenue through Eden Park, and

13    things of that nature.

14         Officer Bailey lost the car momentarily.

15    However, other officers were around.  The police

16    found the car parked on Windsor Avenue.  It's

17    registered to the defendant's wife.  And as the

18    police were searching around the area of that

19    vehicle, they found this defendant, Fredrick Hall,

20    hiding in the bushes, attempting to escape

21    capture.

22         You'll hear testimony from both Kevin

23    Davis and Johann Hart that that's the individual

24    that had the gun that night, that that's the

25    individual that fired the shots.

1    When the police did a crime scene, they

2  found two spent shell casings in the area where

3  these gentlemen were shot.  They were kind of

4  kicked to the curb.  They recovered those two

5  shell casings.  They also recovered one shell

6  casing, a spent shell casing from a .380 caliber

7  handgun from the car being driven by the

8  defendant.

9    They sent them to the lab and it came

10  back that the two shell casings at the scene had

11  not been fired from the same gun as the shell

12  casings recovered from the defendant's car.

13    None of the bullets were recovered from

14  the defendant's -- or from the victims because

15  they were shot and the bullets went through them,

16  so they didn't recover any of those, and the gun

17  was gone -- or the police did not recover the gun.

18    When this defendant, Fredrick Hall, was

19  apprehended by the police, the police advised him

20  of his Miranda Rights and they started asking

21  questions.  Mr. Hall told the police that he was

22  out buying shaving cream at 3:15 in the morning.

23  He told them that over a period of about an hour

24  or two.  He just said, "Hey, I don't know what

25  you're talking about.  I know nothing about a

1      shooting.  I was out buying shaving cream."

2              The police took Fredrick Hall back to the

3      police station where they once again advised him

4      of his rights and they talked a little bit more.

5      And when the police got him back to the police

6      station, his story changed a little bit.

7              At the police station when he was

8      interviewed, the defendant stated that he picked

9      up somebody named Dave and they went down to 14th

10     and Republic.  Then he said that the two people

11     who were shot that night, Kevin Davis and Johann

12     Hart, had robbed him two weeks before.  And, he,

13     in fact, had been shot a week or two before.  He's

14     got the sling on the medical record that he was,

15     in fact, shot.  Told the police that these two

16     individuals were the ones that had robbed him and

17     shot him.

18              He indicated that he called -- he called

19     one over to the car, and at that point Dave began

20     to shoot.  Dave was in the passenger seat next to

21     him.  After Dave shot these two individuals, they

22     took off south on Republic Street.  He dropped

23     Dave off somewhere and told them to hide the gun.

24              A little later the story changed a little

25     bit.  A little later Mr. Hall stated that, in

1    fact, Dave was in the back seat behind him and

2    then he fired the shots, and then he stated to

3    tell the police that he would take them to where

4    the gun was located.

5            So the police took him up to Windsor

6    Avenue in an attempt to look for the gun, and they

7    were unsuccessful in finding the gun.  They looked

8    for approximately 45 minutes, and then the

9    defendant stated, "Well, the gun is not here."

10           He indicated that these two individuals

11   had robbed him, shot him and they had taken a

12   watch from him.

13           Ladies and gentlemen, this is a

14   multi-count indictment.  There are, in fact, seven

15   separate counts in this indictment.  And I hate to

16   belabor the point, but I think I need to read this

17   to you because as with any indictment it contains

18   essential elements of the offenses that the State

19   of Ohio has a burden of proving.

20           Judge Martin will indicate to you in his

21   instruction that an indictment is only a piece of

22   paper and it is not evidence, however, it does

23   contain the elements of the State of Ohio is

24   required to prove.

25           MR. RADER:  Your Honor, I object to the

1    reading of the indictment.

2              THE COURT:  Overruled.

3              MR. ANDERSON:  Count Number One:  On or

4    about October 17, 1999, in Hamilton County, State

5    of Ohio, this defendant, Fredrick Hall, knowingly

6    caused or attempted to cause physical harm to

7    Kevin Davis by means of a deadly weapon or

8    dangerous ordinance; that would be a firearm.

9              Each one of the first six counts carries

10   with it three separate specifications.

11             And I'm going to read regarding Count One

12   and then I'm going to just refer to it on the

13   additional counts.

14             Specification One to Count One:  That the

15   defendant, Fredrick Hall, had on or about his

16   person or under his control a firearm while

17   committing the offense of felonious assault.

18             Specification Two:  The defendant,

19   Fredrick Hall, had on or about his person or under

20   his control a firearm while committing or

21   attempting to commit the offense of felonious

22   assault and displayed the firearm, brandished the

23   firearm, indicated he possessed the firearm, or,

24   he used it to facilitate the offense.

