UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **FREDERICK HALL,** : | |
| : | Case No. 1:02-cv-34 |
| Petitioner, : | |
| : | Judge Spiegel |
| v. : | |
| : | Magistrate Judge Black |
| **ERNIE MOORE, Warden,** : | |
| : | |
| Respondent. : | |

**RESPONDENT'S RESPONSE TO PETITIONER'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
FILED OCTOBER 10, 2007**

Petitioner Fredrick Hall initially filed the instant action on January 16, 2002, in this Court. (Doc. #1). On March 23, 2004, Magistrate Judge Perelman issued a Report and Recommendation to deny the petition with prejudice after addressing and rejecting each of Hall's grounds for relief on the merits. Magistrate Judge Perelman also recommended that a certificate of appealability should not issue and this Court should certify that an appeal would not be taken in good faith. (Doc. #19.) On October 11, 2005, this Court issued an Opinion and Order upholding the portion of the Report and Recommendation addressing Hall's second and third grounds for relief, but rejecting the portion of the Report and Recommendation pertaining to Hall's first ground for relief. (Doc. #22, p. 4 n.1 & p. 8.) This Court remanded the matter for an evidentiary hearing. (Doc. #22, p. 8-9.)

After holding an evidentiary hearing, Magistrate Judge Black issued a Supplemental Report and Recommendation that Ground One of Hall's habeas petition be denied with prejudice. Magistrate Judge Black also recommended that a certificate of appealability should

not issue and this Court should certify that an appeal would not be taken in good faith. (Doc. #47.) Subsequently, Hall filed his Objections to the Magistrate Judge's Supplemental Report and Recommendation. (Doc. #53.) Hall objects to the Magistrate Judge's determination that "neither [Jimmie] Martin nor [Lolita] Moore provided written statements to the police on October 17, 1998, which could have been destroyed by the police or prosecutor prior to petitioner's state criminal trials." (Doc. #53, Objections p. 3.) Hall also objects to the Magistrate Judge's determination that the allegedly suppressed written statements would not have been material to Hall's defense. (Doc. #53, Objections p. 6.) Hall's objections merely constitute a disagreement with the Magistrate Judge's resolution of his first ground for relief. Nevertheless, Respondent hereby responds to Hall's Objections.

In a habeas case, the burden of proof is on the petitioner. *Gray v. Johnson*, 354 F.2d 986, 987 (6th Cir. 1965); *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970). The burden of proof remains upon the party on whom it was originally cast. *Reeves v. General Foods Corporation*, 682 F.2d 515 (5th Cir. 1982); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and its progeny, the government has a due process obligation to disclose to the defendant its knowledge of material evidence favorable to the defendant. To establish a violation of *Brady*, the petitioner has the burden of demonstrating that (1) the prosecution suppressed evidence, (2) the evidence if favorable to the accused, and (3) the suppressed evidence is material to guilt or punishment. *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972); *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).

Evidence is "material" within the meaning of *Brady*, only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding

would have been different. *See United States v. Bagley*, 473 U.S. 667 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the trial. *Bagley*, 473 U.S. at 682. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976). This standard for determining materiality focuses on the defendant's guilt or innocence. *United States v. Phillip*, 948 F.2d 241, 249 (6th Cir. 1991).

There is no *Brady* violation if at the time of trial, the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998); *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000); *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).[1]

Additionally, the United States Supreme Court has held that a defendant's due process rights are violated when the state either fails to preserve materially exculpatory evidence or, in bad faith, fails to preserve potentially useful evidence. *Arizona v. Youngblood*, 488 U.S. 51