25             Specification Three:  The defendant,

1  Fredrick Hall, while committing the offense of

2  felonious assault, purposely or knowingly caused

3  or attempted to cause death or physical harm to

4  another by discharging a firearm from a motor

5  vehicle.

6  Those three specifications entail every

7  one of these counts in the indictment except for

8  Count Seven.

9  Count Two also occured on or about

10  October 17, 1998, in Hamilton County, State of

11  Ohio.

12  On that date, this defendant, Fredrick

13  Hall, knowingly caused serious physical harm to

14  Kevin Davis.  Again, the three specifications.

15  Third Count:  On or about October 17,

16  1998, in Hamilton County, State of Ohio, that

17  defendant, Fredrick Hall, knowingly caused or

18  attempted to cause physical harm to Johann Hart by

19  means of a deadly weapon or dangerous ordinance.

20  Again, this is by use of a firearm.

21  Count Four:  Same date, October 17, 1998,

22  Hamilton County, State of Ohio, that defendant

23  Fredrick Hall, knowingly caused serious physical

24  harm to Johann Hart.

25  Count Five:  October 17, 1998, Hamilton

1    County, State of Ohio, that defendant, Fredrick

2    Hall, knowingly engaged in conduct, which if

3    successful would have constituted or resulted in

4    the offense of murder.

5         Count Six: On or about October 17, 1998,

6    in Hamilton County, State of Ohio, that defendant,

7    Fredrick Hall, knowingly engaged in conduct which

8    if successful would have constituted or resulted

9    in the offense of murder.

10        And, again, all of those contain three

11   separate specifications concerning a gun.

12        The final and Seventh Count:  On or about

13   October 17, 1998, in Hamilton County, State of

14   Ohio, that defendant, Fredrick Hall, willfully

15   operated motor vehicle so as to allude or flee a

16   police officer after receiving a visible or

17   audible signal from a police officer telling him

18   to bring his motor vehicle to a stop.  And in

19   committing such offense, the defendant was fleeing

20   immediately after the commission of a felony.

21        Those are the essential elements of the

22   offenses that Fredrick Hall is charged with.

23        Ladies and gentlemen, listen carefully to

24   the evidence.  Listen to what the witnesses have

25   to say.  Use the test of credibility that you use

1    in your everyday life.  Determine the facts that

2    you find in this case and apply the law as Judge

3    Martin gives it to you and arrive at a true and a

4    just verdict.

5         At the conclusion of this case, the State

6    of Ohio will be asking you to return a true and

7    just verdict; a verdict of guilty as charged

8    against Fredrick Hall to four counts of felonious

9    assault, two counts of attempted murder, and one

10   count of fleeing or alluding police officer.

11        THE COURT:  Mr. Rader.

12        MR. RADER:  Ladies and gentlemen, opening

13   statement, as every other part of the trial, has a

14   reason.

15        My perception of that reason is that His

16   Honor, the Judge, has not heard the evidence in

17   this case.  And throughout this case, he will make

18   rulings on evidence, what evidence is relevant,

19   what evidence is material.  He cannot perform that

20   function without having some overview of what the

21   theory of this case is or what this case is about.

22        Now, I objected to a reading of the

23   indictment because if you hear accusations over

24   and over and over again, maybe they take on some

25   credibility.

1              But my purpose in being here and what I'm

2        trying to convey to you is an overall glance of

3        this case, really, technically, for the benefit of

4        the judge who will make evidentiary rulings about

5        what is permissible.  And that's not in the form

6        of evidence, but it serves you in very much the

7        same function, in that if you have an overview,

8        there are parts of this that will be irrelevant

9        and more pertinent to your thinking than other

10        parts.  And you can say, I want to see whatever,

11        whatever, as the case unfolds.

12              But the facts in this case and the

13        evidence in this case will show you that this case

14        essentially involves children.  I mean, it's -- at

15        least all except the lady here in the blue jean

16        jacket.  She is probably the youngest, I think.

17              Kevin Davis, I understand, is 16-years

18        old.  Excuse me.  That's wrong.  Johann Hart is

19        16-years old and Kevin Davis is 19.

20              The evidence in this case will show that

21        those these are kids that absolutely run-amuck,

22        that Johann is out wrecking cars.  And Kevin is,

23        when the lifesquad picked him up, a block or

24        several blocks away, he had crack cocaine taped to

25        his arm.

1           Come to your own conclusions about why,

2   if it's just for sale or for his own use, or, it's

3   not material to me.

4           But this will be in evidence that he had

5   this crack cocaine taped to his arm.