---

[1] Here, as the Magistrate Judge reasonably determined, "it also appears from the transcript of petitioner's first trial that the information contained in the report was accessible to defense counsel, who demonstrated a knowledge of the report's contents during the extensive cross-examination of Officer Fromhold at the first trial." (Doc. #47, Supplemental Report and Recommendation p. 46.) Additionally, in her affidavit in support of motion for new trial, defense counsel indicated that she located an address for Lolita Moore by performing a public records search on the court computers. (Doc. 11, Motion for Discovery, Exhibit D.) As a result of this search, defense counsel located and spoke with Lolita Moore. Nothing prohibited defense counsel from performing a public records search on the court's computer prior to trial. As the Magistrate Judge correctly determined, "[t]he fact that two witnesses whose identities were known to the defense, failed to appear at petitioner's two trials cannot be attributed to the State, which also attempted to procure [their] presence at the trials." (Doc. #47, Supplemental Report and Recommendation p. 46.) At the time of trial, Hall knew or should have known the essential facts permitting him to take advantage of the information in question and the information was available from another source, *i.e.*, Lolita Moore. Therefore, there is no *Brady* violation. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998); *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000); *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).

(1988).[2]  The constitutional duty of the States to preserve evidence is limited to evidence that might be expected to play a role in the suspect's defense.  To meet this standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent before it was destroyed, and must also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.  *California v. Trombetta*, 467 U.S. 479, 488-89 (1984).  However, the *Trombetta* and *Youngblood* holdings do not apply to claims that evidence was lost or destroyed **after** trial.  *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("The district court concluded that because the Supreme Court has not clearly established that post-conviction destruction is a due process violation, the petitioner's claim in this regard could was not cognizable on federal habeas review.  We agree, . . . ").

**I.     As the Magistrate Judge correctly determined, Hall has not shown that any written, or documented oral, statements were suppressed.  (Doc. #47, Report and Recommendation pp. 42-47.)**

To establish a violation of *Brady*, Hall has the burden of demonstrating that the prosecution suppressed evidence.  Lolita Moore was the only witness to testify that she and Jimmie Martin provided the police with written statements.  Specifically, Lolita Moore testified that, at about 3:30 to 3:45 a.m. on the night in question, both she and Jimmie Martin were transported in the same police cruiser to District 1, where they both wrote and signed statements that were handed to the police. (Doc. 11, Motion for Discovery, Exhibit A; Doc. #41, Tr. p. 7-10.)[3]

---

[2] The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence.  *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988).

[3] For the first time, Hall now alleges that Detective Dan Huffman corroborated Moore's statement.  During Hall's second trial Detective Huffman testified that, upon arriving at District 1 at approximately 5:30 in the morning,

> I was briefed by the police lieutenant what had occurred and what they had.  It was an ongoing investigation.

4

However, Jimmie Martin contradicted Moore's testimony. Martin unequivocally testified that that he was not transported to District 1 "regarding this case" in 1998. (Doc. #42, Tr. pp. 52.) Martin testified that after providing a police officer with an oral statement, which the officer appeared to be writing down, Martin was "back on my drug run." (Doc. #42, Tr. pp. 51, 53.) Martin denied signing a written statement and testified that "[t]he only statement I recall was signing yesterday when [the Assistant Attorney General] came to see me." (Doc. #42, Tr. pp. 51-52.)

Additionally, Police Officer Steven Fromhold's testimony corroborates Martin's version of the events:

> The undersigned finds Fromhold to be an extremely credible witness, who has consistently testified from petitioner's first trial to the present date that he obtained oral statements from Martin and Moore at the scene, which he recorded in an addendum attached to his police report. Fromhold, who secured the scene immediately after the shooting and remained there until around 4:00 a.m. (see Doc. 46, Tr. 221-22), further averred at the November 1, 2006 evidentiary hearing that he did not transport any witnesses to the District 1 police station, and was unaware of any witnesses being transported to District 1 by other officers, that night. (Doc. 41, Tr. 24-25).

(Doc. #47, Supplemental Report and Recommendation p. 42.) Additionally, Officer Fromhold testified that "[a]t the time [he] received the information from Miss Moore, it was in the latter

---

> * * *
>
> At that time they -- there was, I believe two witnesses that was being interviewed by uniformed police officers --
>
> * * *
>
> -- at the time. I kind of got some paperwork together, and I waited for them to bring the individual that was involved in the car chase to District One.