6           19-years old.  Johann Hart went to Taft

7   High School for a time and has dropped out at

8   16-years old, buying cars.  I assume he's buying

9   them with, I believe --

10          MR. ANDERSON:  Objection.

11         MR. RADER:  The evidence will show --

12         THE COURT:  You can't assume, but you can

13   tell us what you believe the evidence will show.

14         MR. RADER:  The evidence will show that

15   he's buying automobiles, etc., at a very young and

16   tender age with money from dealers.

17          People these days have a -- are having a

18   lot of trouble with their children, especially in

19   the black community.

20          The evidence in this case will show that

21   Fredrick Hall has a son, as well.  He's about

22   16-years old.

23          The evidence in this case will show that

24   my friend, the prosecutor, said that this happened

25   on Windsor, if you recall.  It didn't.  It

1    happened at 1330 Republic, which is just off

2    Central Parkway.  And 911 calls started at 3:18 in

3    the morning.

4              And the evidence is this case will show

5    you that sound recordings and computer printouts

6    of that material will show you that for about an

7    hour the police reports were of a gray automobile

8    -- which is not the color of Mr. Hall's wife's car

9    -- with three people in the automobile, and the

10   automobile being driven by an approximately

11   20-year old, light complected for a black man,

12   clean shaven, wearing a baseball cap -- and did I

13   say a white t-shirt?  Two other people in the

14   vehicle.

15             Now, this was the broadcast for about an

16   hour.  No doubt somebody saw this vehicle on

17   Republic Street because the license number was out

18   in less than three minutes.

19             Two witnesses that we have tried

20   diligently to find, that are listed on this

21   computer information, etc., that we have not --

22   we have subpoenaed and they have not responded --

23   apparently these two eyewitnesses are the

24   witnesses that on the scene gave their information

25   to the police that the shooting was done by a

1    20-year old, clean-shaven black male wearing a

2    white t-shirt and a baseball cap.

3            This car was found sometime later on

4    Windsor Avenue, and no one was there, just the car

5    sitting parked.

6            Let me back up and say that to get from

7    Republic to Windsor, the logical path is up

8    Gilbert Avenue.  And I know from researching and

9    studying this case, that a police officer is going

10   to come in, and he's going to tell you that he was

11   sitting on the left side of Gilbert Avenue and saw

12   a car come up the street, looked at that driver at

13   night -- this is 3:30, 3:45 in the morning --

14   looked at that driver closely enough to get a

15   positive identification of that driver as the car

16   went by at a normal speed.  When the car went

17   past, he recognized the license number and took

18   off after the car.

19           Now, I don't know what he was driving, a

20   Suburban, or whatever he was driving, but he was

21   unable to catch this foreign Japanese car.

22            Ladies and gentlemen, the evidence in

23   this case is going to show that this

24   identification is not probable.  It's not likely.

25   It's not reasonable.  And one of the things that

1    leads to that conclusion is that Mr. Hall has

2    essentially one functioning arm.  A bone in his

3    arm is severed from his elbow.  There's two bones

4    in your lower arm, and one of those arms is

5    severed.  And if you can believe that he can drive

6    a stick shift, five-speed stick shift automobile

7    through a 70 or 80 mile-an-hour chase with the

8    police and shift that car and steer that car with

9    one arm, it's very improbable.

10          The evidence in this case will show that

11    it is highly improbable, highly.

12          MR. ANDERSON:  Objection.  All this

13    language is certainly argumentative.

14          THE COURT:  Sustained.

15          MR. RADER:  The evidence in this case

16    will show that this car went through the alley or

17    through Republic Street and somebody fired a gun

18    driving the car.

19          The evidence will show you that it's

20    highly improbable or impossible --

21          MR. ANDERSON:  Judge, again, I'm going to

22    argue to "improbable" and "impossible."

23          THE COURT:  You can't use those phrases

24    "probable," "unlikely."  Just what you believe the

25    evidence will show.

1        MR. RADER:  I understand, Your Honor.

2    Thank you.

3        The evidence in this case will show that

4    Mr. Hall was concerned about his son.  Evidence

5    will show the police took the son into custody

6    and took him to juvenile court.  The evidence will

7    show that they kept him there until about 7

8    o'clock in the morning.  The evidence will show

9    you Mr. Hall's concern, his concern with his

10   wife's car being seized and her not having

11   transportation for work.  The evidence will show

12   that he has concern for protecting his son.

13        The evidence will show that the police

14   attribute certain statements to him.  And the

15   evidence will show that -- their testimony will

16   show that they attribute these statements to a

17   voluntary response.