(Doc. #7, Second Trial Tr. pp. 260-61.) Despite the inferences upon inferences that Hall seeks to make from the foregoing testimony, Huffman's testimony does not support or corroborate Moore's assertions that she and Martin were transported in the same police cruiser to District 1, where they both wrote and signed statements that were handed to the police. Instead, the testimony simply indicates that Detective Huffman was informed that uniformed police officers, e.g., Officer Fromhold, were interviewing witnesses at the scene.

5

parts of the preliminary investigation. There already was an active vehicle pursuit going on in the District 2 area of the vehicle matching the description and license plate number that Officer Fromhold put out." As a result, Officer Fromhold did not broadcast the information provided by Moore. Instead, he documented what Moore said and put it in the addendum to the report with her name and information. (Doc. #41, Tr. p. 24.)[4]

As the magistrate judge reasonably determined, once Hall was observed driving the car matching the description and license plate number provided by Martin and was taken into custody, it is highly unlikely that the police would have thought it necessary to transport Moore and Martin to the District 1 police station to obtain their written statements:

> Given that petitioner either already was in police custody, or would have been apprehended within a short time after Moore came forward to assist the police, it is highly unlikely that the police would have thought it necessary to transport her and Martin to the District 1 police station to obtain their written statements. If anything, the witnesses would have been taken to the station for the purpose of identifying petitioner, who was transported there for questioning immediately after his arrest. However, despite Moore's testimony that she and Martin were at the station until 8:00 or 9:30 a.m., there is no evidence in the record even remotely suggesting that Moore or Martin were ever called upon to identify petitioner in a police line-up or photo array.

(Doc. #47, Supplemental Report and Recommendation pp. 42-43.)

Furthermore, Detective Galligan testified that it is the policy of the Cincinnati Police Department to disclose all evidence to the prosecutor's office. (Doc. #42, Tr. pp. 14-17.) Prosecutor William Anderson testified that if he had received exculpatory evidence he would have disclosed it to the defense. "[F]or someone to allege that either the police or the prosecutor's office destroyed exculpatory information in this case really makes me kind of

---

[4] As previously indicated, the Magistrate Judge correctly determined that "it . . . appears from the transcript of petitioner's first trial that the information contained in the report was accessible to defense counsel, who demonstrated a knowledge of the report's contents during the extensive cross-examination of Officer Fromhold at

angry." (Doc. #42, Tr. pp. 33-34.) Prosecutor Anderson noted that there "was never any [corroborating] evidence that any type of written statement was made and there was no evidence that anybody was ever transported to the district." (Doc. #42, Tr. pp. 44-45.) Prosecutor Anderson refuted any allegation that Moore "went down and filed a written statement which was turned over to me as an officer of the court and I somehow destroyed some written statement by not only Lolita Moore, but Jimmie Martin." Prosecutor Anderson stated "[m]y position is that those statements never existed. I never saw them." (Doc. #42, Tr. pp. 46, 28.)

Moreover, as the Magistrate Judge correctly determined, Lolita Moore was not a credible witness. Moore's testimony was contradicted by Officer Fromhold and Jimmie Martin. Moore's version of events has changed dramatically over the course of the ensuing years. Additionally, Moore's own statement indicates that she did not witness the shooting because she states that only one victim was shot, when, in fact, there were two victims. Finally, Moore has a criminal record reveals convictions within the past ten years for falsification, forgery, and theft. All these facts serve to impeach Moore's credibility. (Doc. #47, Supplemental Report and Recommendation pp. 42-45.)