18        Ladies and gentlemen, the evidence will

19   also show that at 6:15 in the morning, Mr. Hall

20   refused to sign a Waiver of Rights.  He refused to

21   sign his rights away, his right to a lawyer, his

22   right to remain silent.

23        The evidence will show that these are

24   alleged to be voluntary statements, yet they're

25   not in writing.  And they're voluntary statements

```
 1        made by a man who wouldn't acknowledge those

 2        statements on a written waiver.  The evidence will

 3        show that Mr. Hall was at home and his son wasn't

 4        there.

 5              MR. ANDERSON:  Judge, I'm going on

 6        object.

 7              THE COURT:  Sustained.

 8              MR. RADER:  May we approach the bench,

 9        Your Honor?

10              THE COURT:  Sure.

11              (Sidebar discussion as follows:)

12              MR. RADER:  Your Honor, I'm not

13        contesting where he was at the time.  I'm saying

14        it's 3:40 or something --

15              THE COURT:  Well, you have to say at

16        3:40.  You can't just say the way you said it was.

17              MR. RADER:  You'll find out.  The

18        evidence will show he was at home.

19              THE COURT:  You can't leave it like that.

20              (Ends sidebar discussion.)

21              THE COURT:  Ladies and gentlemen, they'll

22        be various times during this case where we'll take

23        breaks.  Some of the breaks are important, some

24        aren't.  Don't read anything into them,

25        whatsoever.  It's just a normal part of the trial
```

1              Go ahead.

2              MR. RADER:  Evidence in this case will

3    show that Fredrick Hall came home.  His father

4    asked him where the car was.  He said, "The car is

5    over on Windsor.  I think I'm in trouble.  I think

6    the police are following me."

7              And his father really out of confusion or

8    concern or whatever went over there and saw lots

9    of police, didn't know what to think of -- what

10   was going on.  Didn't know what was going on and

11   did not walk right up to -- they came over and

12   questioned him and took him into custody, and he's

13   been in custody since.

14             The evidence will show in this case that

15   the statements he made are not the statements that

16   he -- that are attributed to him by the police.

17   And the evidence will be such that the prosecutor

18   will make a big thing out of this, as was the case

19   in opening statement, of him saying, "I went to

20   get shaving cream."

21             Let me tell you, if a police questioned

22   you from 4 o'clock in the morning until mid day

23   the next day, you're going to get disgusted and

24   you're going to get aggravated and you're going to

25   say, "Okay, I was out getting shaving cream."

1        That's not relevant or material to the

2    issues in this case.

3        But, ladies and gentlemen, I'm giving you

4    an overview of what this case is about.  It's not

5    evidence.  It's not evidence, but I hope I pointed

6    out to you some of the things that should be paid

7    particular attention to.

8        We leave it with you.  Thank you very

9    much.

10        THE COURT:  All right.

11        Ladies and gentlemen, at this time we're

12    going to break until tomorrow.  We'll begin

13    hopefully, probably, at 10 o'clock with testimony.

14        Tomorrow, I expect us to go to between

15    4:00 and 4:30.  There's another matter that's come

16    up that I have to attend to that's absolutely

17    unrelated to that this afternoon.  So the same

18    admonitions apply as I gave you earlier.

19        Don't discuss this case amongst

20    yourselves or with anyone else, or permit anyone

21    to discuss it in your presence.  Don't come to any

22    conclusions based on anything you see or hear.

23    You've not heard one bit of evidence, so don't

24    come to any conclusion based on anything you've

25    seen.  And don't attempt to do any independent

1    investigation to prove or disprove any facts that

2    you may have heard in this case.  And if you do

3    come across any media accounts of this case, which

4    . I strongly doubt you will, but if you do,

5    disregard them in their totality.

6              With that, we'll break until tomorrow at

7    2:50.

8              Be back in the jury room by five till

9    10:00 tomorrow and we'll get you as soon as after

10   10:00 as we can.

11              - - -

12        PROCEEDINGS ADJOURNED IN PROGRESS

13              - - -

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              C E R T I F I C A T E

 2

 3         I, Cheryl Dillard, RPR, the undersigned, an

 4  official court reporter for the Court of Common Pleas, do

 5  hereby certify that Pages 1-20 constitute a true

 6  transcription of my notes, taken in stenotypy, of the

 7  proceedings in this cause.

 8         IN WITNESS WHEREOF, I have hereunto set my hand

 9  at Cincinnati, Ohio, this 26th day of July, 1999.

10

11                      _____
                        CHERYL (DILLARD
12                      OFFICIAL COURT REPORTER
                        COURT OF COMMON PLEAS
13                      HAMILTON COUNTY, OHIO

14

15

16

17

18

19

20

21

22

23

24

25
```