As the Magistrate Judge correctly determined, the only witness in support of Hall's *Brady* claim lacks credibility. Based on the testimony adduced at the evidentiary hearing, the Magistrate Judge correctly concluded that neither Martin nor Moore provided written statements to the police on October 17, 1998, which could have been destroyed by the police or prosecutor prior to Hall's state criminal trials. (Doc. #47, Supplemental Report and Recommendation p. 45.) Also, upon review of the record and the evidence admitted at the evidentiary hearing, the Magistrate Judge correctly determined "that no Brady violation occurred because at the time of

---

the first trial." (Doc. #47, Supplemental Report and Recommendation p. 46.) Therefore, Hall has not shown that these documented oral statements were withheld.

7

petitioner's first trial, the defendant possessed the same information provided to the State pertaining to eyewitnesses Jimmie Martin and Lolita Moore, which was set forth in Officer Fromhold's addendum to his police report."  (Doc. #47, Supplemental Report and Recommendation p. 46.)

**II.    As the Magistrate Judge correctly determined, Hall has not shown that the allegedly suppressed evidence is material.  (Doc. #47, Report and Recommendation pp. 47-49.)**

To establish a violation of *Brady*, the petitioner has the burden of demonstrating that the suppressed evidence is material to guilt or punishment.  *Moore v. Illinois*, 408 U.S. at 794-95; *Strickler*, 527 U.S. at 281-82; *Carter v. Bell*, 218 F.3d at 601.  Evidence is "material" within the meaning of *Brady*, only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  *See United States v. Bagley*, 473 U.S. 667 (1985).  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the trial.  *Bagley*, 473 U.S. at 682.  "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976).  This standard for determining materiality focuses on the defendant's guilt or innocence.  *United States v. Phillip*, 948 F.2d 241, 249 (6th Cir. 1991).

Here, Hall has failed to demonstrate that there is a reasonable probability that, had Lolita Moore's allegedly suppressed written statement been disclosed to the defense, the result of the proceeding would have been different.  As previously noted, Lolita Moore is not a credible witness.  Specifically, Moore has a lengthy criminal record revealing convictions for falsification, forgery and theft, which serve to impeach her credibility.

8

Additionally, Moore's own statements are suspect, *i.e.*, Moore's testimony demonstrated that she did not witness the shooting and, in fact, showed up some time after the shooting occurred. Moore testified that "I seen guns -- I heard gunshots, and I seen the guy fall. That was the only person out there: that vehicle, those three guys, and the victim that got shot." (Doc. #41, Tr. p. 14.) Moore reiterated that no one else was out there except Moore, Martin, and the victim that got shot. Moore insisted that there was only one victim. (Doc. #41, Tr. p. 17.) As Officer Fromhold and Prosecutor Anderson clarified, however, there were two victims in this case. (Doc. #42, Tr. pp. 22-23, 31; Doc. #41, Tr. pp. 22-23.) Moore's ability to accurately recount what happened that evening was also questionable "considering its 3:00 in the morning, considering it is a high drug area, considering that the lighting wasn't real great," (Doc. #42, Tr. p. 42), and considering that Moore placed herself about 150 feet away from the shooting at the time she allegedly witnessed the shooting. (Doc. #41, Tr. p. 24.)

Moreover, as noted in the Report and Recommendation and quoted in the Supplemental Report and Recommendation, there is substantial evidence of Hall's guilt. Therefore, "it is not reasonably probably, and indeed highly unlikely, that the result of petitioner's trial would have been different had the allegedly withheld eyewitness statements of Lolita Moore and Jimmie Martin been disclosed to the defense":

> As the magistrate judge concluded in the Report and Recommendation issued March 23, 2004, "in light of the substantial evidence of petitioner's guilt," it is not reasonably probable, and indeed highly unlikely, that the result of petitioner's trial would have been different had allegedly withheld eyewitness statements of Lolita Moore and Jimmie Martin been disclosed to the defense. (See Doc. 19, pp. 10). As the magistrate judge reasoned:
>
>> The victims independently identified petitioner in a photo array which was provided to them almost immediately after the shooting and which was not challenged by the defense as suggestive. (Doc. 7, Tr. 149, 170, 185). There was no testimony at trial suggesting that the victims had any motive to frame

9

> petitioner for this crime. Both petitioner and the victims testified that they did not know each other. (Doc. 6, Tr. 132; Doc. 7, Tr. 164; Doc. 8, Tr. 349).
>
> Police Officer Bailey who pursued petitioner in a high speed chase after the shooting based on a report of the license plate, testified that he saw petitioner driving the car. (Doc. 8, Tr. 309). When the car was finally located during the early morning hours petitioner was found standing behind a tree near it. (Doc. 8, Tr. 361-362).
>
> Petitioner's statements to police upon his arrest were also incriminating, because they placed him at the scene. Officer H[u]ffman testified that petitioner had stated to him that he picked up Dave and while riding around they spotted two individuals who had robbed them. (Doc. 7, 265). Dave indicated that he would take care of them and then shot them. (Id.) On the stand, petitioner conceded that he told police that he picked up Dave (Doc. 8, Tr. 365), but explained that he was lying at the time (Id., Tr. 369). He denied making the other statements. (Id., Tr. 369-370).
>
> Petitioner's attempt to bribe [one of the victims, Kevin Davis,] not to testify (Doc. 7, Tr. 175) was further evidence of guilt.
>
> (Doc. 19, pp. 10-11).

(Doc. #47, Supplemental Report and Recommendation pp. 47-49.)

Finally, the fact that Hall's first trial ended in a mistrial is irrelevant to the strength of the prosecution's case. The transcript demonstrates that the first trial ended in a mistrial because a single juror, who was biased against police officers, was not going to properly engage in the exchange of ideas or deliberations process with the other jurors. (Doc. #46, Response, Attachment 8, Tr. pp. 499-508, 530-33.) Additionally, Prosecutor Anderson testified that he spoke with some of the jury after the mistrial was declared. Prosecutor Anderson testified that, after speaking with some of the jurors, "it was [his] understanding that it was eleven to one for a conviction. There was one juror that, for whatever reason, felt inclined to hold out for Mr. Hall's

innocence." (Doc. #42, Tr. p. 20.)[5] Furthermore, Prosecutor Anderson testified that he did not make any changes to the presentation of his case after the mistrial had been declared. (Doc. #42, Tr. p. 20.) Thus, the mistrial does not indicate "weakness" in the prosecution's case.

For the foregoing reasons, as the Magistrate Judge correctly determined, Hall "has not demonstrated that he is entitled to habeas relief with respect to his claim alleged in Ground One that material exculpatory evidence was withheld or destroyed by the Cincinnati police or the Hamilton County prosecutor in violation of *Brady/Trombetta* or *Youngblood*." (Doc. #47, Supplemental Report and Recommendation p. 49.)

**III. Because petitioner has not shown that the State destroyed evidence before trial, *Youngblood* and *Trombetta* are inapplicable.**

As previously stated, there is no credible evidence that Moore or Martin provided written statements to the police which allegedly were destroyed. Nevertheless, assuming arguendo that Hall were able to prove that the State destroyed evidence favorable to the defense, Hall has not demonstrated that any evidence was destroyed before trial.

The United States Supreme Court has not clearly established that post-conviction destruction of evidence is a due process violation. Therefore, such a claim is not cognizable on federal habeas corpus review. *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("The district court concluded that because the Supreme Court has not clearly established that post-conviction destruction is a due process violation, the petitioner's claim in this regard could was not cognizable on federal habeas review. We agree, . . . .").

---

[5] The transcript supports the prosecutor's understanding. The jury submitted a question to the trial court stating "One juror votes not guilty with no change emphatically. We are only on Count 1." (Doc. #46, Response, Attachment 8, Tr. p. 524.) Additionally, Juror Allen informed the trial court that she "made the statement as to how [she] was going to vote" as to the first count, and she "made the statement that [she was] not going to change [her] mind. And that sort of sent everybody spinning. . . . They said if you're not going to change your mind, then we might as well leave here." (Doc. #46, Response, Attachment 8, Tr. pp. 511-12.)

11

Detective Galligan testified that prior to 2001, the Cincinnati Police Department did not have a policy regarding the retention of closed case files. Instead, "[e]ach officer made his own file and kept them for court, and it was viewed as the officer's property." (Doc. #42, Tr. p. 12.) Detective Galligan also testified that, prior to 2001, because the files were considered the detective's property, they could be disposed of at any time. (Doc. #42, Tr. p. 14.) However, Detective Galligan testified that he had never heard of a case in which a detective destroyed a file prior to conviction. (Doc. #42, Tr. p. 16.) Additionally, based on his knowledge and experience, Detective Galligan testified that if a detective had received written statements from a witness, they would have gone to the prosecutor's office. (Doc. #42, Tr. p. 15.)

Police Officer Fromhold also testified that the police report and the addendum to the police report was "destroyed, just routine records were destroyed after five years, police division." (Doc. #41, Tr. p. 29.)

Finally, Prosecutor Anderson testified that the Hamilton County Prosecutor's Office's has a records retention policy. (Doc. #42, Tr. p. 28.) The office policy is to reduce the file to microfilm . . at such time as the case is over, okay, whether that's appeal or anything else." Here, Hall's appeal was denied by the Supreme Court of Ohio, "assuming that this federal case had not been filed, that would have been the appropriate time to reduce the case to microfilm because it is no longer an active case." (Doc. #42, Tr. p. 39.)

Prosecutor Anderson testified that the Prosecutor's Office's file for the Hall case has been stripped and reduced to microfilm and, "as far as [he was] aware" the file was stripped and reduced to microfilm per office procedure. (Doc. #42, Tr. p. 28.) Prosecutor Anderson testified that the file was not stripped and reduced to microfilm prior to the conviction and sentencing. (Doc. #42, Tr. p. 28.)

Based on the foregoing, Hall has not demonstrated that any evidence was destroyed before trial. The *Trombetta* and *Youngblood* holdings do not apply to claims that evidence was lost or destroyed after trial. Rather, *Trombetta* and *Youngblood* both addressed destruction of evidence prior to a criminal trial. *Trombetta*, 467 U.S. at 482-83; *Youngblood*, 488 U.S. at 53-54. In addition, there is nothing in either decision extending the principles outlined in each case to post-conviction destruction of evidence. *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("The district court concluded that because the Supreme Court has not clearly established that post-conviction destruction is a due process violation, the petitioner's claim in this regard could was not cognizable on federal habeas review. We agree, . . . "); *see also Ferguson v. Roper*, 400 F.3d 635, 638 (8th Cir. 2005) (*Youngblood* is inapplicable even in the face of an allegation that the prosecutor may not have disclosed the evidence prior to trial.); *Tyler v. Purkett*, 413 F.3d 696, 704 (8th Cir. 2005). As a result, Hall is not entitled to habeas relief on this claim.

## CONCLUSION

Hall's objections merely constitute a disagreement with the Magistrate Judge's resolution of his first ground for relief. However, the Magistrate Judge's well-reasoned determinations were correct, and should not be disturbed. Respondent respectfully requests that this Court adopt the Magistrate Judge's recommendation that Ground One of Hall's habeas petition be denied with prejudice, and dismiss Hall's petition.

> Respectfully submitted,
>
> MARC DANN (0039425)
> Attorney General
>
>
> s/Jerri L. Fosnaught
> JERRI L. FOSNAUGHT (0077718)
> Assistant Attorney General
> 150 East Gay Street, 16th Floor
> Columbus, Ohio 43215
> 614-644-7233
> 614-728-9327 fax
> jfosnaught@ag.state.oh.us
>
> Counsel for Respondent

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed on December 14, 2007. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> s/Jerri L. Fosnaught
> JERRI L. FOSNAUGHT
> Assistant Attorney General